IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                        No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL Sanchez, a.k.a.
"Dan Dan," GERALD ARCHULETA, a.k.a.
"Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ;
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Joe Gallegos' Response to the

United State's [sic] Notice of Proposed James Statements (Doc. 1903), filed March 12, 2018

(Doc. 1918)("Response"). Defendant Joe Gallegos argues, both in the Response and orally, that the United States has no evidence that the murder of Adrian Burns and the associated conspiracy, as alleged in Counts 4 and 5 of the Second Superseding Indictment at 11-12, filed March 9, 2017 (Doc. 947)("Indictment"), had anything to do with the Syndicato de Nuevo Mexico ("SNM").[1] Response at 2-3. It follows, according to J. Gallegos, that the Court lacks "a jurisdictional basis for the prosecution of Counts 4 and 5." Response at 2. See also Gallegos Defendant's Motion to Dismiss (Preindictment Delay) at 7, filed October 13, 2017 (Doc. 1318)("The United States Government has not pled and does not have sufficient facts to construct the nexus between a run-

---

[1]SNM is a violent prison gang formed in the early 1980s at the Penitentiary of New Mexico ("PNM") after a violent prison riot at PNM during which inmates seriously assaulted and raped twelve correctional officers after taking them hostage. Indictment at 3. During the riot, thirty-three inmates were killed, and over 200 were injured. See Indictment at 3. After the PNM riot, SNM expanded throughout the state's prison system and has had as many as 500 members. See Indictment at 3. SNM now has approximately 250 members, and "a 'panel' or 'mesa' (Spanish for table) of leaders who issue orders to subordinate gang members." Indictment at 3. SNM controls drug distribution and other illegal activities within the New Mexico penal system, but it also conveys orders outside the prison system. See Indictment at 3. Members who rejoin their communities after completing their sentences are expected to further the gang's goals, the main one being the control of and profit from narcotics trafficking. See Indictment at 3-4. Members who fail "to show continued loyalty to the gang [are] disciplined in various ways, [] includ[ing] murder and assaults." Indictment at 4. SNM also intimidates and influences smaller New Mexico Hispanic gangs to expand its illegal activities. See Indictment at 4. If another gang does not abide by SNM's demands, SNM will assault or kill one of the other gang's members to show its power. See Indictment at 4. SNM's rivalry with other gangs also manifests itself in beatings and stabbings within the prison system. See Indictment at 4. SNM further engages in violence "to assert its gang identity, to claim or protect its territory, to challenge or respond to challenges, to retaliate against a rival gang or member, [and] to gain notoriety and show its superiority over others." Indictment at 4. To show its strength and influence, SNM expects its members to confront and attack any suspected law enforcement informants, cooperating witnesses, homosexuals, or sex offenders. See Indictment at 5. To achieve its purpose of preserving its power, SNM uses intimidation, violence, threats of violence, assaults, and murder. See Indictment at 7. SNM as an enterprise generates income by having its members and associates traffic controlled substances and extort narcotic traffickers. See Indictment at 8. SNM's recent activities in a conspiracy to murder high-ranking New Mexico Corrections Department Officials inspired the Federal Bureau of Investigation's present investigation. See United States v. Garcia, No. CR 15-4275, Memorandum Opinion and Order at 2, 221 F. Supp. 3d 1275, 1277, filed November 16, 2016 (Doc. 133).

of-the-mill state homicide and the enterprise to confer jurisdiction upon this Court.").

The Court discerns three problems with J. Gallegos' argument. First, the Court's jurisdiction over Counts 4 and 5 does not depend on whether Burns' murder or the conspiracy to commit that murder was SNM related. The Court has "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. Counts 4 and 5 allege offenses against the United States, specifically 18 U.S.C. § 1959 ("VICAR") violations. Consequently, the Court has jurisdiction over Counts 4 and 5. See United States v. Perea, 413 F.2d 65, 67 (10th Cir. 1969)("The indictment charged offenses against the United States in language similar to that of the statutes. Subject matter jurisdiction was vested in the district court upon the filing of the indictment.").

J. Gallegos is correct, however, that the United States can prove the VICAR offenses that Counts 4 and 5 allege only if they introduce evidence indicating that Burns' murder and the conspiracy to commit that murder were either: (i) "consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from" the SNM; or (ii) committed "for the purpose of gaining entrance to or maintaining or increasing position in" the SNM. 18 U.S.C. § 1959.[2] If the United States fails to introduce such evidence at trial, then

---

[2]The Court's statement -- that the United States must prove that J. Gallegos had an SNM-related purpose for killing Burns -- would not be true if the United States were proceeding against J. Gallegos on an aiding and abetting theory of liability. To violate VICAR as an aider or abettor, a person must be aware of -- but need not share -- a principal's racketeering-based purpose. See United States Frampton, 382 F.3d 213, 223 (2d Cir. 2004)

> Applied to the facts of the present case, [a VICAR prosecution,] the burden was on the Government to prove that at the time Johnson[, an alleged aider or abettor,] assaulted Henry, he knew that Frampton[, an alleged principal,] was seeking to increase his position in the 41 Ingalls enterprise and acted toward that end.

United States Frampton, 382 F.3d at 223. See id. ("The intent necessary to support a conviction for aiding and abetting goes beyond the mere knowledge that the defendant's action would tend to advance some nefarious purpose of the principal. Rather, the defendant must act with the

- 3 -

"a judgment of acquittal" would be appropriate, because "the evidence [would be] insufficient to sustain a conviction" on Counts 4 and 5, because there would be no evidence regarding an element of the charged offenses. Fed. R. Crim. P. 29(a). Consequently, J. Gallegos' arguments about the connection, or the lack thereof, between the SNM, and Burns' murder and the conspiracy to commit that murder, go to the sufficiency of the United States' evidence and not

---

specific intent of facilitating or advancing the principal's commission of the underlying crime."). The United States Court of Appeal for the Tenth Circuit has said:

> To be guilty of aiding and abetting the commission of a crime, the defendant must willfully associate himself with the criminal venture and seek to make the venture succeed through some action of his own. Participation in the criminal venture may be established by circumstantial evidence and the level of participation may be of "relatively slight moment."

United States v. Andersen, 189 F.3d 1201, 1207 (10th Cir. 1999)(quoting United States v. Leos-Quejada, 107 F.3d 786, 794 (10th Cir. 1997)).

Someone can aid or abet a VICAR offense even if that person is aware of but indifferent to the offense's connection to an enterprise that engages in racketeering activity. For example, someone planning to join a racketeering enterprise, i.e., a gang, by committing a drive-by murder might tell their brother about that plan. Even if the brother does not think the aspiring gangster should join the gang, he might still provide assistance, e.g., by stealing a car, out of a desire to prevent law enforcement from identifying -- and imprisoning -- the aspiring gangster. The brother would be liable, as an aider or abettor, for the aspiring gangster's VICAR offense even though he did not want to join the gang and did not want the aspiring gangster to join the gang either. If the brother provided the same assistance without knowing the murder's purpose, however, then he would not be liable for the aspiring gangster's VICAR offense, because, while the brother knew that the aspiring gangster planned to commit murder, the friend did not know that the aspiring gangster planned to commit a VICAR murder.

The Court does not anticipate that the United States will proceed against J. Gallegos on an aiding and abetting theory, in which case the Court's discussion of VICAR aiding and abetting is academic, as applied to J. Gallegos' Response. While the Indictment's Count 5 cites 18 U.S.C. § 2, the federal aiding and abetting statute, and N.M. Stat. Ann. § 30-1-13, the New Mexico aiding and abetting statute, those statutory citations perhaps apply to J. Gallegos' brother, Defendant Andrew Gallegos, who is also charged in Count 5. See Indictment at 12. In any event, the Indictment's citations to aiding and abetting statutes are superfluous, because "'a defendant can be convicted as an aider and abettor even though he was indicted as a principal for commission of the underlying offense and not as an aider and abettor.'" United States v. Cooper, 375 F.3d 1041, 1049 (10th Cir. 2004)(quoting United States v. Langston, 970 F.2d 692, 706 (10th Cir. 1992)). See United States v. Alexander, 447 F.3d 1290, 1299 (10th Cir. 2006)("In short, a charge of the predicate crime puts defendant on notice that the jury may be instructed on aiding and abetting, thus satisfying any due process concerns.").

the Court's jurisdiction.

The second problem with J. Gallegos' argument is that, unless the United States consents, the Court must take the Indictment's allegations as true when considering a pretrial motion, and it is not free to evaluate the sufficiency of the evidence. See United States v. Hall, 20 F.3d 1084, 1087 (10th Cir. 1994)("Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion."); id. ("An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true."); id. at 1088 (permitting district courts "to dismiss charges at the pretrial stage under the limited circumstances where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case"). See also Memorandum Opinion and Order at 12, 2018 WL 1175086, at *5, filed December 7, 2017 (Doc. 1553)("MOO")("The Federal Rules of Criminal Procedure contain no analogue to summary judgment under rule 56 of the Federal Rules of Civil Procedure, so the United States does not need to provide pretrial evidentiary support for the Indictment either to the Court or to Gutierrez."). "The absence of summary judgment in federal criminal cases makes sense, because procedural mechanisms other than summary judgment test the sufficiency of the United States' evidence. That a properly constituted grand jury returned an indictment 'conclusively determines the existence of probable cause to believe' the defendant perpetrated the offense alleged." MOO at 12, 2017 WL 62680069, at *5 (quoting Kaley v. United States, 134 S. Ct. 1090, 1097 (2014)(Kagan, J.)). Accordingly, without the United States' consent, the Court cannot now rule on whether the United States' evidence makes out a VICAR violation.

The final problem with J. Gallegos' argument is that the United States' evidence, as the

United States described it orally, would permit a reasonable jury to conclude that Adrian Burns' murder and the conspiracy to commit that murder were done "for the purpose of . . . maintaining" J. Gallegos' position in the SNM. See 18 U.S.C. § 1959(a). According to the United States, its trial evidence will show that SNM rules require its members to retaliate violently when disrespected and that J. Gallegos killed Burns because of a drug dispute between the two. A reasonable jury could infer, from such evidence, that one reason J. Gallegos killed Burns was because failing to retaliate against Burns, as the SNM rules require, would undermine J. Gallegos' position in the SNM, which satisfies VICAR. See United States v. Smith, 413 F.3d 1253, 1278 (10th Cir. 2005)(stating that VICAR's "'motive requirement is satisfied if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise'" (quoting United States v. Dhinsa, 243 F.3d 635, 671 (2d Cir. 2001))). Accordingly, the Court denies the Response to the extent that it moves the Court to dismiss Counts 4 and 5 for want of jurisdiction or for insufficient evidence.

**IT IS ORDERED** that the requests in Defendant Joe Gallegos' Response to the United State's Notice of Proposed James Statements (Doc. 1903), filed March 12, 2018 (Doc. 1918) regarding the Court's jurisdiction or the sufficiency of the United States' evidence, are denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
  United States Attorney
Maria Ysabel Armijo
Randy M. Castellano
Matthew Beck
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

    *Attorneys for the Plaintiff*

Richard Sindel
Sindel, Sindel & Noble, P.C.
Clayton, Missouri

--and--

Brock Benjamin
Benjamin Law Firm
El Paso, Texas

    *Attorneys for Defendant Joe Lawrence Gallegos*

Patrick J. Burke
Patrick J. Burke, P.C.
Denver, Colorado

--and--

Cori Ann Harbour-Valdez
The Harbour Law Firm, P.C.
El Paso, Texas

    *Attorneys for Defendant Edward Troup*

Russel Dean Clark
Las Cruces, New Mexico

    *Attorney for Defendant Leonard Lujan*

James A. Castle
Castle & Castle, P.C.
Denver, Colorado

--and--

Robert R. Cooper
Albuquerque, New Mexico

    *Attorneys for Defendant Billy Garcia*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

    *Attorneys for Defendant Eugene Martinez*

Joseph E. Shattuck
Marco & Shattuck
Albuquerque, New Mexico

--and--

Jeffrey C. Lahann
Las Cruces, New Mexico

    *Attorneys for Defendant Allen Patterson*

John L. Granberg
Granberg Law Office
El Paso, Texas

--and--

Eduardo Solis
El Paso, Texas

    *Attorneys for Defendant Christopher Chavez*

Nathan D. Chambers
Nathan D. Chambers, LLC
Denver Colorado

--and--

Noel Orquiz
Deming, New Mexico

>*Attorneys for Defendant Javier Alonso*

Scott Moran Davidson
Albuquerque, New Mexico

--and--

Billy R. Blackburn
Albuquerque, New Mexico

>*Attorneys for Defendant Arturo Arnulfo Garcia*

Stephen E. Hosford
Stephen E. Hosford, P.C.
Arrey, New Mexico

--and--

Jerry Daniel Herrera
Albuquerque, New Mexico

>*Attorneys for Defendant Benjamin Clark*

Pedro Pineda
Las Cruces, New Mexico

>*Attorney for Defendant Ruben Hernandez*

Gary Mitchell
Mitchell Law Office
Ruidoso, New Mexico

>*Attorney for Defendant Jerry Armenta*

Larry A. Hammond
Osborn Maledon, P.A.
Phoenix, Arizona

--and--

Margaret Strickland
McGraw & Strickland
Las Cruces, New Mexico

  *Attorneys for Defendant Jerry Montoya*

Steven M. Potolsky
Jacksonville Beach, Florida

--and--

Santiago D. Hernandez
Law Office of Santiago D. Hernandez
El Paso, Texas

  *Attorneys for Defendant Mario Rodriguez*

Jacqueline K. Walsh
Walsh & Larranaga
Seattle, Washington

--and

Ray Velarde
El Paso, Texas

  *Attorneys for Defendant Timothy Martinez*

Joe Spencer
El Paso, Texas

--and--

Mary Stillinger
El Paso, Texas

  *Attorneys for Defendant Mauricio Varela*

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

--and--

Richard Jewkes
El Paso, Texas

  *Attorneys for Defendant Daniel Sanchez*

George A. Harrison
Las Cruces, New Mexico

  *Attorney for Defendant Gerald Archuleta*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

  *Attorney for Defendant Conrad Villegas*

Theresa M. Duncan
Duncan, Earnest, LLC
Albuquerque, New Mexico

--and--

Marc M. Lowry
Rothstein Donatelli, LLP
Albuquerque, New Mexico

  *Attorneys for Defendant Anthony Ray Baca*

Charles J. McElhinney
McElhinney Law Firm, LLC
Las Cruces, New Mexico

  *Attorney for Defendant Robert Martinez*

Marcia J. Milner
Las Cruces, New Mexico

  *Attorney for Defendant Roy Paul Martinez*

Christopher W. Adams
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Christopher Garcia*

William R. Maynard
El Paso, Texas

--and--

Carey Corlew Bhalla
Law Office of Carey C. Bhalla, LLC
Albuquerque, New Mexico

    *Attorneys for Defendant Carlos Herrera*

Justine Fox-Young
Albuquerque, New Mexico

--and--

Ryan J. Villa
Albuquerque, New Mexico

    *Attorneys for Defendant Rudy Perez*

Lisa Torraco
Albuquerque, New Mexico

--and--

Donavon A. Roberts
Albuquerque, New Mexico

    *Attorneys for Defendant Andrew Gallegos*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

    *Attorneys for Defendant Santos Gonzalez*

Angela Arellanes
Albuquerque, New Mexico

    *Attorneys for Defendant Shauna Gutierrez*

Jerry A. Walz
Walz and Associates
Albuquerque, New Mexico

    *Attorneys for Defendant Brandy Rodriguez*