IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                        No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL Sanchez, a.k.a.
"Dan Dan," GERALD ARCHULETA, a.k.a.
"Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ,
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Motion to Exclude Witness Joseph Otero Testimony, filed March 22, 2018 (Doc. 2141)("Motion"). In the Motion, Defendant Christopher

Chavez asserts that, "[o]n March 21, 2018, FBI Special Agent Leysha Lopez Recci interviewed Joseph Otero," which "produced an FBI 302" that "was entered on March 22, 2018," but was not provided to Chavez until April 12, 2018. Motion at 2. Chavez contends that "[t]he contents of the 302 were statements heretofore not previously attributable to any 302, state investigative report or transcript from any hearing." Motion at 2. Chavez reproduces, in his Motion, the portion of the Otero 302 that he finds objectionable:

> GARZA was killed pretty early in the morning, around the time that the cell[s] were unlocked. Christopher CHAVEZ aka "Critter," Eugene MARTINEZ, and Allen PATTERSON, aka "Trigger," killed GARZA. When OTERO looked into GARZA'S cell, CHAVEZ was Holding [sic] GARZA and strangling him, and MARTINEZ and PATTERSON were attacking him too. GARZA was killed because he was a member of Los Carnales gang. OTERO did not agree with this. OTERO was never a member of the SNM, however he was sometimes seen as one of them because he was housed with SNM members. To this day, OTERO remembers the look on GARZA's face as if begging for help.

Motion at 2 (quoting DeLeon 61816-61817). Chavez argues that Plaintiff United States of America's April 12, 2018 disclosure violated the Court's March 26, 2018, deadline for disclosure under the Jencks Act, 18 U.S.C. § 3500,[1] so he "proposes the Court prohibit and preclude Joseph Otero to testify consistent with the contents of the aforementioned FBI 302." Motion at 3.[2]

---

[1] The Jencks Act requires the United States, after "a witness called by the United States has testified on direct examination," to produce "any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500. The United States agreed, however, to produce its Jencks Act statements two weeks before this trial began, i.e., by March 26, 2018.

[2] The United States orally asserted that it -- meaning the prosecutors in this case -- gave the Otero 302 to the Defendants on April 12, 2018, because they did not have the Otero 302 until that date. That assertion indicates that the United States acted in good faith, but it does not excuse the Otero 302's delayed disclosure. The FBI had access to the Otero 302 as soon as it drafted that document, i.e., on March 22, 2018. The Jencks Act requires "the United States" -- and not any particular attorneys representing the United States -- to produce "any statement . . . of the witness in the possession of the United States." 18 U.S.C. § 3500(b).

[W]hether the nondisclosure was a result of negligence or design, it is the

Prohibiting Otero to testify about the matters that the Otero 302 contains, however, is not an appropriate remedy for the Otero 302's delayed disclosure. The United States complied with the Jencks Act even if it did not comply with the Jencks deadline to which it agreed -- March 26, 2018 -- because it produced the Otero 302 before Otero completed testifying on direct examination. See 18 U.S.C. § 3500(b). Consequently, the Jencks Act's draconian remedial provision -- which states that, in the event of a Jencks Act violation, "the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared" -- does not apply. 18 U.S.C. § 3500(d). Further, the United States Court of Appeals for the Tenth Circuit has declared that, notwithstanding the Jencks Act's mandatory phrasing, "[t]he Jencks Act does not require a striking of testimony or the declaring of a mistrial for every failure to comply." United States v. Heath, 580 F.2d 1011, 1019 (10th Cir. 1978). Instead, "[t]he remedy or sanction in each instance is for the trial court to impose." United States v. Heath, 580 F.2d at 1019. "Courts have found that late disclosure caused no prejudice in instances where an opportunity for full cross-examination had been provided and where the trial court found no bad faith on the prosecutor's part." United States v. Heath, 580 F.2d at 1019.

The Court, thus, has discretion to determine an appropriate remedy for the United States' violation of its self-imposed Jencks Act deadline, and excluding Otero's testimony regarding the content of the Otero 302 would be inappropriate. The United States can call witnesses without

---

responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government. . . . To the extent this places a burden on the large prosecution offices, procedures and regulations can be established to carry that burden and to insure communication of all relevant information on each case to every lawyer who deals with it.

Giglio v. United States, 405 U.S. 150, 154 (1972)(Burger, C.J.).

providing a preview of their testimony to the Defendants. For example, the United States could call Otero to testify even if it never documented its interviews with him[3] or even if it never interviewed him at all.[4] The Jencks Act exists to provide potential impeachment material to

---

[3]For Jencks Act purposes, an unrecorded oral statement does not qualify as a statement unless it was made before a grand jury. See 18 U.S.C. § 3500(e)(3)("[A] statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury."). Otherwise, a Jencks Act statement must be either "a written statement made by said witness and signed or otherwise adopted or approved by him," 18 U.S.C. § 3500(e)(1), or a "a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement . . . recorded contemporaneously with the making of such oral statement," 18 U.S.C. § 3500(e)(2).

> A preliminary problem for determining that the statement now before us may be produced is whether the statutory phrase "other recording" allows an even wider scope for production. We find the legislative history persuasive that the statute was meant to encompass more than mere automatic reproductions of oral statements.
>
> However, such a finding is only the beginning of the task of construction. It is clear that Congress was concerned that only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment. . . . [T]he legislation was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital. Quoting out of context is one of the most frequent and powerful modes of misquotation. We think it consistent with this legislative history, and with the generally restrictive terms of the statutory provision, to require that summaries of an oral statement which evidence substantial selection of material, or which were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent, are not to be produced [under 18 U.S.C. § 3500(e)(2)]. Neither, of course, are statements which contain the agent's interpretations or impressions.

Palermo v. United States, 360 U.S. 343, 352-53 (1959).

[4]An FBI 302 summarizing an interview with a potential witness is always a Jencks Act statement vis-à-vis the agent who drafts it. See Clancy v. United States, 365 U.S. 312, (1961)(stating that a memorandum summarizing witness interviews that a testifying FBI agent drafted and signed was a Jencks Act statement under 18 U.S.C. § 3500(e)(1)). See also United States Attorney's Office for the Western District of New York, Discovery Policy at 9 (dated October 2010)("[A] report of interview . . . is a statement of the agent who prepared the report. The report must be disclosed if that agent will be a witness and the report relates to the subject matter of the agent's testimony."). The 302 also qualifies as a Jencks Act statement, vis-à-vis the

potential witness interviewed by the FBI, "if the contents of the 302 were read to and approved by the potential witness." United States v. Narciso, 446 F. Supp. 252, 269 (E.D. Mich. 1977)(Pratt, J.). See 18 U.S.C. § 3500(e)(1)(declaring that "a written statement made by [a] witness and signed or otherwise adopted or approved by him" is a Jencks Act statement).

> "Statements" under [§ 3500(e)(1)] are not limited to such as the witness has himself set down on paper. They include also a statement written down by another which the witness "signed or otherwise adopted or approved" as a statement "made by said witness." True, the report does not bear Staula's [the witness'] signature . . . . However, if the paper was otherwise adopted or approved by the witness, his signature was not essential.

Campbell v. United States, 365 U.S. 85, 93-94 (1961)(quoting 18 U.S.C. § 3500(e)(1)).

Even if a prospective witness does not adopt or approve an FBI 302, the 302 qualifies as the prospective witness' Jencks Act statement insofar as it contains "a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement." 18 U.S.C. § 3500(e)(2). See United States v. Rewald, 889 F.2d 836 (9th Cir. 1989)(reviewing a district court's determination that an FBI 302, which a witness did not approve or adopt, was not a Jencks Act statement, and remanding "for a determination whether the FBI 302 reports contained substantially verbatim accounts of the interviews with the agents" (quoting 18 U.S.C. § 3500(e)(1))). FBI agents do not typically draft their 302s "contemporaneously with the making of" a potential witness' oral statements. 18 U.S.C. § 3500(e)(2). There is usually some delay between the interview and drafting the 302. See United States v. Consolidated Packaging Corp., 575 F.2d 117, 129 (7th Cir. 1978)("[T]he statute [18 U.S.C. § 3500(e)(2)] does not require production of a statement subsequently prepared no matter how accurate it may be."). Instead, agents draft 302s after an interview ends:

> The government represents, and the experience of the Court confirms, that in this District the overwhelming majority of witness statements are memorialized in FBI 302 forms or their equivalent. It is usually the case that a government agent speaks with a potential witness and then returns to the office and dictates a report from either his notes or his memory.

United States v. Narciso, 446 F. Supp. at 268. An FBI agent's notes, however, are taken contemporaneously, so "rough interview notes [may] contain verbatim statements," and "formal 302 reports may repeat these substantially verbatim statements." United States v. Rewald, 889 F.2d at 868 n.34. See United States v. Harry, 2013 WL 684671, at *12 (D.N.M. Feb. 6, 2013)(Browning, J.)(concluding that agent notes from witness interviews are discoverable under the Jencks Act, because "it is likely that there are statements of the witnesses in these materials"). Consequently, an FBI 302 can qualify as a witness' Jencks Act statement under 18 U.S.C. § 3500(e)(2).

If neither 18 U.S.C. § 3500(e)(1) nor § 3500(e)(2) applies, an FBI 302 that summarizes an interview with a potential witness does not qualify as a Jencks Act statement of the potential witness. See United States v. Gonzalez-Melendez, 570 F.3d 1, 3-4 (1st Cir. 2009)(remanding for a district court to decide for itself -- as opposed to accepting a representation from the United

defendants and not to provide a sneak peek at the United States' case in chief. See United States v. Smaldone, 484 F.2d 311 (10th Cir. 1973)(stating that the Jencks Act's object was "to allow defendant to review material which could be regarded as a statement for the purpose of impeachment"). See also 18 U.S.C. § 3500(b)(stating that the United States only needs to

---

States -- regarding whether § 3500(e)(1) or § 3500(e)(2) applies to an FBI 302); United States v. Jordan, 316 F.3d 1215, 1252 (11th Cir. 2003)("[A]n interviewer's raw notes, and anything prepared from those notes (such as an FBI 302), are not *Jencks Act* statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness."). See also id. at 1255 ("Government agents' reports of witness interviews and summaries of those interviews are not *Jencks Act* statements unless they are (1) substantially verbatim, contemporaneously recorded transcripts, or (2) signed or otherwise adopted by the witness.").

> There is no evidence, however, that Agent Barry read his notes back to [the witness] or that [the witness] otherwise adopted what Agent Barry had written. Nor is there any indication that Agent Barry made or was attempting to make a verbatim record of the interview. . . . Accordingly, we conclude that the district court's finding that the FBI 302 Report was not a Jencks Act statement is not clearly erroneous.

United States v. Roseboro, 87 F.3d 642, 646 (4th Cir. 1996).

Although it is not required, some components of the United States Department of Justice treat all 302s as Jencks Act statements. See Memorandum from Benjamin B. Wagner, United States Attorney for the Eastern District of California to the Criminal Division Regarding Discovery Policy at 2 (dated August 24, 2012)("Although a FBI 302 (report of interview) of the witness is generally not considered to be a statement within the meaning of the Jencks Act . . . it is the office's policy generally to produce such reports as if they are Jencks Act Statements.").

> Unless unrelated to the case, or absent unusual circumstances such as potential serious threats to witness safety, national security, or an ongoing investigation, it is the Office Policy, in the exercise of an expansive discovery practice to disclose reports of interview to defense counsel together with other Jencks Act material. Remember, even though a report of interview is not generally a statement of the witness interview, it is a statement of the agent who prepared the report.

United States Attorney's Office for the Western District of New York, Discovery Policy at 9 (dated October 2010). A practice of disclosing all FBI 302s that memorialize witness interviews avoids potential mischaracterization of 302s as non-Jencks statements; such a practice also permits defendants to prepare for trial and obviates the risk that an undisclosed 302 will contain impeachment information that is discoverable under rule 16 of the Federal Rules of Criminal Procedure, Brady v. Maryland, 373 U.S. 83 (1963), or Giglio v. United States, 405 U.S. 150 (1972), but the Jencks Act does not require that practice.

disclose its witnesses' prior statements after they have "testified on direct examination").  While the United States should have lived up to its promise[5] and provided the Otero 302 to the Defendants on March 26, 2018, that the Defendants received the Otero 302 on April 12, 2018 -- a week before Otero took the stand -- allowed them to prepare to impeach Otero.  The Defendants have had more opportunity to prepare for cross examination than the Jencks Act affords, and there has been no violation of the Jencks Act.  Accordingly, the Court concludes that restricting the subject matter of Otero's testimony is not necessary to avoid prejudicing the Defendants and excluding eye witness testimony about the Rolando Garza murder would significantly hinder this trial's truth-seeking function.  See Strickland v. Washington, 466 U.S. 668, 687 (1984)(equating "a fair trial" with "a trial whose result is reliable").  Accordingly, the Court denies the Motion.

**IT IS ORDERED** that the Motion to Exclude Witness Joseph Otero Testimony, filed March 22, 2018 (Doc. 2141), is denied.

_____
UNITED STATES DISTRICT JUDGE

---

[5]Despite the Defendants' repeated requests that the Court set early Jencks Act disclosure deadlines, the Court has not done so, saying that it did not think it should use its raw judicial power to set a deadline earlier than Congress imposed.  The United States, perhaps acceding to the Defendants' relentless pressure, agreed to a pre-trial Jencks Act disclosure.  See Transcript of Hearing at 47:5-48:3 (held March 12, 2018)(Court, Armijo), filed April 3, 2018 (Doc. 2026).  In the end, however, the United States could have played hard ball and refused to offer or agree to produce Jencks Act material before its witnesses testified on direct examination.  Thus, while the Court is disappointed that the United States did not do what it said it would, it does not look like restricting Otero's testimony is appropriate to remedy the Otero 302's delayed disclosure, which occurred over a week before Otero took the stand.

*Counsel:*

Fred Federici
  Attorney for the United States
    Acting Under Authority Conferred by 28 USC § 515
Albuquerque, New Mexico

--and--

Maria Ysabel Armijo
Randy M. Castellano
Matthew Beck
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

    *Attorneys for the Plaintiff*

Richard Sindel
Sindel, Sindel & Noble, P.C.
Clayton, Missouri

--and--

Brock Benjamin
Benjamin Law Firm
El Paso, Texas

    *Attorneys for Defendant Joe Lawrence Gallegos*

Patrick J. Burke
Patrick J. Burke, P.C.
Denver, Colorado

--and--

Cori Ann Harbour-Valdez
The Harbour Law Firm, P.C.
El Paso, Texas

    *Attorneys for Defendant Edward Troup*

Russel Dean Clark
Las Cruces, New Mexico

    *Attorney for Defendant Leonard Lujan*

James A. Castle
Castle & Castle, P.C.
Denver, Colorado

--and--

Robert R. Cooper
Albuquerque, New Mexico

> *Attorneys for Defendant Billy Garcia*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

> *Attorneys for Defendant Eugene Martinez*

Joseph E. Shattuck
Marco & Shattuck
Albuquerque, New Mexico

--and--

Jeffrey C. Lahann
Las Cruces, New Mexico

> *Attorneys for Defendant Allen Patterson*

John L. Granberg
Granberg Law Office
El Paso, Texas

--and--

Eduardo Solis
El Paso, Texas

> *Attorneys for Defendant Christopher Chavez*

Nathan D. Chambers
Nathan D. Chambers, LLC
Denver Colorado

--and--

Noel Orquiz
Deming, New Mexico

    *Attorneys for Defendant Javier Alonso*

Scott Moran Davidson
Albuquerque, New Mexico

--and--

Billy R. Blackburn
Albuquerque, New Mexico

    *Attorneys for Defendant Arturo Arnulfo Garcia*

Stephen E. Hosford
Stephen E. Hosford, P.C.
Arrey, New Mexico

--and--

Jerry Daniel Herrera
Albuquerque, New Mexico

    *Attorneys for Defendant Benjamin Clark*

Pedro Pineda
Las Cruces, New Mexico

    *Attorney for Defendant Ruben Hernandez*

Gary Mitchell
Mitchell Law Office
Ruidoso, New Mexico

    *Attorney for Defendant Jerry Armenta*

Larry A. Hammond
Osborn Maledon, P.A.
Phoenix, Arizona

--and--

Margaret Strickland
McGraw & Strickland
Las Cruces, New Mexico

  *Attorneys for Defendant Jerry Montoya*

Steven M. Potolsky
Jacksonville Beach, Florida

--and--

Santiago D. Hernandez
Law Office of Santiago D. Hernandez
El Paso, Texas

  *Attorneys for Defendant Mario Rodriguez*

Jacqueline K. Walsh
Walsh & Larranaga
Seattle, Washington

--and--

Ray Velarde
El Paso, Texas

  *Attorneys for Defendant Timothy Martinez*

Joe Spencer
El Paso, Texas

--and--

Mary Stillinger
El Paso, Texas

  *Attorneys for Defendant Mauricio Varela*

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

--and--

Richard Jewkes
El Paso, Texas

    *Attorneys for Defendant Daniel Sanchez*

George A. Harrison
Las Cruces, New Mexico

    *Attorney for Defendant Gerald Archuleta*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

    *Attorney for Defendant Conrad Villegas*

Theresa M. Duncan
Duncan, Earnest, LLC
Albuquerque, New Mexico

--and--

Marc M. Lowry
Rothstein Donatelli, LLP
Albuquerque, New Mexico

    *Attorneys for Defendant Anthony Ray Baca*

Charles J. McElhinney
McElhinney Law Firm, LLC
Las Cruces, New Mexico

    *Attorney for Defendant Robert Martinez*

Marcia J. Milner
Las Cruces, New Mexico

    *Attorney for Defendant Roy Paul Martinez*

Christopher W. Adams
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Christopher Garcia*

William R. Maynard
El Paso, Texas

--and--

Carey Corlew Bhalla
Law Office of Carey C. Bhalla, LLC
Albuquerque, New Mexico

    *Attorneys for Defendant Carlos Herrera*

Justine Fox-Young
Albuquerque, New Mexico

--and--

Ryan J. Villa
Albuquerque, New Mexico

    *Attorneys for Defendant Rudy Perez*

Lisa Torraco
Albuquerque, New Mexico

--and--

Donavon A. Roberts
Albuquerque, New Mexico

    *Attorneys for Defendant Andrew Gallegos*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

    *Attorneys for Defendant Santos Gonzalez*

Angela Arellanes
Albuquerque, New Mexico

    *Attorneys for Defendant Shauna Gutierrez*

Jerry A. Walz
Walz and Associates
Albuquerque, New Mexico

    *Attorneys for Defendant Brandy Rodriguez*