**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE GALLEGOS, EDWARD TROUP, a.k.a. "Huero Troup," LEONARD LUJAN, BILLY GARCIA, a.k.a. "Wild Bill," EUGENE MARTINEZ, a.k.a. "Little Guero," ALLEN PATTERSON, CHRISTOPHER CHAVEZ, a.k.a. "Critter," JAVIER ALONSO, a.k.a. "Wineo," ARTURO ARNULFO GARCIA, a.k.a. "Shotgun," BENJAMIN CLARK, a.k.a. "Cyclone," RUBEN HERNANDEZ; JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "Boxer," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," DANIEL SANCHEZ, a.k.a. "Dan Dan," GERALD ARCHULETA, a.k.a. "Styx," a.k.a. "Grandma," CONRAD VILLEGAS, a.k.a. "Chitmon," ANTHONY RAY BACA, a.k.a. "Pup," ROBERT MARTINEZ, a.k.a. "Baby Rob," ROY PAUL MARTINEZ, a.k.a. "Shadow," CHRISTOPHER GARCIA, CARLOS HERRERA, a.k.a. "Lazy," RUDY PEREZ, a.k.a. "Ru Dog," ANDREW GALLEGOS, a.k.a. "Smiley," SANTOS GONZALEZ; PAUL RIVERA, SHAUNA GUTIERREZ, and BRANDY RODRIGUEZ,

Defendants.

**MEMORANDUM OPINION AND ORDER**[1]

---

[1]The Court issued previously two preliminary versions of this Memorandum Opinion and Order. See Preliminary Memorandum Opinion, filed September 7, 2021 (Doc. 3434); Second Preliminary Memorandum Opinion, filed September 9, 2021 (Doc. 3442). The Court issued those preliminary Memorandum Opinions to give the parties an indication of its rulings during trial. The conclusions in this Memorandum Opinion and Order do not differ substantially from those in the two preliminary Memorandum Opinions. See Preliminary Memorandum Opinion, filed

**THIS MATTER** comes before the Court on the United States' Notice of Proposed James Statements, filed January 8, 2021 (Doc. 3228)("Notice"). The Court held a hearing on February 2, 2021, pursuant to United States v. James, 590 F.2d 575 (5th Cir. 1979)("James"). See Transcript of Hearing (taken February 2, 2021), filed July 28, 2021 (Doc. 3337)("Tr."). The primary issue is whether the Court should admit ninety-one co-conspirator statements under rule 801(d)(2)(E) of the Federal Rules of Evidence. The Court concludes that: (i) statements 4, 6, 9, 14, 15, 24, 32, 36, 37, 43, 44, 49, 55, 58, 62, 64, 68, 69, 71, 74, 80, 81, 82, 83, 85, 87, 88, 89, 90, and 91 are admissible; (ii) statements 1, 2, 3, 7, 8, 10, 11, 13, 16, 17, 22, 23, 25, 27, 28, 30, 35, 38, 39, 42, 45, 46, 47, 53, 54, 56, 59, 61, 65, 67, 70, 72, 77, 78, 79, 84, and 86 are either admissible in part or potentially admissible; and (iii) statements 5, 12, 18, 19, 20, 21, 26, 29, 31, 33, 34, 40, 41, 48, 50, 51, 52, 57, 60, 63, 66, 73, 75, and 76 are not admissible. The Court, therefore, will grant the Notice in part and deny the Notice in part.

## FINDINGS OF FACT

The Federal Rules of Criminal Procedure require the Court to state "its essential findings on the record" when "factual issues are involved in deciding a motion." Fed. R. Crim. P. 12(d). The Court makes these findings by a preponderance of the evidence and only to determine preliminary questions regarding whether evidence is admissible. See Fed. R. Evid. 104(a). The Court makes these findings under the authority of rule 104(a) of the Federal Rules of Evidence, which requires a judge to decide preliminary questions relating to the admissibility of evidence, including the legality of a search or seizure and the voluntariness of an individual's confession or consent to a search. See United States v. Merritt, 695 F.2d 1263, 1269-70 (10th Cir. 1982). In

September 7, 2021 (Doc. 3434); Second Preliminary Memorandum Opinion, filed September 9, 2021 (Doc. 3442). Rather, this Memorandum Opinion and Order adds clarification, precision, and additional citations.

deciding such preliminary questions, the other rules of evidence, except those with respect to privileges, do not bind the Court. See Fed. R. Evid. 104(a)("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so doing, the court is not bound by evidence rules, except those on privilege."). The Court bases these conclusions on the testimony it heard at its James hearing as well as the evidence it admitted at that hearing, including the "prior sworn testimony relating to the Castillo and Garza murder . . . from the witnesses," see Tr. at 13:9-10, Frederico Munoz' Plea Agreement, No. CR 16-1613, filed September 22, 2016 (Doc. 229)("Munoz Plea Agreement"); Leonard Lujan's Plea Agreement, filed March 13, 2017 (Doc. 963)("Lujan Plea Agreement"); Eugene Martinez' Plea Agreement, filed May 5, 2017 (Doc. 1138)("Martinez Plea Agreement"); and Benjamin Clark's Sealed Plea Agreement, filed November 15, 2016 (Doc. 768)("Clark Plea Agreement"), see Tr. at 13:13-25 (Castellano, Court, Gorman). Notwithstanding the Court's findings, DeLeon is presumed innocent. The Court makes the following findings of fact:

1. A conspiracy to kill Frank Castillo existed. See Lujan Plea Agreement ¶ 7, at 4-5[2]; Clark Plea Agreement ¶ 7, at 6.

[2]The Court accepted into evidence a letter by Assistant United States Attorney Jack Burkhead stating that Lujan would not be credible in the eyes of a rational factfinder. See Tr. at 33:8-9 (Court); id. at 33:17-25 (reading from, Burkhead's letter, stating: "Mr. Lujan's credibility is in serious doubt."). Evidence that the Court can consider when deciding whether a conspiracy to kill Castillo existed corroborates the Lujan Plea Agreement. See, e.g., FBI 302 of Samuel Gonzales at 5, filed March 9, 2018 (Doc. 1909-3)("Francisco CASTILLO was killed in 2001 because he 'messed up' with Billy GARCIA."); FBI 1023 at 2, filed March 9, 2018 (Doc. 1909-5)("2001 Murder of Frank Castillo and Rolando Garcia at the Southern New Mexico Correctional Facility in Las Cruces were called by BILLY GARCIA ('Wild Bill'). Several members participated in the double homicide and EDWARD TROUP and CHRI[S]TOPHER CHAVEZ admitted to the murders during conversations with the [Confidential Human Source]."); Jaramillo 302 at 2 ("LUJAN relayed that GARCIA told LUJAN to find people to murder CASTILLO and LUJAN chose JARAMILLO, GALLEGOS and DELEON."). This corroborating evidence assuages any concern regarding Lujan's credibility on the members of the conspiracy.

2. The Castillo conspiracy includes five indicted conspirators: (i) DeLeon, (ii) J. Gallegos; (iii) Troup; (iv) Lujan; and (v) B. Garcia. See Lujan Plea Agreement ¶ 7, at 4-5.

3. The Castillo conspiracy includes six unindicted conspirators: (i) Angel Munoz, see Transcript of Motions Hearing at 9:17-10:9 (taken March 13, 2018)(Castellano, Stemo), filed April 3, 2019 (Doc. 2027)("March 13 Tr."); (ii) Leroy Lucero, see March 13 Tr. at 16:16-24 (Castellano, Stemo); (iii) Jaramillo, see March 13 Tr. at 18:22-4 (Castellano, Stemo); id. at 20:2-9 (Castellano, Stemo); (iv) Federico Munoz, see March 13 Tr. at 21:10-22 (Castellano, Stemo); (v) Willie Amador, see March 13 Tr. at 29:16-24 (Castellano, Stemo); and (vi) Jessie Ibarra, see March 13 Tr. at 29:16-24 (Castellano, Stemo).

4. The Castillo conspiracy continued until Castillo's death on March 26, 2001. See Lujan Plea Agreement ¶ 7, at 4-5.

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible." United States v. Christy, 2011 WL 5223024, at *5 (D.N.M. 2011)(Browning, J.)(citing Fed. R. Evid. 802). Under rule 801(c) of the Federal Rules of Evidence, "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999)(Carnes, J.). A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness. See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)(Hartz, J.)("We have already explained why the content of the statement, if used substantively, would be inadmissible

hearsay. If admitted for impeachment purposes, however, it is not hearsay."). Rule 805 of the Federal Rules of Evidence recognizes that "[h]earsay within hearsay" -- commonly referred to as double hearsay -- may be admissible "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. A party opponent's statement is excluded from the definition of hearsay where:

> The statement is offered against an opposing party and:
>
> > **(A)** was made by the party in an individual or representative capacity;
> >
> > **(B)** is one the party manifested that it adopted or believed to be true;
> >
> > **(C)** was made by a person whom the party authorized to make a statement on the subject;
> >
> > **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
> >
> > **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2). The United States Court of Appeals for the Tenth Circuit has stated:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from restrictive influences of the opinion rule and the rule requiring first-hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for a generous treatment of this avenue of admissibility.

Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 667 (10th Cir. 2006)(Seymour, J.)(internal quotation marks and alterations omitted).[3]

---

[3]The 2011 restyling of the Federal Rules removed "admissions" from the language of rule 801(d) of the Federal Rules of Evidence, and uses instead the term "statements." Fed. R. Evid. 801(d). This replacement was purposeful: "The term 'admissions' is confusing because not all statements covered by the exclusion are admissions in the colloquial sense -- a statement can be

Hearsay evidence is generally inadmissible "because it is considered unreliable." United States v. Lozado, 776 F.3d 1119, 1121 (10th Cir. 2015)(citing Williamson v. United States, 512 U.S. 594, 598 (1994)). See Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement offered "to prove the truth of the matter asserted in the statement"). In addition to nonhearsay-styled statements under rule 801, the hearsay rule is also subject to several exceptions. Under rule 804(b)(3), an out-of-court statement is admissible if the declarant is unavailable to testify, and the statement is "against the declarant's proprietary, pecuniary, or penal interest." United States v. Lozado, 776 F.3d at 1125 (citing Williamson v. United States, 512 U.S. at 599-600). A statement against interest is one that "a reasonable person in the declarant's position would have made only if the person believed it to be true." Fed. R. Evid. 804(b)(3)(A). Moreover, the statement must be "supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3)(B).

## LAW REGARDING COCONSPIRATOR STATEMENTS

The Federal Rules of Evidence define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay evidence usually is not admissible. See Fed. R. Evid. 802. Some out-of-court statements, however, are not hearsay

---

within the exclusion even if it 'admitted' nothing and was not against the party's interest when made." Fed. R. Evid. 801, advisory committee's note on 2011 Amendments.

Although the advisory committee made the commentary quoted in the text regarding the trustworthiness of "admissions by a party-opponent" before the 2011 amendments to the Federal Rules of Evidence, the analysis should not be different under the new 2011 restyling of the rules. Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 should still be useful for cases after the restyling. Fed. R. Evid. 801.

even when they are offered for proof of the matter asserted. See Fed. R. Evid. 801(d). Statements that are "offered against an opposing party" and were "made by the party's coconspirator during and in furtherance of the conspiracy" are not hearsay. Fed. R. Evid. 801(d)(2)(E).

To admit out-of-court statements by coconspirators under rule 801(d)(2)(E), "the United States must demonstrate by a preponderance of the evidence that: (i) a conspiracy existed; (ii) the declarant and the defendant were members of that conspiracy; and (iii) the statements that the United States seeks to admit were made during the course and in furtherance of the conspiracy." United States v. Vigil, No. CR 05-2051 JB, 2006 WL 4109681, at *3 (D.N.M. Aug. 31, 2006)(Browning, J.)(citing United States v. Sinclair, 109 F.3d 1527, 1533 (10th Cir. 1997)). The Court may consider the statements themselves, as well as independent evidence, to determine whether the conspiracy existed. See United States v. Lopez-Gutierrez, 83 F.3d 1235, 1242 (10th Cir. 1996)("In making its preliminary factual determination as to whether a conspiracy exists, the court may consider the hearsay statement sought to be admitted, along with independent evidence tending to establish the conspiracy."). While the statement itself "does not by itself establish . . . the existence of the conspiracy or participation in it," Fed. R. Evid. 801(d)(2), "there need only be some independent evidence linking the defendant to the conspiracy." United States v. Lopez-Gutierrez, 83 F.3d at 1242 (internal quotations and citations omitted). This "independent evidence may be sufficient even when it is not 'substantial.'" United States v. Lopez-Gutierrez, 83 F.3d at 1242 (internal citation omitted). The Tenth Circuit has noted: "We have defined independent evidence as evidence other than the proffered coconspirator statements themselves." United States v. Lopez-Gutierrez, 83 F.3d at 1242 (internal quotation marks and alterations omitted)(quoting United States v. Martinez, 825 F.2d 1451, 1451 (10th Cir. 1987)).

"[I]t is not necessary for the United States to show that proffered statements were made

during the time in which [the defendant] was a member of a conspiracy." United States v. Vigil, 2006 WL 4109681, at *5 (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 393 (1948))("With the conspiracy thus fully established, the declarations and acts of the various members, even though made or done prior to the adherence of some to the conspiracy, become admissible against all as declarations or acts of co-conspirators in aid of the conspiracy.")). Moreover, a newcomer to a conspiracy assumes the risk for what has already happened in the course of the conspiracy. See United States v. Brown, 943 F.2d 1246, 1255 (10th Cir. 1991)("The fact that appellant may have joined the conspiracy after its inception does not make his co-conspirators' previous statements inadmissible."); United States v. Adamo, 882 F.2d 1218, 1230-31 (7th Cir. 1989)(holding one who joins and participates in a conspiracy "adopt[s] the previous acts and declarations of his fellow co-conspirators").

In determining the admissibility of coconspirator statements, "[t]he strongly preferred order of proof" is for the district court to hold a hearing "outside the presence of the jury to determine by a preponderance of the evidence the existence of a predicate conspiracy." United States v. Urena, 27 F.3d 1487, 1491 (10th Cir. 1994). A defendant does not possess a right to a pretrial hearing on admissibility of coconspirators statements; however, "a district court can only admit coconspirator statements if it holds a James hearing or conditions admission on forthcoming proof of a 'predicate conspiracy through trial testimony or other evidence.'" United States v. Townley, 472 F.3d 1267, 1273 (10th Cir. 2007)(quoting United States v. Owens, 70 F.3d 1118, 1123 (10th Cir. 1995)). The Tenth Circuit affords trial courts this flexibility, because it recognizes that it is not always practical for the United States to demonstrate that a conspiracy existed before admitting specific evidence at trial. See United States v. Peterson, 611 F.2d 1313, 1330 (10th Cir. 1979)(noting that the admissibility determination contemplates presentation of requisite

conspiracy evidence before or during the United States' case in chief).

In United States v. Vigil, the Court did not hold a James hearing, because the defendant's first trial ended in a hung jury, and the Court concluded that the evidence that the Honorable James A. Parker, Senior United States District Judge for the District of New Mexico, "admitted at the first trial satisfies the preponderance standard on the basis of the transcripts of the first trial's testimony." 2006 WL 4109681, at *4. Vigil was charged, among other charges, with being a member of a conspiracy to commit RICO violation, and the United States moved the Court to permit it to elicit non-hearsay coconspirator statements in Vigil's retrial. See 2006 WL 4109681, at *1. The Court noted that it had previously found, in deciding Vigil's rule 29 motion for acquittal, that "'a reasonable jury could have found that Vigil agreed with at least one other person to conduct or participate in the affairs of the enterprise through a pattern of racketeering activity, or knowingly and voluntarily participated in the conspiracy.'" 2006 WL 4109681, at *4 (citing United States v. Vigil, No. CR 05-2051 JB, Memorandum Opinion, filed Aug. 7, 2006 (Doc. 268)).

In support of its determination that the United States had met its burden to prove that Vigil participated in the existent conspiracy, the Court pointed to testimony asserting that Garcia, an alleged coconspirator, "told Vigil that he would set up the same arrangement with Vigil as with Montoya, Vigil learned about the prior arrangement with Montoya through Garcia, Vigil indicated that he intended to continue the fee-sharing arrangement that Montoya had set up, and Vigil threatened to withhold the SLOM contract from Everage." 2006 WL 4109681, at *4 (internal quotation marks and citations omitted). The Court reasoned that "[p]roof of the existence of a conspiracy is often based on circumstantial evidence, and this testimony is sufficient to establish Vigil's participation in a conspiracy by a preponderance of the evidence." 2006 WL 4109681, at *5. The Court thus concluded that it would "permit the United States to elicit from its witnesses

at trial co-conspirator statements made in furtherance of the conspiracy charged." 2006 WL 4109681, at *6.

**LAW REGARDING RULE 803(3)**

Rule 803(3) excepts from the general bar on hearsay "[a] statement of the declarant's then existing state of mind [or] emotion." Fed. R. Evid. 803(3). Rule 803(3) permits the introduction of "hearsay . . . , even though the declarant is available as a witness," for a statement of the declarant's "[t]hen existing mental, emotional, or physical condition":

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Fed. R. Evid. 803(3).

For the statement to qualify under the exception, it "must relate to the declarant's state of mind during" the incident in question. United States v. Netschi, 511 F. App'x. 58, 61 (2d Cir. 2013)("To admit statements of one's state of mind with regard to conduct that occurred . . . earlier as in this case would significantly erode the intended breadth of this hearsay exception.")(quoting United States v. Cardascia, 951 F.2d 474, 488 (2d Cir. 1991))(internal quotations omitted). This requirement is not to say that the statement must be said at the very moment of the incident, but for intent to be proved, it must be "contemporaneous" to the act. Mutual Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 295 (1892). To be contemporaneous and therefore admissible under the present state of mind exception, a statement must be "part of a continuous mental process." United States v. Cardascia, 951 F.2d 474, 488 (2d Cir. 1991). In addition to the requirements that the statement be contemporaneous to the incident at hand and relevant to the issues of the case, it must also be established that there was no opportunity for the declarant to

"fabricate or to misrepresent his thoughts." United States v. Jackson, 780 F.2d 1305, 1315 (7th Cir. 1986)(quoting United States v. Layton, 549 F. Supp. at 909). The statements of intent must reveal information or details about the future, which has been contrasted with statements of memory, or looking back to the past. See Shepard v. United States, 290 U.S. 96, 104 (1933). When statements entail issues of looking into the past combined with other concerns, it can often be too confusing for a jury to extract, upsetting the balance of advantage, and ultimately making the evidence inadmissible. See Shepard v. United States, 290 U.S. at 104. "The most obvious risk of prejudice is that the jury will consider the hearsay statement not as proof of state of mind and the subsequent conduct of the declarant, but rather for the truth of the facts that are related in the statement." 4 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, Fed. Rules of Evidence Manual, §803.02 at 4-803 (11th ed. 2017).

## ANALYSIS

The Court makes determinations regarding the existence of a conspiracy and its membership. See Findings of Fact ("FOF"), supra. The Court concludes that the United States establishes one conspiracy to kill Frank Castillo. See FOF 1, supra. The Court makes particularized judgments regarding the proffered James statements' admissibility under the Federal Rules of Evidence. The Court provides the following table:

| James Proffered Statement | Ruling |
| --- | --- |
| Statement 1: "Billy Garcia tasked Leonard Lujan with finding an inmate to carry out the murders of Garza and Castillo. The murders were to be executed simultaneous[ly]."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: DeLeon. See Tr. 63:5-65: 15 (LeBlanc, Court) | This statement, as amended at the hearing, is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. at 65:16-20 (Court).<br><br>As amended, Statement 1 reads: "Billy Garcia tasked Leonard Lujan with finding an inmate to carry out the murder[] of . . . Castillo." |
| Statement 2: "Billy Garcia wanted Castillo and Garza 'to be taken out' by strangulation."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: None, as amended. See Tr. 66:15-17 (LeBlanc). | This statement, as amended at the hearing, is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. at 66:6-21 (Court, LeBlanc, Castellano).<br><br>As amended, Statement 2 reads: "Billy Garcia wanted Castillo . . . 'to be taken out' by strangulation." |
| Statement 3: "The Castillo and Garza murders were an order. Anyone who did not follow that order was to be killed as well."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: None, as amended. See Tr. 67:7-10 (LeBlanc). | This statement, as amended at the hearing, is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. at 67:2-6 (Court).<br><br>As amended, Statement 3 reads: "The Castillo . . . murder[] [was] an order. Anyone who did not follow that order was to be killed as well."<br><br>The orders to murder Castillo and Garza are not hearsay, because they are not offered to prove the truth of the matter asserted. See Fed. R. Evid. 801(c). |

| | |
|---|---|
| Statement 4: "Billy Garcia was planning to kill everyone in the unit with a green light but was starting with Castillo and Garza."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: None regarding rule 803(3). See Tr. at 68:1-10 (Castellano, LeBlanc, Court) | This statement is a statement of B. Garcia's then-existing state of mind, specifically his plan, so it is admissible for its truth under rule 803(3). |
| Statement 5: "These murders needed to be done because the SNM gang was losing status with other gangs."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This is not a statement made in furtherance of the Castillo conspiracy, so it is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. at 68:10-11 (Court). |
| Statement 6: "Leonard Lujan tells Eugene Martinez 'I'm telling you right now where it's coming from and everything,' referring to Billy Garcia."<br><br>Declarant: Leonard Lujan (first- level) and Billy Garcia (second- level)<br><br>Source: Leonard Lujan, Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: DeLeon. See Tr. at 68:19-69:20 (LeBlanc) | This statement is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. at 70:16-12 (Court). Lujan is a member of the Castillo conspiracy. See FOF at 2. |
| Statement 7: "Billy Garcia ordered the murder of Castillo due to him cooperating with law enforcement."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001 | This statement is not a statement made in furtherance of the Castillo conspiracy, so it is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. at 70:13 (Court).<br><br>If the statement is offered for the effect on the listener -- that is, for the fact that the Castillo murder was ordered -- then it is not a |

| | |
|---|---|
| Objections: None | statement and, therefore, not hearsay. See Fed. R. Evid. 801. |
| Statement 8: "Billy Garcia ordered Garza to be killed for being a former Los Carnales member."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is not a statement made in furtherance of the Castillo conspiracy, so it is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. at 70:13 (Court).<br><br>If the statement is offered for the effect on the listener -- that is, for the fact that the Garza murder was ordered -- then it is not a statement and, therefore, not hearsay. See Fed. R. Evid. 801. |
| Statement 9: "'What the fuck is going on? I sent word a long time ago to clean house.' Billy Garcia was upset Leonard Lujan had not taken charge in the facility."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: DeLeon. See Tr. at 70:19-71:6 (LeBlanc) | This statement is admissible for its truth against the members conspiracy under rule 801(d)(2)(E), because it is an attempt to "'induce enlistment or further participation in the group's activities.'" United States v. Alcorta, 853 F.3d 1123, 1137 (10th Cir. 2017)(quoting United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993)). See Tr. at 74:3-6 (Court). |
| Statement 10: "Leroy Lucero received word from Billy Garcia that several hits were supposed to happen. Garcia told him he didn't need help since Lucero was getting out."<br><br>Declarant: Billy Garcia<br><br>Source: Leroy Lucero<br><br>Date: On or before March 26, 2001<br><br>Objections: DeLeon. See Tr. at 74:16-75:75:11 (Gorman) | This statement, as amended at the hearing, is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. at 76:9-13 (Court).<br><br>As amended, Statement 10 reads: "Garcia told [Lucero] that he didn't need help since Lucero was getting out." |

| | |
|---|---|
| Statement 11: "Leroy Lucero confirmed the message that several hits were supposed to happen with Angel Munoz. Munoz said 'Something has to happen Carnal Billy's on his way.'"<br><br>Declarant: Angel Munoz<br><br>Source: Leroy Lucero<br><br>Date: On or before March 26, 2001<br><br>Objections: DeLeon. See Tr. at 76:23-77:11 (Gorman). | This statement, as amended at the hearing, is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. at 77:21-78:3 (Court).<br><br>As amended, Statement 11 reads: "Leroy Lucero confirmed the message that [a hit is] supposed to happen with Angel Munoz. Munoz said 'Something has to happen Carnal Billy's on his way.'" |
| Statement 12: "Leonard Lujan met with Eugene Martinez and tasked him with the murder of Garza by strangulation and told Martinez to pick people to help."<br><br>Declarant: Leonard Lujan<br><br>Source: Leonard Lujan, Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. at 78:5-8 (Court). |
| Statement 13: "Leonard Lujan met with Joe Gallegos, Angel DeLeon, and 'Criminal' and ordered Castillo murdered by strangulation."<br><br>Declarant: Leonard Lujan<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), provided that there is evidence it was made before Castillo's death. See Tr. at 78:11-21 (Court).<br><br>If the statement is offered for the effect on the listener -- that is, for the fact that Lujan ordered the Castillo murder -- then it is not a statement and, therefore, not hearsay. See Fed. R. Evid. 801. |
| Statement 14: "Billy Garcia wanted knowledge of the plan kept to very few individuals."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. This is a statement of B. Garcia's then-existing state of mind, however, so it is admissible for its truth under rule 803(3). |

| | |
|---|---|
| Date: On or before March 26, 2001<br><br>Objections: None | |
| Statement 15: "Once alarms were sounded and the murders discovered, Billy Garcia congratulated Leonard Lujan with 'Amor.'"<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is not admissible under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. It was made after Castillo died.<br><br>It is admissible, however, as an implicit statement of B. Garcia's then-existing state of mind, i.e. that he approves of Lujan's work. See Fed. R. Evid. 803(3). |
| Statement 16: "Frederico Munoz [was] part of the committee that sanctioned the hit on Garza and Castillo. Munoz wanted Garza killed for being Los Carnales."<br><br>Declarant: Billy Garcia<br><br>Source: Federico Munoz<br><br>Date: On or before March 26, 2001<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 81:15-17 (Court, Castellano).<br><br>If, however, Munoz testifies and repeats this admission, there are no hearsay issues, because Munoz has personal knowledge regarding his own motives and regarding whether he was part of a group that ordered the Castillo murder. See Fed. R. Evid. 602. |
| Statement 17: "Ben Clark passed around paperwork on Sanchez's cooperation with police. Stating 'everyone who needs to see it has seen it, get rid of it.'"<br><br>Declarant: Ben Clark<br><br>Source: Ruben Hernandez<br><br>Date: On or before June 17, 2007<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 81:18-20 (Court).<br><br>This statement was not made in furtherance of the Castillo conspiracy, so it is not admissible under rule 801(d)(2)(E). The act of passing around paperwork is not a statement, so it is admissible against all the defendants. See Fed. R. Evid. 801(a). |
| Statement 18: "Arturo Garcia wrote to Frankie Gonzales that Brian and Raymond Rascon were to take care of the next murder for SNM."<br><br>Declarant: Arturo Garcia | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>This statement is not admissible under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. |

| | |
|---|---|
| Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | |
| Statement 19: "Ben Clark put Javier Alonso in charge of making sure Sanchez was killed and told the Rascon brothers to complete the hit."<br><br>Declarant: Ben Clark<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>This statement is not admissible under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. |
| Statement 20: "Word was sent from the green pod that if Sanchez was not killed, others in the Blue pod would be killed."<br><br>Declarant: FNU [First Name Unknown] LNU [Last Name Unknown]<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>This statement is not admissible under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. |
| Statement 21: "Edward Troup was told to go help with Sanchez's murder."<br><br>Declarant: Javier Alonso<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>This statement is not admissible under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. |

| | |
|---|---|
| Statement 22: "While Edward Troup and Javier Alonso were finishing killing Sanchez, Brian and Raymond Rascon came and asked if they could help."<br><br>Declarant: Brian Rascon and/or Raymond Rascon<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>This statement is not admissible under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy.<br><br>The verbal action -- the offer to help -- is not an assertion, so it cannot be hearsay. See Fed. R. Evid. 801. See United States v. Brinson, 772 F.3d 1314, 1322 (10th Cir. 2014)("[I]f the statement is not offered for its truth, the statement is not considered 'hearsay.'")(no citation for quotation). |
| Statement 23: "Javier Alonso told the Rascon brothers to keep a look out when the brothers asked if they could help."<br><br>Declarant: Javier Alonso<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>This statement is not admissible under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy.<br><br>Giving the Rascon brothers an order is not hearsay. See Fed. R. Evid. 801. |
| Statement 24: "Edward Troup kissed Javier Alonso on the cheek and told him he was proud of him."<br><br>Declarant: Edward Troup<br><br>Source: Javier Alonso<br><br>Date: None provided<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>Troup kissing Alonso is an action and not a statement, so it is not hearsay.<br><br>This is a statement of Troup's then-existing state of mind, so it is admissible under rule 803(3). |
| Statement 25: "After Sanchez was murdered, Edward Troup began telling Ruben Hernandez that he was next."<br><br>Declarant: Edward Troup<br><br>Source: Javier Alonso; Ruben Hernandez<br><br>Date: On or before June 17, 2007 | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>The portion of this statement that articulates Troup's plan -- the plan to assault or kill Hernandez -- is admissible as a statement of Troup's then-existing state of mind under rule 803(3). To the extent that these statements are offered for their effect on Hernandez, they |

| | |
|---|---|
| Objections: None | are not offered to prove the truth of the matter asserted, so they are not hearsay. In that situation, the Court will give a limiting instruction. |
| Statement 26: "Arturo Garcia sent word about Sanchez to Ben Clark."<br><br>Declarant: Arturo Garcia<br><br>Source: Ben Clark, Eric Duran<br><br>Date: On or before June 17, 2007<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>This statement is not admissible under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. |
| Statement 27: "Ben Clark and Arturo Garcia sent several letters about Sanchez to each other."<br><br>Declarant: Arturo Garcia<br><br>Source: Ben Clark<br><br>Date: On or before June 17, 2007<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>Sending letters is an action and not a statement, but the statements in those letters are not admissible under rule 801(d)(2)(E), because they were not made in furtherance of the Castillo conspiracy. |
| Statement 28: "Javier Alonso and Edward Troup were expected to oversee the murder, and Troup told the Rascon brothers to hit Sanchez."<br><br>Declarant: Ben Clark<br><br>Source: Ben Clark<br><br>Date: On or before June 17, 2007<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>Because expectations are not statements, Alonso and Troup's expectations are not hearsay. Troup's statement to the Rascon brother, however, is inadmissible under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. |
| Statement 29: "Leonard Lujan told Willie Amador and Jesse Ibarra to 'handle that' and told Eugene Martinez that 'I'm running this prison now.'"<br><br>Declarant: Leonard Lujan<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001 | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>This statement is not admissible under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. |

| | |
|---|---|
| Objections: None | |
| Statement 30: "Christopher Chavez heard about the hit on Garza and volunteered to participate in the operation."<br><br>Declarant: Chris Chavez<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:1-3 (Court, Castellano).<br><br>This statement is not hearsay, because Chavez' act of volunteering to participate in the Garza murder is neither true nor false. Other similar statements could be offered for their truth, however. For example, if Chavez states that he wanted to participate in the Garza murder, that would be a statement of Chavez' then-existing state of mind, so it would be admissible under rule 803(3). Any statements made to induce members to participate in the Garza murder are not admissible under 801(d)(2)(E), because they were not made in furtherance of the Castillo conspiracy. |
| Statement 31: "Willie Amador told Eugene Martinez to be lookout during the Garza murder and stated, 'If something happens, you already know.'"<br><br>Declarant: Willie Amador<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:8-13 (Court, Castellano).<br><br>This statement is not admissible under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. |
| Statement 32: While strangling Garza someone in the room yelled 'Close the door!'"<br><br>Declarant: Allen Patterson or Christopher Chavez<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: None | The United States does not offer this statement for its truth under rule 801(d)(2)(E). See Tr. at 82:8-13 (Court, Castellano).<br><br>This statement is not admissible under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy.<br><br>"Close the door!" is a command, not a statement, so it is not hearsay. See Fed. R. Evid. 801. |

| | |
|---|---|
| Statement 33: "Leonard Lujan approached Eugene Martinez and told him to talk to Willie Amador about the murders."<br><br>Declarant: Leonard Lujan<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. at 82:16-17 (Court, Castellano). |
| Statement 34: "Eugene Martinez asked Billy Garcia and Garcia confirmed the order and said 'it's coming from me' and 'make sure it happens.'"<br><br>Declarant: Billy Garcia<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. at 82:16-17 (Court, Castellano). |
| Statement 35: "Joe Gallegos later informed Leroy Lucero that Lawrence Torres saw and was concerned Torres might snitch."<br><br>Declarant: Joe Gallegos<br><br>Source: Leroy Lucero<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. at 82:16-17 (Court, Castellano).<br><br>Gallegos' concern that Lawrence Torres might snitch is admissible under rule 803(3), because it is a statement of Gallegos' then-existing state of mind. |
| Statement 36: "Edward Troup told Lawrence Torres, 'This has nothing to do with you. Don't come up here.'"<br><br>Declarant: Edward Troup<br><br>Source: Lawrence Torres<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was made in furtherance of the Castillo conspiracy. See Tr. at 82:8-25 (Court, Castellano). Troup was a member of the Castillo conspiracy and made the statement to prevent outside interference with the Castillo murder. |

| | |
|---|---|
| Statement 37: "Angel Deleon had a scratch on his finger and told a female CO that he cut himself."<br><br>Declarant: Angel Deleon<br><br>Source: Lawrence Torres<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. at 83:5-12 (Castellano, Court).<br><br>The statement is, however, admissible against DeLeon as an opposing party statement. See Fed. R. Evid. 801(d)(2).<br><br>The Confrontation Clause of the Sixth Amendment to the United States Constitution, U.S. Const. amend. VI, does not bar the admission of the statement if it is not offered for its truth, see Tennessee v. Street, 471 U.S. 409, 417 (1985). |
| Statement 38: "Kyle Dwyer came to SNMCF with 'paperwork' on Sanchez."<br><br>Declarant: Kyle Dwyer<br><br>Source: Ben Clark<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court).<br><br>That Dwyer brought the Sanchez paperwork to SNMCF is an action and not a statement, so it is not hearsay. See Fed. R. Evid. 801. |
| Statement 39: "The 'paperwork' came from the Crazy Town Roswell gang."<br><br>Declarant: Ben Clark<br><br>Source: Ben Clark<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court).<br><br>There is no information about how Ben Clark learned where the paperwork was coming from, so there is no way to analyze whether that statement is admissible for its truth. |
| Statement 40: "Joe Gallegos placed a hit on Gomez because Joe Gallegos feared Gomez would testify against him on a state murder charge."<br><br>Declarant: Shauna Gutierrez and Brandy Rodriguez<br><br>Source: Paul Rivera | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court). |

| | |
|---|---|
| Date: On or about February 27, 2016<br><br>Objections: None | |
| Statement 41: "Upon learning where Gomez was staying, Shauna Gutierrez and Brandy Rodriguez agreed they needed to go after Gomez."<br><br>Declarant: Shauna Gutierrez and Brandy Rodriguez<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court). |
| Statement 42: "Paul Rivera agreed to help with the hit on Gomez."<br><br>Declarant: Paul Rivera<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court).<br><br>Rivera's agreement to help with the Gomez hit is not a statement offered to prove the truth of matter asserted, so it is not inadmissible hearsay. See Fed. R. Evid. 801. |
| Statement 43: "You better not testify against my Jefe, or I'll kill you!"<br><br>Declarant: Brandy Rodriguez<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court).<br><br>This statement is admissible as circumstantial evidence of Rodriguez's then-existing state of mind under rule 803(3). |
| Statement 44: "Santos Gonzales also stated he was going to kill Gomez."<br><br>Declarant: Santos Gonzalez<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court).<br><br>This statement is admissible as circumstantial evidence of Gonzales' then-existing state of mind, specifically his plan. See |

| | |
|---|---|
| | Fed. R. Evid. 803(3). |
| Statement 45: "Told Shauna Gutierrez they had completed their mission. Shauna Gutierrez laughed and said she was 'happy to hear' Gomez was likely dead."<br><br>Declarant: Brandy Rodriguez, Paul Rivera, Santos Gonzales<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court).<br><br>The Gutierrez statement is admissible as a statement of the declarant's then-existing emotional condition. See Fed. R. Evid. 803(3).<br><br>B. Rodriguez', Rivera's, and Santos Gonzales' statement occurred immediately after the assault on Gomez, see Transcript of March 13, 2018 Hearing at 45:6-13 (Castellano, Stemo), filed April 3, 2018 (Doc. 2027)("Mar. 13 Tr."), so they are admissible as excited utterances, see Fed. R. Evid. 803(2). |
| Statement 46: "Shauna Gutierrez told Santos Gonzalez to move the truck they used to another location and leave it for a few days."<br><br>Declarant: Shauna Gutierrez<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court).<br><br>Gutierrez' orders to Gonzales are not statements. See Fed. R. Evid. 801. |
| Statement 47: "'How come you guys didn't do the job more fully?' after she previously told Rivera, Gonzalez, and Rodriguez to 'Go get him.'<br><br>Declarant: Shauna Gutierrez<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court).<br><br>This is a two-part statement. See Mar. 13 Tr. 46:9-16 (Castellano, Stemo). First, before the Gomez assault, Gutierrez "told Paul Rivera, Santos Gonzales to go get him." Mar. 13 Tr. 46:9-16 (Castellano, Stemo). There is insufficient information to determine whether this was an order. If it is offered for its effect on the listener -- as an order -- then it is not a |

| | |
|---|---|
| | statement and, therefore, not hearsay. See Fed. R. Evid. 801. Second, the post-assault statement is admissible as circumstantial evidence of Gutierrez' state of mind -- that she expected and intended Gomez to be killed or seriously hurt. See Fed. R. Evid. 803(3). |
| Statement 48: "Don't Testify"<br><br>Declarant: Paul Rivera<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court). |
| Statement 49: "'Paperwork' on Sanchez was delivered from Arturo Garcia to Ben Clark, approving the murder."<br><br>Declarant: Arturo Garcia<br><br>Source: Samuel Gonzalez, John Montano, Javier Rubio<br><br>Date: On or before June 17, 2007<br><br>Objections: None | That paperwork was sent is an action and not a statement, so it is not hearsay. See Fed. R. Evid. 801.<br><br>This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court). |
| Statement 50: "'Cheeky' and 'Coquito' were tasked with the murder of Sanchez but did not want to carry it out."<br><br>Declarant: Cheeky and Coquito<br><br>Source: Samuel Gonzales<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court). |
| Statement 51: "Javier Alonso asked how to get rid of the marks on his hands from strangling Sanchez."<br><br>Declarant: Javier Alonso<br><br>Source: Samuel Gonzales<br><br>Date: On or before June 17, 2007 | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court).<br><br>That Alonso asked how to get rid of the marks from strangling Sanchez is a question, but it implicitly asserts that he strangled Sanchez. |

| | |
|---|---|
| Objections: None | See United States v. Summers, 414 F.3d 1287, 1298 (10th Cir. 2005). It is, therefore, a statement for its truth and is not admissible. See Fed. R. Evid. 801. |
| Statement 52: "'That'd be messed up if the paperwork on the guy I just got showed up.' Ben Clark also sent Arturo Garcia a list of names of people in the pod."<br><br>Declarant: Ben Clark<br><br>Source: John Montano<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court). |
| Statement 53: "Edward Troup and Javier Alonso attempted to hide in John Montano's cell after lock down after the murder of Sanchez."<br><br>Declarant: Edward Troup and Javier Alonso<br><br>Source: John Montano<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. 83:19-21 (Court).<br><br>At the March 13, 2018, hearing, the United States indicated that this statement is actually just an action, but noted that it is uncertain whether there were statements made that are associated with that act. See Mar. 13 Tr. at 52:5-16 (Castellano, Court). |
| Statement 54: "Jimmie Gordon was asked to get information on Garza from Geraldine Martinez."<br><br>Declarant: Jimmie Gordon<br><br>Source: Jimmie Gordon<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. 83:19-21 (Court).<br><br>Geraldine Martinez was a prison librarian, and that Gordon was asked to get information about Garza from Martinez is a verbal action and not a statement. Accordingly, Gordon's testimony about the request to obtain information about Garza is not hearsay. See Fed. R. Evid. 801(c). |

| | |
|---|---|
| Statement 55: "Brandy Rodriguez kicked Gomez and said, 'This is a message from Joe!'"<br><br>Declarant: Brandy Rodriguez<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court).<br><br>This statement is admissible as an excited utterance, see Fed. R. Evid. 803(2), and as a statement of the declarant's then-existing state of mind, specifically her motive, see Fed. R. Evid. 803(3). |
| Statement 56: "Shauna Gutierrez stated she is 'ride or die' with Joe Gallegos, after admitting that she and Joe Gallegos put a hit on Brandy Rodriguez based on the belief Rodriguez was a cooperator."<br><br>Declarant: Shauna Gutierrez<br><br>Source: Paul Rivera<br><br>Date: On or about November 2016<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:19-21 (Court).<br><br>Gutierrez' statement that she is ride or die with Gallegos is admissible as a statement of the declarant's then-existing emotional condition. See Fed. R. Evid. 803(3). |
| Statement 57: "Christopher Chavez asked 'Is this right?' in reference to the Garza murders and Leroy Lucero said 'you got to do what you got to do.'"<br><br>Declarant: Christopher<br><br>Chavez Source: Leroy Lucero<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 83:23-84:1 (Court). |
| Statement 58: "Javier Alonso asked if the marks on his hands were noticeable."<br><br>Declarant: Javier Alonso<br><br>Source: John Montano<br><br>Date: On or about June 17, 2007 | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>Alonso's question implicitly asserts that he has marks on his hands, but that implicit assertion is admissible as a present-sense impression. See Fed. R. Evid. 803(1). |

| | |
|---|---|
| Objections: None | |
| Statement 59: "Ordered the surveillance cameras covered."<br><br>Declarant: Edward Troup and/or Jesse Trujillo<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because they were not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>If this statement is offered as an order and for its effect on the listener, then it is not a statement and, therefore, not hearsay. See Fed. R. Evid. 801. |
| Statement 60: "'Now hurry Bolo now you know what time it is.' (In reference to covering the cameras.)"<br><br>Declarant: Jesse Trujillo<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77."). |
| Statement 61: "Just stay there and don't let no one in, use your crutch to block the door if you have to."<br><br>Declarant: Jesse Trujillo<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>If this is not offered for the truth of the matter asserted, it is command and not a statement. See Fed. R. Evid. 801. |
| Statement 62: "'Ya stuvo (all done) take them off.' (In reference to the camera covers.)"<br><br>Declarant: Jesse Trujillo<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>The statement is admissible as an excited utterance, because it was made just after Sanchez' death. See Mar. 13 Tr. at 59:22-60:5; Fed. R. Evid. 803(2). |

| | |
|---|---|
| Statement 63: "Kyle asked Ruben Hernandez to take something to Samuel Gonzales and to tell Samuel Gonzales 'that was all he had.'"<br><br>Declarant: Kyle Dwyer<br><br>Source: Ruben Hernandez<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77."). |
| Statement 64: "Samuel Gonzales asked if Sanchez was dead, then again asked 'For real is he dead?'"<br><br>Declarant: Samuel Gonzales<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>Gonzales' questions are not statements, so they are not hearsay. See Fed. R. Evid. 801. Further, even if these questions contain implicit statements, they would be admissible as circumstantial evidence of Gonzales' state of mind. See Fed. R. Evid. 803(3). |
| Statement 65: "'Chicky' was cutting his sleeves off and asked Ruben Hernandez to hang up his wet sleeves."<br><br>Declarant: "Chicky"<br><br>Source: John Montano<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>"Chicky" -- Raymond Rascon -- cutting his sleeves are actions and not statements and, therefore, are not hearsay. See Fed. R. Evid. 801. |
| Statement 66: "Edward Troup told 'Chicky' to cut his sleeves in small pieces or give the sleeves to someone next door."<br><br>Declarant: Edward Troup<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77."). |

| | |
|---|---|
| Statement 67: "First thing in the morning we need you to move the body in the fetal position and wipe down the toilet."<br><br>Declarant: Brian Rascon and/or Edward Troup<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>This statement is not admissible to prove the truth of the matter asserted -- that Rascon and/or Troup needed Hernandez to move the body into the fetal position and wipe down the toilet. See Fed. R. Evid. 801(c). The statement is, however, admissible to show its effect on Hernandez. |
| Statement 68: "'That's what we are all asking of you.' (Told to Ruben Hernandez when he didn't want to clean the cell.)"<br><br>Declarant: Brian Rascon<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>The statement is admissible to show its effect on Hernandez and as circumstantial evidence of Rascon's state of mind. See Fed. R. Evid. 801, 803(3). |
| Statement 69: "'Not [sic] that's an order, you already know what time it is.' (Told to Ruben Hernandez when he continued to not want to clean the cell.)"<br><br>Declarant: Brian Rascon<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>The statement is admissible to show its effect on Hernandez and as circumstantial evidence of Rascon's state of mind. See Fed. R. Evid. 801, 803(3). |
| Statement 70: "Ruben Hernandez asked if he was next for refusing to clean the cell and Brian Rascon said 'no, if the door is closed what can you do?'"<br><br>Declarant: Brian Rascon<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007 | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>Hernandez' question and Rascon's reply are admissible as circumstantial evidence of |

| | |
|---|---|
| Objections: None | Hernandez's state of mind. See Fed. R. Evid. 803(3). The assertion implicit in Rascon's reply -- that Hernandez was not able to enter Sanchez' cell -- is not admissible for its truth unless Hernandez' testimony indicates that Rascon's implicit assertion is a present-sense impression. See Fed. R. Evid. 801(1). |
| Statement 71: "'You're next mother fucker.' Said to Ruben Hernandez as they passed each other."<br><br>Declarant: Edward Troup<br><br>Source: Ruben Hernandez<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>This statement is admissible as a statement of the Troup's then-existing state of mind -- specifically his plan. See Fed. R. Evid. 803(3). |
| Statement 72: "We better be ready for hell cause we we're fixing to go through hell."<br><br>Declarant: Jesse Trujillo<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>The statement indicating that Trujillo expects law enforcement scrutiny, see Mar. 13 Tr. at 64: 19-22 (Castellano, Stemo), is admissible as a statement of the declarant's then-existing state of mind, see Fed. R. Evid. 803(3). |
| Statement 73: Edward Troup stated that it was every man for themselves and if you can get a plea bargain for 15 or less do it but 'no fucking ratting,' 'that's a no no.'"<br><br>Declarant: Brian Rascon<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>Rascon did not make this statement; Troup did. See Mar. 13. Tr. at 65:1-4 (Castellano, Stemo). |

| | |
|---|---|
| Statement 74: "Go wipe down the toilet, don't worry about moving the body."<br><br>Declarant: Brian Rascon<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77.").<br><br>This is a command or order, not an assertion, so it is not a statement and, therefore, not hearsay. See Fed. R. Evid. 801. |
| Statement 75: Leroy Lucero is a government witness. Lucero indicates Chavez and Joe Gallegos admitted involvement in the murder of Garza to him as did others. It is unknown whether Chavez and Gallegos implicated B. Garcia.<br><br>Declarant: Christopher Chavez, Joe Gallegos<br><br>Source: Leroy Lucero<br><br>Date: unknown<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77."). |
| Statement 76: Fred Quintana is a government witness. Quintana indicates both Troup and Chavez admitted to involvement in the 2001 murders. It is unknown whether Chavez and Gallegos implicated B. Garcia.<br><br>Declarant: Edward Troup, Christopher<br><br>Chavez Source: Fred Quintana<br><br>Date: unknown<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:2-5 (Court)("So I'm going all the way over now to 77."). |

| | |
|---|---|
| Statement 77: Ben Clark is a witness for the government. Clark indicated Angel Deleon, Troup and Joe Gallegos confessed their involvement in the 2001 murders to him and that one or both may have indicated that B. Garcia called the hit.<br><br>Declarant: Angel Deleon, Edward Troup, Joe Gallegos<br><br>Source: Ben Clark Date: 2004<br><br>Objections: None | This statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. An admission is not a statement in furtherance of the conspiracy. See Tr. 84:3-7 (Court, Castellano).<br><br>DeLeon's statement to Clark is admissible against DeLeon as an opposing party statement under rule 801(d)(2)(A). |
| Statement 78: Leonard Lujan told Michael Jaramillo that Billy Garcia told Lujan to find people to murder Frank Castillo and Lujan chose Jaramillo, Joe Gallegos, and Angel Deleon<br><br>Declarant: Leonard Lujan<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None regarding 801(d)(2)(E). See Tr. at 84:14-15 (LeBlanc) | This statement is really two statements: (i) that Billy Garcia told Lujan to find people to murder Frank Castillo and Lujan chose Jaramillo, Joe Gallegos, and Angel DeLeon; and (ii) that Leonard Lujan told Michael Jaramillo what Billy Garcia said.<br><br>Statement (i), the underlying statement, is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. 84:10-85:10 (Court, LeBlanc, Castellano).<br><br>Statement (ii), that Lujan told Jaramillo about statement (i), is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. See Tr. 84:10-85:10 (Court, LeBlanc, Castellano). |
| Statement 79: Leonard Lujan told Michael Jaramillo to discuss details with Joe Gallegos.<br><br>Declarant: Leonard Lujan<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None | It is not clear what "details" Jaramillo was supposed to discuss with Gallegos. If Lujan told Jaramillo to discuss details of the Castillo murder with Gallegos, then it is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was made in furtherance of the Castillo conspiracy. See Tr. 85:10-11 (Court). Lujan, Jaramillo, and Gallegos are members of the Castillo conspiracy. See FOF 2-3 supra. If the "details" are not about the Castillo murder, then it is not admissible under rule |

| | |
|---|---|
| | 801(d)(2)(E), because it was not made in furtherance of the Castillo conspiracy. |
| Statement 80: Leonard Lujan told Michael Jaramillo that Jaramillo was going to have to "put in work" for the SNM, and to speak with Joe Gallegos and Angel DeLeon about it.<br><br>Declarant: Leonard Lujan<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. 85:12-18 (Court, LeBlanc, Castellano). |
| Statement 81: Joe Gallegos told Michael Jaramillo and Angel DeLeon that they would wait for an anticipated heroin delivery before killing Castillo.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). |
| Statement 82: Once the heroin came in, Joe Gallegos called Michael Jaramillo and Angel DeLeon to his cell to order the murder of Castillo to take place in the morning.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is admissible for its truth, because an order is not a statement and, therefore, not hearsay. See Fed. R. Evid. 801. |
| Statement 83: Joe Gallegos told Michael Jaramillo and Angel DeLeon that the plan was go [sic] the Castillo cell when the doors open in the morning and use heroin with Castillo and then "take him out."<br><br>Declarant: Joe Gallegos | This statement is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. 86:12-18 (Court, LeBlanc, Castellano). |

| | |
|---|---|
| Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None | |
| Statement 84: Joe Gallegos told Michael Jaramillo and Angel DeLeon that Gallegos's family would pay for an attorney if they got in trouble.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: DeLeon. See Tr. at 86:22-89:9. | If the United States establishes that this statement was made before the Castillo conspiracy ended, see FOF 4 supra, then this statement is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E).<br><br>If the United States does not establish that this statement was made before the Castillo conspiracy ended, see FOF 4 supra, then this statement is not admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E). See Tr. 88:1-89:9 (Court, LeBlanc, Castellano). |
| Statement 85: Joe Gallegos told Michael Jaramillo and Angel DeLeon to refuse DNA testing if the police requested it.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is a command, however, so it is not a statement and, therefore, not hearsay. See Fed. R. 801. |
| Statement 86: Joe Gallegos told Angel DeLeon, in the presence of Michael Jaramillo, that he was to hold Castillo down as he took a hit of heroin.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None | There is not enough information to determine if Gallegos telling DeLeon to hold Castillo down was an order or command. If it is offered for its effect on DeLeon, then it is a command or order and not a statement, so it is not hearsay. See Fed. R. 801. |
| Statement 87: Joe Gallegos told Michael Jaramillo, in [the] presence of Angel DeLeon, that he was to "choke out" Castillo while Gallegos and DeLeon held Castillo down. | This statement is a command, so it is not a statement and, therefore, not hearsay. See Fed. R. 801. |

| | |
|---|---|
| Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None | |
| Statement 88: Joe Gallegos, in the presence of Michael Jaramillo and Angel DeLeon, called Edward Troup over to Gallegos's cell and told Troop to be the lookout during the murder and to keep everybody in their cell during the murder.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is a command, so it is not a statement and, therefore, not hearsay. See Fed. R. 801. |
| Statement 89: Joe Gallegos, in the presence of Michael Jaramillo and Angel DeLeon, told Jaramillo that he was going to have Edward Troup act as a lookout during the murder.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was made in furtherance of the Castillo conspiracy. See Tr. 90:1-4 (Court, LeBlanc). |
| Statement 90: Edward Troup voiced his agreement to be the lookout during the murder and to keep everybody in their cell during the murder.<br><br>Declarant: Edward Troup<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This statement is admissible for its truth against the Castillo conspiracy's members under rule 801(d)(2)(E), because it was made in furtherance of the Castillo conspiracy. See Tr. 90:1-4 (Court, LeBlanc). |

| | |
|---|---|
| Statement 91: Joe Gallegos gave Michael Jaramillo the heroin.<br><br>Declarant: Edward Troup<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001<br><br>Objections: None | This is an action and not an assertion, so it is not hearsay. See Fed. R. Evid. 801. |

**IT IS ORDERED** that: (i) the United States' Notice of Proposed James Statements, filed January 8, 2021 (Doc. 3228) is granted in part and denied in part.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred Federici
Acting United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

--and--

Maria Ysabel Armijo
Randy M. Castellano
Ryan Ellison
Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

*Attorneys for the Plaintiff*

Heather M. LeBlanc
Bailey, LeBlanc & Lane, P.C.
Albuquerque, New Mexico

--and--

Sarah M. Gorman
Law Offices of Robert D. Gorman
Albuquerque, New Mexico

*Attorneys for Defendant Angel DeLeon*

Richard Sindel
Sindel, Sindel & Noble, P.C.
Clayton, Missouri

--and--

Brock Benjamin
Benjamin Law Firm
El Paso, Texas

*Attorneys for Defendant Joe Lawrence Gallegos*

Patrick J. Burke
Patrick J. Burke, P.C.
Denver, Colorado

--and--

Cori Ann Harbour-Valdez
The Harbour Law Firm, P.C.
El Paso, Texas

*Attorneys for Defendant Edward Troup*

Russell Dean Clark
Las Cruces, New Mexico

*Attorney for Defendant Leonard Lujan*

James A. Castle
Castle & Castle, P.C.
Denver, Colorado

--and--

Robert R. Cooper
Robert R. Cooper Law Firm
Albuquerque, New Mexico

*Attorneys for Defendant Billy Garcia*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

*Attorney for Defendant Eugene Martinez*

Joseph E. Shattuck
Marco & Shattuck Law Firm
Albuquerque, New Mexico

--and--

Jeffrey C. Lahann
Las Cruces, New Mexico

*Attorneys for Defendant Allen Patterson*

Eduardo Solis
Law offices of Eduardo Solis
El Paso, Texas

--and--

John L. Granberg
Granberg Law Office
El Paso, Texas

--and--

Orlando Mondragon
The Law Office of Orlando Mondragon
El Paso, Texas

*Attorneys for Defendant Christopher Chavez*

Nathan D. Chambers
Nathan D. Chambers, Attorney at Law
Denver, Colorado

--and--

Noel Orquiz
Deming, New Mexico

*Attorneys for Defendant Javier Alonso*

Laura E. Udall

Cooper & Udall Law Offices
Tucson, Arizona

--and--

Scott Moran Davidson
Law Offices of Scott Moran Davidson
Albuquerque, New Mexico

--and--

Billy R. Blackburn
Billy Blackburn Law Office
Albuquerque, New Mexico

*Attorneys for Defendant Arturo Arnulfo Garcia*

Stephen E. Hosford
Stephen E. Hosford, P.C.
Arrey, New Mexico

--and--

Jerry Daniel Herrera
Albuquerque, New Mexico

*Attorneys for Defendant Benjamin Clark*

Pedro Pineda
Las Cruces, New Mexico

--and--

León Encinias
León Felipe Encinias, Attorney at Law
Albuquerque, New Mexico

*Attorneys for Defendant Ruben Hernandez*

Gary Mitchell
Mitchell Law Office
Ruidoso, New Mexico

*Attorney for Defendant Jerry Armenta*

Larry A. Hammond
Osborn Maledon, P.A.

Phoenix, Arizona

--and--

Margaret Strickland
McGraw & Strickland
Las Cruces, New Mexico

*Attorneys for Defendant Jerry Montoya*

Steven M. Potolsky
Jacksonville Beach, Florida

--and--

Santiago D. Hernandez
Law Office of Santiago D. Hernandez
El Paso, Texas

*Attorneys for Defendant Mario Rodriguez*

Steven Lorenzo Almanza
Las Cruces, New Mexico

--and--

Ray Velarde
El Paso, Texas

*Attorneys for Defendant Timothy Martinez*

Joe Spencer
El Paso, Texas

--and--

Mary Stillinger
El Paso, Texas

*Attorneys for Defendant Mauricio Varela*

Richard Jewkes
El Paso, Texas

--and--

Lauren Noriega

The Noriega Law Firm
Los Angeles, California

--and--

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

*Attorneys for Defendant Daniel Sanchez*

George A. Harrison
Las Cruces, New Mexico

--and--

Kimberly S. Bruselas-Benavidez
Albuquerque, New Mexico

*Attorneys for Defendant Gerald Archuleta*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

*Attorney for Defendant Conrad Villegas*

Theresa M. Duncan
Duncan Earnest, LLC
Albuquerque, New Mexico

--and--

Marc M. Lowry
Rothstein Donatelli, LLP
Albuquerque, New Mexico

*Attorneys for Defendant Anthony Ray Baca*

Charles J. McElhinney
CJM Law Firm
Las Cruces, New Mexico

*Attorney for Defendant Robert Martinez*

Marcia J. Milner

Marcia J. Milner Attorney at Law
Las Cruces, New Mexico

*Attorney for Defendant Roy Paul Martinez*

Christopher W. Adams
Adams & Bischoff, L.L.C.
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

*Attorneys for Defendant Christopher Garcia*

William R. Maynard
William R. Maynard Attorney at Law
El Paso, Texas

--and--

Carey Corlew Bhalla
Law Office of Carey C. Bhalla, LLC
Albuquerque, New Mexico

*Attorneys for Defendant Carlos Herrera*

Justine Fox-Young
Justine Fox-Young Attorney at Law
Albuquerque, New Mexico

--and--

Ryan J. Villa
Law Office of Ryan J. Villa
Albuquerque, New Mexico

*Attorneys for Defendant Rudy Perez*

Donavon A. Roberts
Donavon A. Roberts Attorney at Law
Albuquerque, New Mexico

--and--

Lisa Torraco
Lisa Torracco Attorney at Law
Albuquerque, New Mexico

*Attorneys for Defendant Andrew Gallegos*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson
Albuquerque, New Mexico

*Attorney for Defendant Santos Gonzalez*

Keith R. Romero
Keith R. Romero, Attorney and Counselor at Law
Albuquerque, New Mexico

*Attorney for Paul Rivera*

Angela Arellanes
Angela Arellanes Attorney at Law
Albuquerque, New Mexico

*Attorney for Defendant Shauna Gutierrez*

Jerry A. Walz
Alfred D. Creecy
Samuel Winder
Walz and Associates
Albuquerque, New Mexico

*Attorneys for Defendant Brandy Rodriguez*