# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                               Nos. CR 15-4268 JB;
                                                           CR 19-3725 JB;
                                                           CR 20-1629 JB

ANGEL DELEON; JODY RUFINO
MARTINEZ and TONY GAUNA,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

      **THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion to Consolidate, filed November 17, 2020 (Doc. 3198), in <u>United States v. DeLeon, et al.,</u> No. CR 15-4268 JB ("<u>DeLeon</u>"); (ii) the Plaintiff's Motion to Consolidate, filed November 17, 2020 (Doc. 105), in <u>United States v. Jody Rufino Martinez</u>, No. CR 19-3725 JB ("<u>Martinez</u>"); and (iii) the Plaintiff's Motion to Consolidate, filed November 17, 2020 (Doc. 34), in <u>United States v. Tony Gauna</u>, No. CR 20-1629 JB ("<u>Gauna</u>")(collectively, "Motion").  The Court held a hearing on December 21, 2020.  <u>See</u> Clerk's Minutes at 1, filed December 21, 2020 (Doc. 3223 in No. CR 15-2268); (Doc. 117 in No. CR 19-3725); (Doc. 46 in No. CR 20-1629).  The primary issue is whether, pursuant to rule 8 and rule 13 of the Federal Rules of Criminal Procedure, the Court should conduct jointly the trials of Defendant Angel DeLeon, Defendant Jody Rufino Martinez, and Defendant Tony Gauna.  The Court concludes that rules 8 and 13 do not warrant consolidating the  trials, because: (i) it is not dispositive that DeLeon, Martinez, and Gauna could have been indicted together, because rule 13 is permissive; (ii) COVID-19's dangers support the argument for separate, shorter trials with fewer witnesses present at one time; and (iii) the risk of prejudice to the Defendants'

rights to fair trials under the Fifth Amendment of the Constitution of the United States of America outweighs any efficiency benefits.

## FACTUAL BACKGROUND

The Court takes its facts from the Second Superseding Indictment, filed March 9, 2017 (Doc. 947), in United States v. DeLeon, et al., No. CR 15-4268 JB ("DeLeon Indictment").  The background facts are largely unchanged from those facts that the Court provides in its Memorandum Opinion and Order, 423 F. Supp. 3d 1210, filed November 19, 2019 (Doc. 1585), in United States v. DeLeon, et al., No. CR 15-4268 JB.  The Court does not set forth these facts as findings or the truth.  The Court recognizes that the factual background largely reflects the United States' version of events and that the Defendants are all presumed innocent.

This case deals with crimes allegedly committed by members of the Syndicato Nuevo Mexico ("SNM"), a prison gang.  See DeLeon Indictment at 2.  The SNM operates in the District of New Mexico, and its members engage in acts of violence and other criminal activities, "including murder, kidnapping, attempted murder, conspiracy to manufacture/distribute narcotics, and firearms trafficking."  DeLeon Indictment at 2.  The SNM constitutes an enterprise "as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce."  DeLeon Indictment at 2-3.

The SNM is a prison gang formed in the early 1980s at the Penitentiary of New Mexico ("PNM") after a violent prison riot at PNM during which inmates assaulted and raped twelve correctional officers after taking them hostage.  DeLeon Indictment at 3.  During the riot, thirty-three inmates were killed, and over 200 inmates were injured.  See DeLeon Indictment at 3.  After the PNM riot, SNM expanded throughout the State's prison system and has had as many as 500

members.  See DeLeon Indictment at 3.  The SNM now has approximately 250 members, including "a 'panel' or 'mesa' (Spanish for table) of leaders who issue orders to subordinate gang members." DeLeon Indictment at 3.  The SNM controls drug distribution and other illegal activities within the New Mexico penal system, and it also conveys orders to members outside the prison system. See DeLeon Indictment at 3.  Members who rejoin their communities after completing their sentences are expected to further the gang's goals: primarily the control and profit of narcotics trafficking.  See DeLeon Indictment at 3-4.  Members who fail "to show continued loyalty to the gang [are] disciplined in various ways, . . . includ[ing] murder and assaults." DeLeon Indictment at 4.

The SNM also intimidates and influences smaller New Mexico Hispanic gangs to expand the SNM's power.  See DeLeon Indictment at 4.  If another gang does not follow the SNM's demands, SNM will assault or kill one of the other gang's members to show its power.  See DeLeon Indictment at 4.  The SNM's rivalry with other gangs also manifests in beatings and stabbings within the prison system.  See DeLeon Indictment at 4.  The SNM engages in violence "to assert its gang identity, to claim or protect its territory, to challenge or respond to challenges, to retaliate against a rival gang or member, [and] to gain notoriety and show its superiority over others." DeLeon Indictment at 4.  To show its strength and influence, the SNM expects its members to confront and attack any suspected law enforcement informants, cooperating witnesses, homosexuals, or sex offenders.  See DeLeon Indictment at 5.  To achieve its purpose of preserving its power, the SNM uses intimidation, violence, threats of violence, assaults, and murder.  See DeLeon Indictment at 7.  The SNM generates income by having its members and associates traffic drugs and extort narcotic traffickers.  See DeLeon Indictment at 8.  The SNM members' recent conspiracy to murder high-ranking New Mexico Corrections Department ("NM Corrections

Department") officials provoked the Federal Bureau of Investigation's present investigation.  See United States v. Garcia, No. CR 15-4275, Memorandum Opinion and Order at 2, 221 F. Supp. 3d 1275, 1277, filed November 16, 2016 (Doc. 133).

## PROCEDURAL BACKGROUND

The Court outlines the procedural background in five sections.  First, the Court discusses the United States' Motion.  See Motion at 1-9.  Second, the Court discusses DeLeon's Response in Opposition to the United States' Motion to Consolidate, filed December 1, 3030 (Doc. 3202)("DeLeon Response").   Third, the Court discusses, Martinez's Response to the Government's Motion to Consolidate Unrelated Cases for Trial, filed December 4, 2020 (Doc. 108), in United States v. Martinez, No. CR 19-3725 ("Martinez Response").  Fourth the Court discusses Gauna's Response to United States' Motion to Consolidate, filed December 4, 2020 (Doc. 37), in United States v. Gauna, No. CR 20-1629 ("Gauna Response").   Fifth, the Court discusses the Motion to Consolidate hearing.  See Draft Transcript of Hearing at 2:1-20:1 (held December 20, 2020)(Court)("Tr.").[1]

### 1.     The United States' Motion to Consolidate.

On November 17, 2020, the United States filed a Motion to Consolidate.  See Motion at 1. In the Motion, the United States requests the Court "to join Defendants Jody Rufino Martinez's case (19-CR-3725 JB) and Tony Gauna's case (20-CR-1629 JB) to 15-CR-4268 JB pursuant to rule 13 of the Federal Rules of Criminal Procedure."  Motion at 1.  The United States supports its request by discussing the factual, legal, and policy reasons that support the Court's consolidation of the Defendants' cases.  See Motion at 1-12.

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

First, the United States explains the factual basis supporting why the Court should consolidate the Defendants' trials under rule 13 of the Federal Rules of Criminal Procedure.  See Motion at 1.  Specifically, the United States emphasizes two commonalities that connect the Defendants' cases: (i) that the three Defendants "are alleged members of the Syndicato de Nuevo Mexico Gang ('SNM')"; and (ii) the Defendants are "alleged to have knowingly and intentionally participated in the conduct of the affairs of the SNM, a racketeering enterprise."  Motion at 1.  The United States next explains that the United States plans to rely on common evidence to prove the Defendants' guilt.  See Motion at 1.  This common evidence, the United States asserts, supports the Court consolidating the Defendants under rule 13:

> In order to convict anyone charged for [a Racketeer Influenced and Corrupt Organizations Act ("RICO") violation and a Violent Crimes in Aid of Racketeering ("VICAR") violation], the government must prove that SNM is a criminal enterprise and that SNM engaged in racketeering activity.  As part of a RICO conspiracy, the Overt Acts include the murder of David Romero, *See* Doc. 57, cause number 19-CR-3725 JB, Overt Act 11, and the distribution of illegal narcotics within correctional facilities, *See* Doc. 25, cause number 20-CR-1629 JB, Overt Acts 6, 9, 10, and 18.

Motion at 1.  The United States explains further that Martinez' and Gauna's alleged RICO crimes, which they committed as SNM gang members, are similar to DeLeon's alleged VICAR crime.  See Motion at 1.  The United States explains that its burden of proof in demonstrating that DeLeon committed a VICAR violation is similar to its burden of proof in demonstrating that Martinez and Gauna committed RICO violations.  See Motion at 1.

> Defendant Angel DeLeon is charged under 18 U.S.C. § 1959 for committing violent crimes in aid of racketeering ("VICAR") in 15-CR-4268. In order to prove the VICAR allegations, the government must establish that the defendant acted "for the purpose of maintaining or increasing [his] position in SNM" and must also prove that SNM is an enterprise engaged in racketeering activity.

> Due to the fact that RICO conspiracy and VICAR offenses both involve proving that SNM is a criminal enterprise engaged in racketeering activity the evidence for those crimes are identical or greatly overlap. As such, the evidence

> presented by the government in a RICO count regarding SNM as a criminal
> enterprise engaged in racketeering activity is the same evidence the government
> would present to establish the elements of the VICAR offense for which defendant
> DeLeon is charged.

Motion at 1-2 (no citation for quotation).  Ultimately, then, because of the similarity of the

Defendants' alleged offenses, and the United States' burden in proving the offenses, the United

States argues that the Defendants' cases "should be properly joined."  Motion at 2.

The United States next advances its legal rationale supporting the Court's joinder of the

Defendants' cases.  See Motion at 1-2.  According to the United States, the United States Court of

Appeals for the Tenth Circuit favors joint trials, and offers district courts discretion to determine

whether to consolidate cases.  See Motion at 2 (citing United States v. Hack, 782 F.2d 862, 870

(10th Cir. 1986)).  The United States argues that the district court has similar discretion in granting

a motion for consolidation as it does in granting a severance motion, in that the district court "'has

a duty to weigh the prejudice resulting from a joint trial of codefendants against the expense and

inconvenience of separate trials.'"  Motion at 2 (quoting United States v. Hack, 782 F.2d at 870,

and citing United States v. Cox, 934 F.2d 1114, 1119 (10th Cir. 1991); Robinson v. United States,

366 F.2d 575, 579 (10th  Cir. 1966)).  The United States clarifies that, because of the Tenth

Circuit's preference for joint trials, a district court must consider that "[n]either a mere allegation

that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the

'spillover effect' from the evidence that was overwhelming or more damaging against the co-

defendant than that against the moving party is sufficient to warrant severance." Motion at 2

(quoting United States v. Hack, 782 F.2d at 870, and citing United States v. Cox, 934 F.2d at 1119;

Robinson v. United States, 366 F.2d at 579).

Finally, the United States emphasizes the policy reasons supporting a joint trial for the

Defendants' cases.  See Motion at 2.  The United States argues that the primary public policy

rationale favoring a joint trial is preventing the transmission and spread of COVID-19.  See Motion at 2.  United States references a recent sua sponte order from the Honorable Kea Riggs, United States District Judge for the United States District Court for the District of New Mexico.  See Motion at 2-6.  In the order, Judge Riggs explained her rationale for continuing a criminal trial:

(1)     The Coronavirus "COVID-19" pandemic has been declared a national health emergency by the President of the United States and the New Mexico State Governor. The COVID-19 emergency has not yet ended, and it recently became much worse.

(2)     The Centers for Disease Control and Prevention and other public health authorities continue to advise precautions to reduce the possibility of exposure to the virus and slow the spread of the disease. Chief among these is social distancing and mask use.

(3)     The Pete V. Domenici Courthouse in Albuquerque, where trial would be held, is presently operating at Phase II of the Court's Phased Restoration of Operations, which involves minimal staffing and limited access to the courthouse by members of the public.

(4)     The venire panel for this matter is drawn from the Northern Division for the District of New Mexico.

(5)     As of November 1, 2020, COVID-19 cases have reached record levels in New Mexico, from a low of well under 100 daily cases in September to over 1,000 daily cases on October 29, 2020. As of November 1, 2020, the seven-day average of new Covid-19 cases per day is 768, well above the seven-day average of 89 on September 10, 2020. https://www.abqjournal.com/coronavirus. This is an approximate ten-fold increase in cases.  There is a high testing positivity rate and a high rate of spread.

(6)     On November 3, 2020, there were 1,141 new cases, raising the seven-day daily average to 868.  This appears to be a record high, and COVID-19 is spreading at a greater rate than any other time in New Mexico.

(7)     The health risks posed by the virus will adversely impact the ability of the Court to obtain an adequate spectrum of jurors. Jurors are likely to request excusal from jury duty.  Moreover, the District of New Mexico is a large district, and many jurors travel across the state, stay in hotels, and likely eat at restaurants.  Hotels and restaurants are currently under reduced capacity orders by the Governor. Not only is it difficult for jurors to travel under the

current restrictions, but travel adds to the risk of spreading the virus and endangers the health and safety of jurors.

(8)     The Governor has ordered that group gatherings be limited to five individuals.  The Court is unable to observe that limitation in a jury trial.

(9)     In the typical past practice, trials inherently involved crowded courtrooms; in addition to the attorneys, the defendant, and Court and security staff, sometimes 50 to 100 prospective jurors spend hours on crowded seats where they cannot avoid close physical proximity with others.  Additionally, once selected, a minimum of twelve jurors must meet and deliberate in a closed room.  Thus, even if the Court could obtain an adequate spectrum of jurors and manage the safe selection of a jury in the midst of the COVID-19 pandemic, the nature of jury work hampers the Court's ability to protect the safety of those jurors as recommended by the CDC and DOH.  Accordingly, the Court's ability to maintain compliance with current public health and safety recommendations using its prior courtroom space makes jury trials practically impossible, in light of the recent outbreak.

(10)    The District of New Mexico has created a plan to conduct jury trials in a manner that attempts to comply with public health and safety recommendations and increases social distancing.  Nevertheless, the Court cannot seat a jury while maintaining compliance with current public health and safety recommendations, including social distancing, given the record number of COVID-19 cases.  The Confrontation Clause also appears to require that witnesses testify without a mask obscuring their face, which increases the risk of aerosol transmission in the courtroom.  Jury trials right now are practically impossible from a public health and safety standpoint.

(11)    Failure to continue the trial in this case will likely make its completion impossible due to public-health risks posed to prospective jurors, witnesses, attorneys, court personnel, and the defendant.

(12)    In addition to the district-wide public-health risks, an ends-of-justice delay is appropriate because:

- Counsel, United States Attorney's Office personnel, and victim-witness specialists have been encouraged to telework to minimize personal contact to the greatest extent possible. Trial preparation necessarily involves close contact with witnesses, which is inconsistent with the advice from the Centers for Disease Control and Prevention.

- The trial involves multiple local law enforcement witnesses who, pursuant to their work obligations and constant contact with the community, present an increased likelihood for

spread of the virus.   The risk is compounded by the restrictions on mask-use by witnesses.

(13)     There appear to be multiple out of state witnesses, or witnesses who are currently traveling out of state but will have to return to New Mexico for trial.  The Governor has entered an order requiring out of state visitors and those who visit other states to quarantine for fourteen days. The pandemic has reached record levels in the United States (nearly 100,000 daily cases), therefore quarantining out of state visitors is appropriate to reduce the spread of COVID-19.  However, the Court finds that the quarantine period will likely produce a hardship on out of state witnesses.

. . . .

(17)     Given the tenfold increase in cases, the Court finds that any significant reduction in COVID-19 cases sufficient to safely hold a jury trial will likely take at least 60 days. Cases are not yet trending downward.

(18)     Given the high rate of COVID-19 case transmission in New Mexico, it is highly likely that a participant in the jury trial would be infected with COVID-19 and others would not be able to adequately social distance in the Court's facilities. Safely empaneling a jury, conducting a trial, and arranging jury deliberations, is not currently possible in the physical facilities available to the court. Long exposure in confined spaces, which is inherent in trial, increases risk of infection.

Motion at 3-6 (quoting Order Continuing Jury Trial and Making Case-Specific Ends of Justice Findings at 1-5, filed November 4, 2020, (Doc. 143 in United States v. Gonzales, No. CR 19-0240 KWR)("Order Continuing Jury Trial")).

The United States emphasizes Judge Riggs' statement that it is "'impossible to currently hold a jury trial without endangering the health and lives of venire panel members, jurors, court staff, parties, and counsel,'" even though "'the District of New Mexico has implemented procedures to hold a jury trial during the pandemic.'"  Motion at 6 (quoting Order Continuing Jury Trial at 5).  In addition, the United States emphasizes: (i) the likely impossibility of "'obtain[ing] an adequate spectrum of jurors,'" (ii) the unlikelihood that "counsel is able to adequately prepare for trial"; and (iii) "[g]iven the record COVID-19 cases in New Mexico," the "need to protect the

health of the public during a deadly pandemic," which "outweighs the best interest of the Defendant and the public to a speedy trial."  Motion at 6-7 (quoting Order Continuing Jury Trial at 5)).

The United States references the United States District Court for the District of New Mexico's previous administrative orders continuing all jury trials prior to July 31, 2020.  See Motion at 7 (Order Continuing Jury Trial at 6 (citing Administrative Orders 20-MC-00004-08, 20-MC-00004-09, 20-MC-00004-15, 20-MC-00004-17, and 20-MC-00004-27)).  In particular, the United States quotes the Administrative Order's statements that: (i) the Court "'cannot seat a jury while maintaining compliance with the current public health and safety recommendations, thereby making jury trials practically impossible from a public health and safety standpoint'"; and (ii) "'if a trial were to proceed, it is likely that in-custody defendants, even exercising due diligence, would be denied the reasonable time necessary for effective and adequate trial preparation, given that many detention centers have implemented lockdown procedures to prevent the spread of COVID-19 virus thus hampering the ability of counsel to meet with their clients.'"  Motion at 7 (quoting Order Continuing Jury Trial at 6 (quoting Administrative Order 20-MC-00004-17)).

Finally, the United States urges the Court to adhere to the Supreme Court of New Mexico's precautions when it, subsequent to Judge Riggs' Order, see Order Continuing Jury Trial at 1-6, entered an Order temporarily suspending state jury trials "until January 1, 2021, while continuing to hold other judicial proceedings within strict limitations on in-person judicial proceedings."  Motion at 8 (citing Order No. 20-8500-039 Amending PHE Protocols Nos. 1, 2, and 3 (Nov. 13, 2020)("Order No. 20-8500-039")).  The United States, therefore, requests that the Court follow the Supreme Court of New Mexico's lead and "recognize[] the increased spread of COVID-19 infections throughout New Mexico and the urgent need to minimize in-person gatherings and out-

of-state travel to address the surge of COVID-19 infections."  Motion at 8 (citing Order No, 20-8500-039).

Ultimately, then, the United States stresses that the Supreme Court of New Mexico's Order and Judge Riggs' findings demonstrate the "current challenges facing this district in setting and trying felony cases to a jury."  Motion at 8.  The United States asserts that:

> Judicial economy and courtroom and community safety dictate that these three cases should be tried together because it will be extremely difficult to try them separately given the hurdles that must be overcome to try even one case at this point.  A joint trial will add little time to the overall case presentation because each trial will essential cover the same racketeering evidence that must be presented for each case.

Motion at 8.

### 2.    DeLeon's Response.

DeLeon responds to the United States' Motion.  See DeLeon Response at 1.  In the DeLeon Response, DeLeon requests that the Court deny the United States' Motion, because: (i) "such consolidation would be highly prejudicial to Mr. DeLeon's Fifth Amendment rights to due process"; (ii) "would magnify the complexity of already complex cases"; and (iii) "would fly in the face of the strong public policy and this State's efforts to quash the spread of Covid-19 and save lives."  DeLeon Response at 1.  DeLeon argues that:

> The government has not met its burden under any rule, law, or policy to support its motion to show that consolidation of the identified cases, namely of Defendants Jody Rufino Martinez (case 19-CR-3725 JB), Tony Gauna (case 20-CR-1629 JB), and Mr. DeLeon (case 15- CR-4268 JB) (collectively, the "Cases"), is warranted or justified.  In fact, the rules and policy actually *call for separate trials*.

DeLeon Response at 1 (emphasis in original).  DeLeon advances five arguments in opposition to the Motion:

> (1) the government fails in its burden to show why the cases should be consolidated; (2) consolidation would create a "super-complex" trial rather than promote judicial economy; (3) consolidation of the cases would be highly prejudicial to Mr.

> Deleon's fundamental right to a fair trial under the fifth amendment; (4) the clear and present danger of covid-19 supports the argument for *separate* trials, not consolidation of trials, (5) Mr. DeLeon will be stipulating to at least one if not more of the elements of his charged offense regarding the existence of an "enterprise," which will significantly reduce the number of government witnesses and any overlap of witnesses with the cases the government proposes to consolidate with Mr. DeLeon's case.

DeLeon Response at 1-2 (no citation for quotation)(emphasis in original).

First, DeLeon argues that the United States does not meet its burden under rules 8 or 13 of the Federal Rules of Criminal Procedure "that the identified cases would be properly joined in a single trial," because the United States does not demonstrate that "'*all offenses and all defendants could have been joined in a single indictment or information*.'"  DeLeon Response at 2 (quoting Fed. R. Crim. P. 13)(emphasis in DeLeon Response).  DeLeon concedes one connection amongst the Defendants' cases: that he and the other Defendants "are alleged to have once been a part of the same enterprise, the Syndicato de Nuevo Mexico (SNM)."  DeLeon Response at 2. Nonetheless, DeLeon argues that, without more, the Defendants' shared ties to SNM is not sufficient for consolidation under rules 8 and 13, because "the count of murder with which Mr. DeLeon is charged is completely unrelated and unconnected to the indictments and counts involving Mr. Gauna and Mr. Martinez."  DeLeon Response at 3.  Moreover, DeLeon emphasizes that he "had already been deported to Mexico before any of the counts with which the other defendants have been charged had even occurred," DeLeon Response at 3, which means that "when unrelated transactions involving several defendants are joined together, 'it cannot be said . . . that all defendants would not be . . . embarrassed and prejudiced in their defense, or that the attention of the jury may not have been distracted to their injury in passing upon the distinct and independent transactions.'"  DeLeon Response at 2 (quoting United States v. Levine, 546 F.2d 658, 662 (5th Cir. 1977)).  Relatedly, DeLeon argues that under United States v. Levine, 546 F.2d

at 662, consolidation is not proper, because DeLeon's "offense is separate and unrelated to the offenses the other defendants are alleged to have committed"' and "[a]n alleged membership in the SNM almost twenty years ago is not enough to join these cases and connect these defendants." DeLeon Response at 4.

Next, DeLeon argues that, rather than enhancing judicial economy, a consolidated trial would be "*super-complex*." DeLeon Response at 4 (emphasis in original). DeLeon asserts that "the principal purpose underlying the preference for joint trials does not exist here," because "joint trials are preferred where, unlike here, defendants are charged in the same indictment." DeLeon Response at 4 (citing Zafiro v. United States, 506 U.S. 534, 537 (1993)). DeLeon notes that both DeLeon's and Martinez' cases were each "declared complex after Motions to Declare Case Complex were *filed jointly* in their respective cases by both the United States and the defendants, and were granted by the Court." DeLeon Response at 5. As a result, "[j]oinder of these two complex cases, together with the addition of Mr. Gauna's case [would] create[] a super-complex case, magnifying the complexity of already complex cases." DeLeon Response at 5. See also DeLeon Response at 4-5 (citing United States v. Rivera-Hernández, 439 F. Supp. 3d 20, 31 (D.P.R. 2020)("District courts may refuse consolidation where, as here, consolidation would increase the complexity of an already complex case.")(citing United States v. Doherty, 867 F.2d 47, 70 (1st Cir. 1989)).

DeLeon next argues that, because consolidation of the Defendants' cases would create a "super-complex" case, the consolidated trial would result in "undue prejudice to Mr. DeLeon's right to due process and a fair trial under the Fifth Amendment to the Constitution." DeLeon Response at 6. Specifically, as DeLeon explains,

> Consolidation of the three cases that are so fundamentally different in charges, evidence, time frame, and alleged actors would prolong the trial, confuse the jury,

and thwart the presentation of evidence, all in violation of Mr. DeLeon's rights under the Fifth Amendment. The prejudice that Mr. DeLeon would suffer in a consolidated trial outweighs any notion of judicial economy.

DeLeon Response at 6.

Relatedly, DeLeon rebuts the United States' argument that the Court can consolidate the Defendants' cases, because there is overlap of one common element of the Defendants' seven alleged offenses. See DeLeon Response at 8. DeLeon explains, however, that the

> meager "overlap" of one element of seven distinct charges between the three defendants is simply not enough to justify consolidation. Outside of the RICO or VICAR charges, there are *no similarities* within the charges against Mr. Deleon and the other two defendants, and a consolidated trial would be highly prejudicial to Mr. DeLeon.

DeLeon Response at 8 (quoting Motion at 2). Rather, there are critical differences between the number and type of offenses. See DeLeon Response at 8.

> Of the seven distinct offenses charged between the three defendants, Mr. DeLeon is charged with just *one*; all of the other six offenses charged belong to Mr. Gauna and Mr. Martinez. Mr. DeLeon is charged with one VICAR count while Mr. Martinez and Mr. Gauna are each charged with one RICO count, and Mr. Martinez is also charged with one VICAR count. And the common ground in the Cases stops there. It would be egregiously and fundamentally unfair to Mr. Deleon's ability to defend himself if the same jury who will sit in judgment of his one single count also heard all the evidence related to the six other charges which are utterly unrelated and irrelevant to Mr. DeLeon's matter. The jury would assuredly be confused and would inevitably be swayed by the voluminous evidence irrelevant to Mr. DeLeon's case yet necessarily presented with regard to the charges against Mr. Martinez and Mr. Gauna.
>
> The alleged offense for which Mr. Deleon is charged occurred in 2001. He was indicted with 24 others in 2015, on one count for violent crimes in aid of racketeering (murder)("VICAR") in violation of 18 USC § 1951(a)(1) and 18 USC § 2 aiding and abetting. Mr. Deleon has lived in Mexico since 2002 and has no association with either Mr. Gauna or Mr. Martinez or their alleged offenses.
>
> By contrast, Mr. Gauna was separately and individually indicted on *six counts* on August 25, 2020. Case 20-cr-016289, Doc. 25. Mr. Gauna's alleged offenses occurred in the Albuquerque metro area, unlike Mr. DeLeon's alleged offense which occurred in the Southern New Mexico Correctional Facility in Las Cruces, New Mexico. Mr. Gauna's alleged offenses the government must prove are

*wholly distinct* from the one offense charged against Mr. DeLeon. Mr. Gauna's charges include:

- racketeering conspiracy (RICO), 18 USC § 1962(d)

- felon in possession of a firearm, 18 USC §§ 922(g)(1) and 924

- two counts of interference with commerce by threats or violence, 18 USC § 1951;

- using, carrying, brandishing a firearm during and in relation to a crime of violence, and possessing and brandishing a firearm in furtherance of such crime, 18 USC § 924(c)(1)(A)(ii);

- using, carrying, brandishing a firearm during and in relation to a crime of violence, and possessing and brandishing a firearm in furtherance of such crime; and discharging said firearm, 18 USC § 924(c)(1)(A)(ii) and (iii);

Case 20-cr-016289, Doc. 25.

In addition, Mr. Martinez was also initially indicted individually and separately from Mr. DeLeon on October, 16, 2019, for alleged offenses that occurred from 2008 to 2018. The Second Superseding Indictment of Mr. Martinez' (case 19-CR-3725, Doc. 57), issued January 9, 2020, included a total of *four* counts. Like Mr. Gauna but *unlike* Mr. DeLeon, Mr. Martinez is charged with a RICO conspiracy. Mr. Martinez's four counts include

- violent crimes in aid of racketeering (murder) (VICAR) and 18 USC § 2 aiding and abetting;

- racketeering conspiracy (RICO), 18 USC § 1962(d);

- witness tampering, 18 USC § 1512;

- felon in possession of a firearm and ammunition, 18 USC §§ 922(g)(1) and 924.

Any "factual and legal compactness of the consolidated trial" alleged by the government does not exist, and the super-complex nature of a consolidated trial of the Cases would significantly prejudice the jury against Mr. DeLeon by having them hear voluminous evidence that is wholly unrelated and irrelevant to Mr. DeLeon's single charge. The court must deny the government's Motion as consolidation would be highly prejudicial to Mr. Deleon and his Fifth Amendment rights to due process and a fundamentally fair trial.

DeLeon Response at 8-9 (quoting United States v. Harris, 458 F.2d 670, 673 (5th Cir. 1972).

DeLeon next argues that a consolidated trial would "contradict every principle, law, and public policy" related to COVID-19 safety and health concerns that is cited by the District of New Mexico's November 18, 2020 administrative order and Judge Riggs' sua sponte Order Continuing Jury Trial.  DeLeon Response at 11.  Specifically, DeLeon emphasizes that a consolidated trial would directly contradict public health guidelines pertaining to preventing the spread of COVID-19, because a multiple-defendant trial would necessarily require more people to be "cram[med] . . . into a single enclosed courtroom."  DeLeon Response at 11.

Finally, DeLeon challenges the United States' argument that the cases should be joined, because the Defendants' "'RICO conspiracy and VICAR offenses both involve proving that SNM is a criminal enterprise engaged in racketeering activity and the evidence for those crimes are identical or greatly overlap.'"  DeLeon Response at 16 (quoting Motion to Consolidate at 2).  Specifically, DeLeon argues that the United States' argument for joinder is irrelevant here, because at trial, he will likely be stipulating "to the existence of the SNM as an enterprise," and may also stipulate to two VICAR elements.  See DeLeon Response at 16 (citing Doc. 2303 Jury Instruction No. 25).  DeLeon states that he will be stipulating to three VICAR elements:

    (i)    "the existence of an 'enterprise' as alleged in the Indictment and defined in 18 U.S.C. §1959(b)(2)";

    (ii)    "[t]hat the charged enterprise engaged in, or its activities affected, interstate commerce"; and

    (iii)    (iii) "[t]hat the charged enterprise engage in 'racketeering activity' as defined in 18 U.S.C. §§1959(b)(1) and 1961(1)."

DeLeon Response at 16 (quoting Doc. 2303 Jury Instruction No. 25 at 39)(alterations in DeLeon Response).  As DeLeon explains, because the other two Defendants "are not making such stipulations," his "proposed stipulation" related to a VICAR conspiracy charge's first three

elements "would eliminate any joint evidence between the cases and therefore the government's argument for consolidation."  DeLeon Response at 16.

### 3. Martinez' Response to the United States' Motion.

Martinez responds to the Motion.  See Martinez Response at 1.  In the Martinez Response, Martinez states that he "strongly opposes the prejudicial and legally improper consolidation requested in the Government's Motion," based on two arguments: (i) that the United States does not meet its burden in demonstrating that the Defendants' cases could have been indicted together under rule 8(b)," see Martinez Response at 2 (citing Fed. R. Crim. P. 13); and (ii) even if the United States satisfies the rule 8(b) standard, the Court, in its discretion pursuant to rule 13, should conclude that the timing, location, safety, and convenience of trial -- particularly during the COVID pandemic -- cut against consolidation, see Martinez Response at 10.

First, Martinez argues that his case should be "properly kept separate" from DeLeon's and Gauna's, because the United States does not meet "the Rule 8 standard even as to the single (unshared) count with a 'shared' enterprise element among all three indictments, and it certainly fails as to the unshared counts."  Martinez Response at 3 (no citation for quotation).  Martinez argues that the Court must evaluate the consolidation of the Defendants' cases under rule 8(b) alone, not rule 8(a).  See Martinez Response at 3.

> Although a "plain reading of the Rule as a whole suggests that when multiple charges are brought against multiple defendants, both provisions come into play [ -- i.e., ] defendants could be joined if 8(b) is satisfied, and then 8(a) would be consulted to determine what offenses can be joined against [each] defendant[ -- ] courts have not construed the Rule in this way, and for sound reasons." 1A Wright & Miller, Federal Practice & Procedure -- Criminal § 145 (5th ed. 2020).  Rather, "[t]he case law is relatively clear that in cases involving multiple defendants, the propriety of joinder is tested by Rule 8(b) alone, and that Rule 8(a) has no application." Id.; see also United States v. Woody, 469 F. Supp. 3d 1163, 1169 (D.N.M. 2020)(Browning, J.)("Where an indictment joins defendants as well as offenses, the propriety of the joinder of offenses is governed

by Rule 8(b), rather than Rule 8(a)."   (citation and internal quotation marks omitted)).

Martinez Response at 3 (alterations in original).

Martinez argues that the Court must evaluate consolidation in this case under rule 8(b) alone, because rule 8(a) is "much more joinder-friendly" than rule 8(b), and rule 8(a) allows "all crimes of 'the same or similar character' or that are 'part[] of a common scheme or plan' to be tried at once . . . resulting in the well well-known practical reality that the Government can almost always throw everything it has on a single defendant into a single trial, even when the consolidation of charges is obscenely prejudicial."  Martinez Response at 4 (citing United States v. Maldonado-Passage, No. 18-CR-0227-SLP (Doc. No. 55)(W.D. Okla. Feb. 12, 2019)(Palk, J.)(allowing the Defendant Tiger King to be tried for both murder for hire and serial tiger euthanasia in a single trial).  Martinez argues that it is, therefore, more appropriate for the Court to evaluate consolidation under rule 8(b)'s "unique 'series of acts or transactions' language," because, the language is more limiting, in that it only "allows the Government to join legitimate co-participants and joint actors -- including, especially, co-*conspirators* -- in a single indictment and trial."  Martinez Response at 4 (quoting Fed. R. Crim. P. 8(b), and citing United States v. Woody, 469 F. Supp. 3d at 1169-70))(emphasis added in Martinez Response).  Ultimately, then, Martinez argues, the United States cannot

> bootstrap subdivision (a) onto subdivision (b) by first joining together a bunch of defendants who share a common thread (subdivision (b)), and then, for each defendant, bringing in additional crimes that have nothing to do with the other defendants (crimes that could *otherwise* be added onto that one defendant under subdivision (a)).
>
>> When similar but unrelated offenses are jointly charged to a single defendant, some prejudice almost necessarily results, and the same is true when several defendants are jointly charged with a single offense or related offenses. Rule 8(a) permits the first sort of prejudice and Rule 8(b) the second. But the Rules do not permit

cumulation of prejudice by charging several defendants with similar
but unrelated offenses.

Martinez Response at 4 (emphasis in original)(quoting <u>Cupo v. United States</u>, 359 F.2d 990, 993

(D.C. Cir. 1966).  Under rule 8(b) then, Martinez argues that the Court should not consolidate the

Defendants' cases, because

> Here, the RICO-conspiracy count shared by Messrs. Martinez (for whom it
> is Count 2) and Gauna (for whom it is Count 1), but not Mr. DeLeon, is the only
> 'overlapping' count among the three men — and even it does not allege that Messrs.
> Martinez and Gauna actually conspired with one another, but only that they each
> conspired (with *someone*) to "conduct or participate, directly or indirectly, in the
> conduct of" the affairs of the same enterprise (SNM).  18 U.S.C. § 1962(c) & (d);
> *see* Mr. Martinez's Second Superseding Indictment, Case No. 19-CR-3725 (Doc.
> No. 57) (filed Jan. 9, 2020); Mr. Gauna's Indictment, Case No. 20-CR-1629 (Doc.
> No. 25) (filed Aug. 25, 2020); Mr. DeLeon's Second Superseding Indictment, Case
> No. 15-CR-4268 (Doc. No. 949) (filed Mar. 9, 2017). Thus, the overlap in elements
> between the defendants' charges extends only to two of the five elements of the
> § 1962(c)count asserted against each: "*First*: [that] an enterprise existed as alleged
> in the indictment; [and] *Second*: [that] the enterprise affected interstate or foreign
> commerce." Tenth Circuit Criminal Pattern Jury Instruction No. 2.76.1, at 250
> (2011 ed. updated Feb. 2018).

Martinez Response at 5.  In addition, as Martinez explains:

> While the Government will try to inflate the importance of these "SNM exists"
> elements in order to bolster its MTC -- talking about the mounds upon mounds of
> 'common' evidence they have that, indeed, SNM is an enterprise and, like all
> fundamentally intrastate enterprises, it affects interstate commerce — the truth is
> that this element is just not where the action is going to be in these trials. It is really
> easy to prove the existence of an enterprise:

>> An enterprise also includes a group of people who associated
>> together for a common purpose of engaging in a course of conduct
>> over a period of time. This group of people does not have to be a
>> legally recognized entity, such as a partnership or corporation. This
>> group may be organized for a legitimate and lawful purpose, or it
>> may be organized for an unlawful purpose. This group of people
>> must have (1) a common purpose; and (2) an ongoing organization,
>> either formal or informal; and (3) personnel who function as a
>> continuing unit. Tenth Circuit Instruction No. 2.74.3, at 231.

Martinez Response at 5 (no citation for quotation).  Furthermore, Martinez states that, "[d]espite

totaling 49 pages and being packed with SNM names, none of the three indictments that the

Government seeks to consolidate even *mentions* either of the other two men," and the "'main

charges being leveled against Martinez and Gauna, especially, are discrete criminal incidents that

have nothing to do with the other two putative co-Defendants."  Martinez Response at 7 (emphasis

in original).  According to Martinez,

> putting spillover-effect prejudice aside, there is simply no efficiency gained from
> making Mr. Martinez sit around . . . as the Government tries to develop evidence to
> prove up an April 2020 burglary allegedly committed by Mr. Gauna (his Counts 3
> and 4) at a time when Mr. Martinez had been in jail for well over a year.  Nor is
> there any efficiency gained from making Messrs.  Gauna and DeLeon sit around
> and watch a murder trial unfold against Mr. Martinez -- one involving a victim
> they've never heard of, being killed in a town they've never been to, for reasons
> they won't be able to guess any better than the jury or courtroom spectators will.
> These inefficiencies only get worse if the lawyers for the unrelated defendants
> decide to actually participate (either with purpose, or just recreationally) in order to
> make the best of the time.

Martinez Response at 7.

Martinez concludes that "the Government's claim that SNM itself provides the necessary

overlap between the three cases to warrant consolidation should be rejected," because "the

Government must allege facts showing that each defendant conspired to participate in a pattern of

racketeering activity that overlapped with the other two," and "right now, none of the indictments

come anywhere close to doing that."  Martinez Response at 9-10.

Next, Martinez argues that the Court should use its discretion under rule 13 to conclude

that there is no independent basis for consolidating the Defendants' cases.  See Martinez Response

at 7 (citing 1A Wright & Miller, supra § 217).

> "If the Rule 8 requirements are not satisfied the matters may not be consolidated,
> as Rule 13 provides no independent joinder authority," but "Rule 13 is permissive
> rather than mandatory, and even when trying the cases together is permitted, it is
> still within the court's discretion to try the cases separately.  In exercising its

> discretion the court should weigh the efficiency and convenience of a single trial against the risks of prejudice to the defendant from a single proceeding. And if there are significant doubts about the fairness trying all charges and defendants together, the court should refuse to consolidate."

Martinez Response at 7 (quoting 1A Wright & Miller, supra § 217 (footnote omitted)).

Here, as Martinez explains, three factors -- timing, location, and safety -- "cut strongly against consolidation." Martinez Response at 10. With respect to timing, Martinez explains that he has

> been vigorously asserting his Speedy Trial rights for over a year now, at one point in December 2019 asking to try a complex RICO immediately after it was indicted -- as the Court engaged in direct colloquies with the Defendant, called CJA Resource Counsel on the phone to talk appointed counsel out of it, etc. -- so as to vindicate his right to be over and done with this. Another superseding indictment, death-penalty review, and pandemic later, Mr. Martinez still wants to go to trial -- tomorrow, if the Court has the date open. The other two putative co-Defendants are in a very different place, with much newer cases and a very different stage of case development. What this means is that, if consolidation is ordered, either the other two co-Defendants will have to hurry up or Mr. Martinez will just have to get over his "Speedy Trial" hang up.

Martinez Response at 10. Second, with respect to location, Martinez explains:

> in the first sentence of the MTC, the Government slyly asks the Court to consolidate Messrs. Martinez and Gauna's cases "*to*" Mr. DeLeon's case, with the implication being that this consolidated megatrial will take place in Las Cruces, where Mr. DeLeon's case is currently set. But the Court has already granted Mr. Martinez's contested motion asking that the case be tried in Albuquerque. *See* Clerk's Minutes of Hearing (Doc. No. 53) (filed Jan. 2, 2020). The Government's attempt to do an end-run around that decision should be rejected.

Martinez Response at 11. Third, with respect to safety, Martinez explains:

> the precariousness of the tradeoff between efficiency and safety that attends to complex, multi-defendant trials. Undersigned counsel conducted the first daylong in-person hearing in the 13th Judicial District Court after COVID-19 began, and were additionally set to be the first to use the 2nd Judicial District Court's new 'complex trial' facility out in the South Valley, before the most recent round of lockdowns and trial cancellations foiled that plan — although they did try a court-sponsored, single-morning mock trial, with a full venire, to test out the facility. As the number of people involved with these trials rises, the choice — *i.e.*, the inevitability of a tradeoff — between adhering to best practices to keep older jurors

safe, and running an efficient, convenient trial becomes starker. Although this isn't usually how things are, in the present environment, trying three separate 2-to-3-week trials will further judicial economy more than trying a single 4-to-8-week trial.

Martinez Response at 11 (no citation for quotation). Based on these factors, Martinez requests that the Court deny the Motion and "allow this case to proceed to trial" separately. Martinez Response at 11.

### 4. Gauna's Response to United States' Motion.

Gauna responds to the Motion. See Gauna Response at 1. In the Gauna Response, Gauna requests that the Court deny the Motion, because consolidating would: (i) be "improper joinder under Fed. R. Crim. P. 8(b)"; (ii) "cause Mr. Gauna undue prejudice"; and (iii) "deny Mr. Gauna a constitutional right to a fundamentally fair trial." Gauna Response at 5. First, Gauna argues that the government does not show -- either in the indictments or discovery -- "that any of the three individuals proposed to be joined participated in the same act or transaction," meaning that the United States does not show a proper basis for joinder based on the "same series of acts or transactions" under rule 8. Gauna Response at 5. Relatedly, the Supreme Court "has consistently included a distinct purpose in support of" its principle that joint trials "'play a vital role in the criminal justice system,'" which is to "avoid scandal and inequity of incon[sistent] verdicts." Gauna Response at 5 (quoting Richardson v. Marsh, 481 U.S. 200, 209 (1987). Accordingly, as Gauna explains, "[t]o fully analyze" whether consolidation of the Defendants' cases could result in the "scandal and inequity of incon[sistent] verdicts," the Court needs to "evaluate the question of whether the results in any of these trials, tried separately, necessarily would call into question the verdict of one of the other trials." Gauna Response at 5-6.

Next, Gauna rebuts the United States' argument that a consolidated trial here would promote judicial efficiency. See Response at 6. In fact, as Gauna explains, a joint trial would do

the opposite, because, given the "highly contagious airborne" nature of COVID-19 spread, coupled with the CDC's guidance to "avoid large gatherings," a joint trial "would actually increase the risk that someone unnecessarily gets sick." Gauna Response at 6. In addition, Gauna rebuts the United States' second argument related to a consolidated trial's efficiency, warning that, "there must be limits on the government's power to do joint trials or potentially the government could take any of these folks alleged to have been members of SNM who are now running afoul of the criminal justice system and join them to this trial." Response at 6.

Gauna next contends that, "[i]f the Court permits joinder under Rule 8, then Mr. Gauna seeks relief from the prejudicial joinder pursuant to Rule 14." Gauna Response at 7. See Fed. R. Crim. P. 14. Gauna argues that to obtain relief under rule 14 of the Federal Rules of Criminal Procedure, he must demonstrate to the Court only that there is an "*appearance* of prejudice," but does not require "a showing of actual prejudice in a future trial." Gauna Response at 7 (emphasis in original). Accordingly, Gauna argues that he can sufficiently demonstrate that "there is a serious risk that a joint trial will "prevent the jury from making a reliable judgment about guilt or innocence." Gauna Response at 7 (citing Zafiro v. United States, 506 U.S. 534, 538 (1993)). Specifically, as Gauna explains, if he were tried alone,

> evidence related to Mr. DeLeon's Count would not be admissible. In a joint trial, that evidence of a homicide will be admitted. If Mr. Gauna were tried alone, evidence from three of Mr. Martinez's counts would not be admissible. In a joint trial, that evidence, including a homicide, will be admitted.

Gaun Response at 8. Ultimately, then, Gauna states that if the Court were to consolidate the Defendants' trials, "[t]here is certainly an appearance and serious risk that this inadmissible evidence being admitted before Mr. Gauna's impartial jury could prevent that jury from making a reliable judgement as to Mr. Gauna's guilt or innocence," and "[d]ue to that appearance and serious

risk," the Court, pursuant to <u>Zafiro v. United States</u>, 506 U.S. at 538, "should grant a severance."

Gauna Response at 8.

Finally, Gauna states that the Court should preserve his Sixth Amendment Right to a Trial,

because otherwise, "at least 67% of a joint trial would be about matters unrelated to Mr. Gauna --

including the Defendants' "two separate murder allegations." Response at 8.

> Such a disproportionate amount of unrelated evidence begs the question: what does
> the right to a jury trial mean and is it something more than a perfunctory process in
> which the government can simply claim "the accused has been tried."

Gauna Response at 8 (no citation for quotation). Gauna quotes the Supreme Court's decision in

<u>Ramos v. Louisiana</u>, 140 S. Ct. 1390, 1395 (2020), to emphasize the importance of his Sixth

Amendment right to a jury trial. Gauna argues, therefore, that consolidating the cases would

undermine the Supreme Court's decision in <u>Ramos v. Louisiana</u>, 140 S. Ct. at 1395, because the

> proposed joint trial would have the impartial jury spending 67% of its time focused
> on evidence completely unrelated to Mr. Gauna's guilt or innocence. Almost
> certainly, Mr. Gauna would not have any cross-examination during the weeks the
> government presents its case against Mr. DeLeon and Mr. Martinez. Presumably,
> deliberations would include 67% of the impartial jury's energy focused on someone
> other than Mr. Gauna. At what point does this no longer become Mr. Gauna's day
> in court?
>
> The promise of a fundamentally fair jury trial must include something more
> than 33% of the evidence relating/pertaining to the accused. The promise of the
> right to an impartial jury must mean something more than having that jury spend
> 33% of their time considering and deliberating the allegations against Mr. Gauna.
> To have Mr. Gauna and his counsel sit as bystanders for several weeks while the
> government puts other people on trial is not what the constitutional founders
> envisioned when they guaranteed and promised the Sixth Amendment right to a
> jury trial. It is not in accordance with basic rights all Americans have all come to
> understand.

Gauna Response at 9. Ultimately, then, Gauna "requests the Court deny the government's motion

to consolidate the two unrelated cases into Mr. Gauna's case for trial." Gauna Response at 10.

5.    **The Hearing**.

The Court held a hearing on December 21, 2020.  See Tr. at 2 (Court).  At the hearing, the

Court considered all three Defendants' arguments in opposition to the Motion.  See Tr. at 2:1-20

(Court).  The Court began the hearing by acknowledging the parties' COVID-19 arguments, stating

that, despite the threats associated with the virus, the Court believed it had the capacity to conduct

a safe trial during the pandemic.  See Tr. at 5:3-5 (Court).  The Court noted, however, that

"consolidating three cases into one," posed greater problems for the Court's compliance with the

Center for Disease Control ("CDC") COVID-19 precautions and guidance, as well as the Court's

compliance with the State of New Mexico's safety standards.  Tr. at 5:11-12 (Court).

> It seems to me to complicate things, so I think if anything in the early stages
> of next year, as we go into it with declining numbers, more vaccines, it really
> doesn't make a lot of sense to consolidate because of COVID-19.  Now, there may
> be other reasons to consolidate.  But, that doesn't seem to me to be a strong reason.
> If it comes out either way, it seems to me it probably should come out in the
> Defendants' favor of uncomplicating and keeping things separate.

Tr. at 5:12-20 (Court).

The United States addressed the Court's COVID-19 discussion by outlining its rationale

for why it still believed the Court should act in its discretion to grant consolidation.  See Tr. at

7:23-25 (Castellano).  Specifically, as the United States explained, even if the vaccine rollout were

successful, it worried particularly about asking jurors to sit for three separate trials.  See Tr. at 8:1-

8 (Castellano).  Accordingly, the United States stressed that, given the difficulty of sitting a jury

in compliance with CDC guidelines and in consideration of jurors' safety, it would be more

efficient to simply sit one jury for one trial.  See Tr. at 8:1-8 (Castellano).

The United States then turned the discussion to outlining past instances of consolidation.

See Tr. at 8:7-9 (Castellano).

We're asking the Court to consolidate the trials because we've already done it before. We know we can, because we've done it before. Looking at the other indictments in these cases, the Court's aware of not only the number of Defendants, but the number of, and different types of charges that were joined when we did it previously.

Tr. at 8:6-8 (Castellano). Relatedly, the United States stressed that, "[i]f the Court joins the three trials, it will be the second smallest trial that we've had," because, in the past, the Court has had a trial in United States v. DeLeon, No. CR 15-4268, with four defendants, a second trial with seven defendants, and a third trial with one defendant. See Tr. at 8:13-16 (Castellano). The United States also noted that it hoped that it could "at least negotiate one of these cases away so we get down to really a two defendant trial as opposed to three." Tr. at 8:19-21 (Castellano).

The United States transitioned back to discussing trial logistics related to COVID-19, explaining to the Court that multiple trials would result in not only transporting the Defendants back and forth from the Bureau of Prisons, but also, moving cooperators between prison facilities, which, the United States stressed, puts the involved parties' safety at risk. See Tr. at 9:1-8 (Castellano).

We have to be mindful of how to transport safely, not only for the cooperators who might testify, but for all those handling them in transit. So I think if we have multiple trials stacked up back to back to back, then I think we're going to have potential issues with housing of prisoners and housing them at facilities that are safe and I think if we can do this one time, I think it really would be the more efficient means of handling this trial. So we have in this case not that much more in terms of participants in the courtroom. . . . So it would be five attorneys in the courtroom. It would not be that much larger, and I think it can be done.

Tr. at 9:5-18 (Castellano).

The United States next addressed its argument that, under rule 8 of the Federal Rules of Criminal Procedure, the cases could be charged together on the same indictment. See Tr. at 9:19-25 (Castellano).

Now, looking at the charges in this case, I think when it comes to proof, one of the arguments is that these are too far apart in terms of dates or charges and things of that nature, but like I said, we've already done this before. And Mr. DeLeon argued that just the elements were something that we should look at; but looking at the elements of the offense, it's important to note some of the instructions off the Government's exhibit list. So it's important to remember a few things if we try these cases together. One is that looking at . . . Exhibit 3, which is our instruction 23 from trial 1. There are important factors in addition to the elements. The first is that the entrance element into a RICO organization applies in an ongoing organization that functions as a continuing unit. So we do have to show the ongoing and continuing nature of the enterprise, that is that the course of conduct occurred over a period of time; that different members could perform different roles at different times; and, that the personnel may change and may not be associated where the enterprise for the entering period of the indictment. So addressing Mr. DeLeon's concerns about whether or not Mr. DeLeon was there, just for a distinct period of time, that actually doesn't come into play, when you look at the requirements of us proving the elements of the offense. And if you look at each of the indictments, it is important to . . . I think Jody Rufino Martinez' conduct goes back to 1998, which is his entrance into the SNM, which is actually three years before the DeLeon murder. So, if we look at the conduct over time, the periods actually overlap a great deal in terms of his racketeering conspiracy.

Tr. at 10:19-11:25 (Castellano).

Ultimately, then, as the United States stresses, if the Court were to consider the Defendants' "conduct over time, the period actually overlaps a great deal in terms of the racketeering conspiracy," Tr. at 12:1-3 (Castellano), and the Defendants' conduct was "sufficiently similar in time," Tr. at 12:3-4 (Castellano). With this background established, the United States then clarified that Gauna's charges are not "too different" from the Defendants' charges, as to warrant separate trials. Tr. at 12:3-6 (Castellano). Specifically, the United States explained that Gauna "is charged with Hobbs Acts robbery,"[2] which, the United States already demonstrated in its previous trial when it showed that the SNM enterprise is "engaged in racketeering activity, that includes murder, robbery, which includes Hobbs Act violations, of course, extortion drug trafficking, obstruction, and witness tampering." Tr. at 12:7-9 (Castellano). This means, according to the

_____

[2]18 U.S.C. § 1951.

United States, that if it proves Gauna's two Hobbs Act robbery charges, it will be "sufficient to satisfy one of the elements of the offense against all the Defendants, and that is that the enterprise engaged in racketeering activity."  Tr. at 12:12-16 (Castellano).

> So if we could prove our case as to each of these defendants or any one of the necessary defendants in a single trial, that proof can be used against the other Defendants.  It would establish the existence of the enterprise, it would establish that the -- if any one of them engaged in racketeering activity, that proves that the enterprise engages in racketeering activity.  And, of course, the interstate commerce nexus proven against one would be proven against all.  So, in that sense, as I've argued before to this Court, the proof against one can be used against all of the individuals.

Tr. at 12:15-25 (Castellano).

The United States next addressed the Defendants' argument that it would be prejudicial to DeLeon if he were tried with the other Defendants, given concerns about the spillover effect of the evidence.  See Tr. at 13:6-10 (Castellano).  The United States emphasized that, based on the outcomes in the previous trials in United States v. DeLeon, CR No. 15-4268, the Court should not be concerned about the spillover effect.

> But in Trial 1, I've attached exhibits five and six for the Court's consideration.  Those were jury instructions 30 and 37, which reminded the jury to assess the evidence against each Defendant individually, and we know that, in fact, if the jury did that, because it acquitted Rudy . . . but it convicted the remaining Defendants in that case.

Tr. at 13:10-16 (Castellano).

Furthermore, as the United States emphasized, even defense counsel concedes that the prejudice or spillover worry can be "addressed with a limiting instruction."  Tr. at 13:18-19 (Castellano).  For example, the United States explained that the Court sufficiently addressed the prejudice or spillover worry in Trial 2.  See Tr. at 13:18-20 (Castellano).

> I know the Court will remember in Trial 2, the jury got an instruction indicating that the evidence should be considered separate as to each defendant and that happened -- the jury acquitted Alan Patterson and Christopher Chavez and

convicted the remaining defendants.  But when it came to Joe Gallegos, the jury even split as to his counts, convicting him of two murders and acquitting of the non-murder charges.  So we know the jury will follow the Court's instruction and will assess the evidence individually as to each one, so I think that can be addressed through the jury instructions.

Tr. at 14:1-8 (Castellano).

The United States next emphasized how the commonality of the Defendants' charges supports the Court's consolidation in this case.  Tr. at 14:9-10 (Castellano).

Now, looking at not only the VICAR charges, we know that Mr. Martinez and Mr. Gauna are both charged with racketeering conspiracy.  Actually, the same allegation.  It's a racketeering conspiracy.  It's a Section 1962(d) violation.  And that violation was that they agreed to violate Section 1962(c).  So they face a similar charge.  And Mr. Martinez and Mr. DeLeon both face VICAR murder counts.  So we have similar charges against each of these individuals, so there is some overlap in the charging as well . . . . [W]hen it comes to the racketeering conspiracy count, almost all those elements also overlap with the VICAR elements.  So once again, if we prove the racketeering conspiracy county as to any of these defendants, any of the two who are charged with it, we would be in essence proving almost all the VICAR elements, which even includes the existence of the enterprise, the racketeering activity, the only difference is in a racketeering charge you have to prove that an individual committed two or more acts of racketeering, and in VICAR you have to prove that the enterprise engaged in racketeering activity.  But if you prove that element as to a racketeering conspiracy, you're also establishing that the enterprise engaged in racketeering activity by meeting that element.  So in essence, it's almost all the same proof that can be used to meet the elements, not only as to all the Defendants, but also as to the charges themselves.

Tr. at 15: 1-10 (Castellano).  In sum then, the United States concluded that given COVID logistics and the commonalities underlying the Defendants' charges, the Court should exercise its discretion and grant the United States' Motion.  See Tr. at 14:15 - 15:3 (Castellano).

Before the Defendants responded to the United States' argument, the Court interjected, asking the United States to explain its position on United States v. Sutherland, 656 F. 2d 1181, 1190-97 (5th Cir. 1981), a case from the United States Court of Appeals for the Fifth Circuit, which the Defendants cited in their briefs.  See Tr. at 17:5-10 (Court).   According to the Court, United States v. Sutherland holds that being associated with the same RICO enterprise is not

sufficient for joinder under rule 8(b) of the Federal Rules of Criminal Procedure, if the defendants were not actual co-conspirators with one another.  See Tr. at 17:11-14 (Court).  In addition, the Court requested that the United States explain its position on United States v. Elliott, 571 F.2d 880, 902-03 (5th Cir. 1978), another Fifth Circuit case.  See Tr. at 17:14-15 (Court).  Specifically, the Court asked the United States whether United States v. Sutherland, 656 F. 2d at 1190-97, and United States v. Elliott, 571 F.2d at 902-03, (i) "call into question" the Court's ability to try the Defendants together here; and, relatedly, (ii) limit the Court's discretion in joining the trials.  Tr. at 17:14-21 (Court).  The United States responded to the Court's inquiries by stating that it does not believe United States v. Sutherland, 656 F. 2d at 1190-97, and United States v. Elliott, 571 F.2d at 902-03, require the Court to keep the Defendants' trials separate here.  See Tr. at 17:21-25 (Castellano).  Rather, the United States explained that in United States v. Sutherland, 656 F. 2d at 1190-97, the Fifth Circuit held that rule 8(b)'s scope for joinder is wider in RICO cases than it has been in pre-RICO conspiracy cases, "because a relevant conspiracy no longer had to have a specific crime as its object, but merely a pattern of racketeering activity."  Tr. at 18:1-8 (Castellano).  According to the United States, then, consolidation in this case is not contrary to United States v. Sutherland, 656 F. 2d at 1190-97, and United States v. Elliott, 571 F.2d at 902-03, because, here, Martinez and Gauna are

> actually charged with the same offense.  The exact same offense.  Now, there are obviously different overt acts, but the time periods overlap greatly between those two indictments.  Also, from Martinez' brief on page 9, it says that each agreed to participate directly and indirectly in the affairs of the enterprise's commission of two or more predicate crimes.  Under the statute, it's irrelevant that each Defendant participates in the enterprise's affairs in different, even unrelated crimes, so long as we may reasonably infer that each crime was intended to further enterprise's affairs.  So we only have as to prove that they agreed that someone, two or more people, which could include themselves, agreed to further the enterprise's affairs.  So they're actually charged, in essence with the same offense.

Tr. at 18:8-25 (Castellano).

Upon conclusion of the United States' arguments, the Defendants responded, with DeLeon responding first.  See Tr. at 19:1-20 (Goman).  DeLeon opened by stating that the Court should deny the United States' Motion, because his constitutional rights should not

> get compromised based on the convenience of the Government or what is convenient for their cooperating witnesses.  Mr. DeLeon has a Fifth Amendment due process right and a right to a fair trial, and consolidating these cases would violate those rights.

Tr. at 19:23-20:4 (Gorman).  Relatedly, DeLeon rebutted the United States' convenience rationale for trial consolidation, as well as the United States supplementary argument that, because the Court had historically consolidated some trials in United States v. DeLeon, No. CR 15-4268, it should do so here.  See Tr. at 20:6-10 (Gorman).  Namely, DeLeon explained that the United States' reference to the Court's actions in the past is tenuous in justifying consolidation here, because, as compared to Defendants Martinez and Gauna, "Mr. DeLeon has a different charge" and has a "different case."  Tr. at 20:11-12 (Gorman).

> We're not trying this case back in 2018 with the initial indictments, and whether Martinez and Mr. Gauna's cases were not indicted in the same indictment with Mr. DeLeon.  They were separate indictments regarding separate charges that we argue are completely unrelated.  Mr. DeLeon was deported from the United States in 2002.  There is no evidence that he . . . ever had any ongoing activity with the Syndicato de Nuevo Mexico after that.

Tr. at 20:11-20 (Gorman).

DeLeon next addressed the United States' COVID-19 policy arguments.  Here, DeLeon emphasized that he believed "the COVID situation" is a "moving target," and,

> At this point, I think it's pure speculation to say that in and of itself, there is going to be a sure trial date.  I think that the general medical knowledge at this point is that widely spread vaccination won't be available until the summertime, and it will be at least fall where we are able to not be in a socially distanced situation, where we're not wearing masks.

Tr. at 21:1-11 (Gorman).  Relatedly, DeLeon chided the United States for simply "cutting and

past[ing]" Judge Riggs' sua sponte order from November in its brief.  Tr. at 21: 8-11 (Gorman).

Elaborating on this argument, DeLeon stated that COVID-19 and Judge Riggs' sua sponte order

discussing COVID-19 risks, were "nonsensical" bases for trying the Defendants' cases together,

because a consolidated trial would mean "triple the amount of attorneys, investigators, paralegals,

defendants, marshals [and] witnesses," which, in turn, would "create a mega trial and increase the

risk of the spread of COVID."  Tr. at 21:15-22 (Gorman).

> Now I understand that in previous trials under Mr. DeLeon's indictment, there may have been more defendants, but that was not during the time of a pandemic, and regardless, that there may be one less defendants in this proposed consolidation than the previous cases, there are still many other counts and Mr. DeLeon has one single count.  It's also our information as CJA attorneys that while COVID protocols are in place, that the precedent is for a single defendant's noncomplex case to go to trial.  Cramming trial participants in a courtroom would not result in conducting a trial safely under COVID times.  And, I think that trying to try three defendants together flies in the face of all medical guidance and knowledge that we have about this virus at this time, and i think that clearly the information we have is going to change.  We know what lies ahead in the spring, but based on what we know right now, . . . it's simply not safe, and makes no sense to consolidate the cases.

Tr. at 21:23-22:17 (Gorman).

Relatedly, DeLeon stressed that the United States' argument that judicial economy favored

trial consolidation is erroneous, because a consolidated trial would result in (i) "a super complex

trial with three cases that were indicted separately and in different stages"; (ii) "would cause the

Court to be in trial longer"; (iii) would "cause jurors to be around longer," and (iv) faces the added

obstacle that DeLeon's case is "set in Las Cruces," while Martinez' and Gauna's cases are "set in

Albuquerque."  Tr. at 22:20-23:2 (Gorman).

DeLeon turned subsequently to his next argument for why the trials should not be

consolidated, which is that trial consolidation would "significantly prejudice[]" his case.  Tr. at

22:8-9 (Gorman).  Specifically, as DeLeon explained, although there is not "more of a chance that Mr. DeLeon would be acquitted if" he were tried separately, "[h]is right to due process and his Fifth Amendment rights would be violated because consolidation of these fundamentally different charges would prolong the trial, confuse the jury, and lead to prejudice for Mr. DeLeon."  Tr. at 23:13-17 (Gorman).  To support his argument, DeLeon cited a case from the United States Court of Appeals for the Eighth Circuit, United States v. Jordan, 602 F.2d 171, 173 (8th Cir. 1979), which featured a conspiracy that involved a police shooting and a cover-up.  See Tr. at 23:17-20 (Gorman).  In United States v. Jordan, the Eighth Circuit ultimately determined that the officer defendant who committed the shooting should not have been tired with the other conspirators "because that defendant had no knowledge of what had gone on in the conspiracy and had no knowledge of the very gruesome acts that those other defendants had done, even though he was deemed to be a part of the same conspiracy."  Tr. at 23:20-25 (Gorman)(citing 602 F.2d at 173).  Based on the Eighth Circuit's ruling in United States v. Jordan, 602 F.2d at 173, DeLeon argued that the Court should not consolidate the Defendants' cases, because "[i]n this case, there is not even a conspiracy that is alleged between Mr. DeLeon and these other defendants."  Tr. at 24:1-4 (Gorman).  Furthermore, DeLeon's case is

> certainly more attenuated, and it would be extremely prejudicial for Mr. DeLeon, who has one count, to be tried with these other defendants who have multiple charges and would be significantly prejudiced. And it would be difficult for the jury to separate those offenses.
>
> . . . .
>
> But, we cannot transpose what happened in that case on to this case.  It's separate facts, and it would be fundamentally unfair for Mr. DeLeon to go to trial and defend himself in front of the same jury that's going to hear 10 different charges from other defendants that have completely unrelated charges, that are irrelevant to Mr. DeLeon's charges.

Tr. at 24:4-20 (Gorman).

Finally, DeLeon rebutted the United States' argument that there should be trial consolidation here, because a RICO conspiracy's "enterprise" element overlaps for DeLeon's case, Martinez' case, and Gauna's case.  See Tr. at 24:21-25 (Gorman).  Rather, DeLeon clarified that, because he plans to stipulate at trial "to several elements regarding the enterprise," this will "significantly cut down on the amount of witnesses that the Government would have to present in our trial."  Tr. at 25:1-5 (Gorman).

> I don't know that the other defendants are prepared to make such a stipulation.  But that in and of itself would shorten if the length of our trial, and assuming the Government and the Court accepted such a stipulation, there would no longer be that overlap of evidence between the three defendants.

Tr. at 25:1-10 (Gorman).

Martinez next presented his arguments against the Court's granting of the United States Motion.  See Tr. at 25:21-25 (Harrison).  First, Martinez argues that trial consolidation here fails the rule 8 joinder test as applied by almost every Court of Appeals across the country.  See Tr. at 26:1-5 (Harrison).  Moreover, as Martinez explains, the Defendants' indictments are very different, meaning that the Defendants could not likely have been charged on the same indictment.  See Tr. at 26:10-15 (Harrison).  For example, Martinez explained that DeLeon's indictment includes a number of names, but does not reference any of the same acts that Martinez' and Gauna's indictments do, nor does DeLeon's indictment reference any of the same people, particularly the other two Defendants.  See Tr. at 26:11-15 (Harrison).  Martinez noted, as well, that Martinez' and Gauna's indictments neither reference DeLeon, nor reference each other.  See Tr. at 26:15 (Harrison).

Martinez next turns to United States v. Sutherland, which, he argues, demonstrates that the United States' reliance on the fact that the Defendants all belong to one common enterprise -- SNM

-- is an insufficient basis for consolidation.  See Tr. at 26:15 (Harrison)(citing 656 F. 2d at 1190-97).  Relatedly, as Martinez explains, even though the United States has tried SNM cases before, and has used common witnesses and common evidence against SNM, the mafia, and street gangs during those trials, history, alone, does not justify the United States trying members of different street gangs in a consolidated mega trial.  See Tr. at 26:21-27:1 (Harrison).  Furthermore, Martinez argues that United States v. Sutherland stands for the principle that RICO is not an abrogation of the multiple conspiracies doctrine.  See Tr. at 27:9-13 (Harrison).  Rather, as Martinez explains:

> [w]hat RICO does is expand the definition of conspiracy itself.  It's no longer the Government having to allege conspiracy to commit one specific crime.  Now, it's expanded to conspiracy to commit one specific pattern of racketeering activity.

Tr. at 27:9-14 (Harrison).

Here, as Martinez explains, the United States alleges that SNM is "engaged in several different patterns of racketeering activity," and, accordingly, the United States must prove that the gang members' "acts constitute a pattern of racketeering activity," and "the acts of racketeering are related to each other and they pose a threat of continued criminal activity."  Tr. at 28:1-2 (Harrison).  Martinez argues, therefore, that it is not sufficient for the United States to demonstrate at trial "only that the defendant committed two of the racketeering acts the Court has just described," because "a series of disconnected acts does not constitute a pattern."  Tr. at 28:3-6 (Harrison).

> The Government must prove the acts, the same or similar purposes, participants, victims, or methods of commission or they are otherwise interrelated by distinguishing characteristics, and are not isolated events.  And to prove would pose a continued threat of racketeering activity, they must establish both that the acts are part of a long-term association that exists for criminal purposes, or they are a    regular    way    of    conducting    the    defendant's    ongoing    business.

Tr. at 28:10-21 (Harrison).  Martinez explains that there is no overlap in the case so as to justify

consolidation, because the United States has already thrown out the SNM as an overlapping

element.  See Tr. at 28:21-25 (Harrison).

> One of the putative co-defendants is charged with just RICO, the other
> putative defendant is charged with just VICAR.  The overlap is the generic
> enterprise elements and the all-important jurisdictional interstate commerce hook.
> Accordingly, Martinez argues that there is not much overlap.

Tr. at 29:1-5 (Harrison).

Martinez next opposed the United States' Motion to consolidate cases based on his Speedy

Trial argument.  See Tr. at 29:7-11 (Harrison).  According to Martinez, the parties have consented

to the case's complex case designation after the United States added a death-eligible charge to

Martinez' indictment.  See Tr. at 29:19-20 (Harrison).  Despite the complex case consolidation,

however, Martinez argues that his Speedy Trial rights are still applicable, and the United States

has a continuous obligation to try the case as efficiently as possible, meaning the complex case

exception from the Speedy Trial Act is of limited applicability.  See Tr. at 29:21-25 (Harrison).

> The complex case exception from the Speedy Trial Act is . . . whether the
> case is so unusual or so complex due to the number of defendants, the nature of the
> prosecution, the existence of novel questions of fact or law, that it is unreasonable
> to expect adequate preparation for pretrial proceedings for the trial itself within the
> time limits established by this exception.  So the complex case designation only
> gets you around the time limits insofar as it is unreasonable to exact adequate trial
> preparation.

Tr. 30:1-10 (Harrison).   In this case, Martinez explains, he is prepared to go to trial, and,

accordingly, his Speedy Trial rights -- notwithstanding the complex case designation -- should not

be a factor.  See Tr. 30:11-17 (Harrison).  Martinez then quoted U.S. v. Gambino, a case from the

United States District Court for the Eastern District of New York, for the principle that inherent

intricacies associated with the United States' trial preparations is not a relevant factor in the present

discussion.  See Tr. 30:17-21 (Harrison)(citing 835 F. Supp. 74 (E.D.N.Y. 1993).  Martinez also

argues that it would be unfair to delay his trial because of consolidation, particularly given that his

co-defendants are not currently prepared for trial.  See Tr. at 30: 22-31:3.  Relatedly, Martinez

argues that his case is set to be tried in Albuquerque, which is the most convenient location for

him and his family, whereas he was uncertain where his co-defendants' trials were to be held.  See

Tr. at 30:9-10 (Martinez).

Finally, Martinez argued that the United States is trying to rely too heavily on a collateral

estoppel argument to justify the Court's trial severance, which is an inapplicable argument in in

this case.  See Tr. at 31:11 (Harrison).

> Last, but not least, the United States has largely been leaning on what has
> happened in a prior series of cases, not just certainly with this motion, but not just
> with this motion.  And in general, in prosecuting this se.  There is no collateral
> estoppel that applies in this direction.  You know Martinez was not a party to those
> prior cases, and things are different.  They have to win again.

Tr. at 31:11-19 (Harrison).  Ultimately, then, Martinez argues that the United States does not prove,

under rules 8 and 13 of the Federal Rules of Criminal Procedure, that it should consolidate the

Defendants' cases for trial.  See Tr. at 32:1-4 (Harrison).

Upon Martinez completing his arguments, the Court interjected, asking Martinez if he

believed the Sutherland holding called into question the Court's earlier trials of several United

States v. DeLeon defendants together in a series of two trials in 2018.  See Tr. at 32:4-8 (Harrison).

Martinez responded that the inquiry turned on several procedural questions.

> I believe those are indicted together, so it was a pure Rule 8 analysis.  I
> don't think that the Government moved under Rule 13 and [in] those instances.
> And, then of course, the question, that's very easy . . . Those variances are easily
> valuable by the defense.  So the short answer . . . if the defense didn't make the
> right arguments at the right times or if they made strategic decisions to the contrary,
> then I certainly can't say that it's an error by the Court.  Relatively unglamourous
> issues like that are likely how the Tenth Circuit would dispose of such arguments
> as well.

Tr. at 32:8-21 (Harrison).

Martinez then briefly referred the Court to its decision in U.S. v. Baca, where, according to Martinez, the Court severed Gallegos' trial for the same reasons that Martinez argues justify severance here, namely that Martinez is prepared for trial now and that the other co-defendants are not.  See Tr. at 33:10-12 (Harrison)(citing 409 F. Supp. 3d 1169, 1183-84 (D.N.M. 2019)(Browning, J.)).  Furthermore, as Martinez explained, the Court has more discretion to sever the trials here, given the procedural posture of the case, under rule 13 of the Federal Rules of Criminal Procedure.  See Tr. at 33:10-12 (Harrison).  According to Martinez, the Court's discretion means that, based on the Court's rationale in Baca, the Court should sever the trials here.  See Tr. at 33:14-17 (Harrison)(citing 409 F. Supp. 3d at 1183-84).

The Court then offered Gauna the opportunity to respond to the Motion.  See Tr. at 33:20 (Court).  Gauna raised three arguments.  See Tr. at 34:24 (Pugh).  First, Gauna argued that the United States has not shown that, under rule 8, Gauna could have been indicted with DeLeon and Martinez, because DeLeon's VICAR count is "charged as occurring in the southern New Mexico prison facility back in 2001," but "Mr. Gauna was not in prison [at] that [time]."  Tr. at 34:1-3 (Pugh).  Gauna also argued that the VICAR count against Martinez is for a murder that allegedly occurred in Truchas, New Mexico, but "[t]here is not going to be any evidence that Mr. Gauna was ever [in a] place called Truchas, New Mexico or that he even knows where that place by be."  Tr. at 34:7-10 (Pugh).  Further, Gauna noted that he "was in prison at that time" and that there is "no information that Mr. Gauna had anything to do with that particular homicide whatsoever."  Tr. at 34:12-14 (Pugh).  Most of the events involved in Gauna's counts "occurred in April of 2020," but "Mr. DeLeon and Mr. Rufino Martinez were in custody with the US Marshals during that time period."  Tr. at 34:15-18 (Pugh).  In sum, "the essence of the facts [--] the proposed evidence [--]

that would support convictions against these men largely don't overlap at all" and the "reason for the trial doesn't overlap at all."  Tr. at 34:18-22 (Pugh).

Second, Gauna argued that, if the Court were to join the Defendants, Gauna then would be entitled to severance under rule 14, because he would be unduly prejudiced by a consolidated trial. See Tr. at 35:18-20 (Pugh).  Gauna invoked Zafiro v. United States, 506 U.S. at 539, to argue that, if the trials are consolidated, the jury will be prevented from "making a reliable judgment about guilt or innocence."  Tr. at 35-36:25-1(Pugh).  Specifically, according to Gauna, the "proposed evidence" that the United States will present against Martinez and DeLeon would prevent the jury from accurately determining Gauna's guilt.  Tr. at 36:4 (Pugh).  According to Gauna, a consolidated trial would mean that what "we're going to have is a trial in which essentially three different trials [are] going on."  Tr. at 36:20-21 (Pugh).  The "two homicide trials against two separate individuals that Mr. Gauna undisputedly had nothing to do with those particular homicides does give an appearance of prejudice to Mr. Gauna."  Tr. at 37:6-10 (Pugh).

Third, Gauna argues that Ramos v. Louisiana, 140 S. Ct. at 1397, means that a "right to a fair trial and a right to a jury trial has to mean something," and that a "cattle call trial" is not a fair trial.  Tr. at 37:11-25 (Pugh).  "More like 80 percent of the evidence and 80 percent of the time" of a consolidated trial would be devoted to "things unrelated to Mr. Gauna."  Tr. at 38:2-5 (Pugh). As a result, the "jury's deliberations almost certainly would have to change gears."  Tr. at 38:14-15 (Pugh).  Gauna argued that the "vast majority" of the evidence presented and the jury's deliberations in a joint trial "aren't going to be related to Mr. Gauna, and Mr. Gauna is entitled to the Sixth Amendment right to a jury trial."  Tr. at 38:20-25 (Pugh).

The Court then gave the United States a chance to respond.  See Tr. at 39:21-22 (Court). The United States argued that DeLeon's stipulation to any of the elements required to convict

DeLeon does not prevent it from putting on evidence.  See Tr. at 41:3-18 (Castellano).  The Court responded by noting that, if DeLeon stipulates to elements, "it just diminishes so much the need to beat up on phantom issues, doesn't it[?]"  Tr. at 41:20-22 (Court).  The United States responded that it "depends," because it "depends on what comes up in the trial."  Tr. at 41:23-24 (Castellano).  Contrary to Gauna's assertion that a consolidated trial would be overly complex, the United States asserted that there "will be one trial" and that Gauna's argument "indicates a misunderstanding of the elements."  Tr. at 42:3-18 (Castellano).  The United States argued that "if we can prove a murder as to any one of these defendants a murder is racketeering activity" this would "establish as to all defendants that the gang itself establishes or engaged in racketeering activity and therefore that evidence could be used against all three defendants."  Tr. at 42:19-24 (Castellano).

With respect to Gauna's assertion that the conduct of the three defendants is too factually dissimilar, the United States countered that, in 2001, Gauna was incarcerated at the Bernalillo County Detention Center and was recruited into SNM, which is the same year "when we had the DeLeon murder."  Tr. at 43:7-10 (Castellano).  As a result, "we do have in 2001 signing up . . . which is an indication of agreement to engage in racketeering activity or an agreement that others will engage in racketeering activity so in 2001 it lines up with the DeLeon murder in terms of timing."  Tr. at 43:9-14 (Castellano).  Further, in 2003, "only two years apart from the DeLeon murder, Mr. Gauna caused 2.5 ounces of heroin to be smuggled into the central New Mexico correctional facility where it was distributed to other SNM Gang members and sold [to] the other inmates."  Tr. at 43:20-25 (Castellano).  The United States asserts that, because Gauna's activity "goes all the way back to 2001" and up to 2019, "this is an ongoing enterprise" and that Gauna's Indictment "alone can meet the elements as most of the elements as to the [other] defendants."  Tr. at 44:3-9 (Castellano).

According to the United States, there is overlap with Martinez, too. <u>See</u> Tr. at 44:13-14 (Castellano). Martinez was recruited to join the SNM gang in 1998 "in Milan, New Mexico so once again three years before the DeLeon murder." Tr. at 44:17-18 (Castellano). The United States stated that Martinez battered a corrections officer in 1999, and "once again that's activity before DeLeon, so this is not a big timeframe or a time gap between the acts in these indictments." Tr. at 44:19-22 (Castellano). Martinez has "acts going all the way up to 2015, 2016, 2018, and 19." Tr. at 45:2-3 (Castellano). The United States again stressed its argument that, "in effect if we prove these, we prove elements as to the other defendants." Tr. at 45:6-8 (Castellano).

Last, the United States argued that a consolidated trial does not prejudice the Defendants. <u>See</u> Tr. at 45:11-17 (Castellano). In previous cases where the Defendants argued for severance, "all defendants argued everyone else's murder was more horrendous than the others and required severance," but "the Court kept those together for lawful and correct reasons." Tr. at 45:12-19 (Castellano). The United States argued that the Court has allowed these things before, and that the Court should allow it here, too, because it is more efficient. <u>See</u> Tr. at 46:2-5 (Castellano). According to the United States, in previous cases, "the jury handled it appropriately and there is no indication that even under those circumstances the jury was so greatly prejudiced that it made decisions that were not proper under the evidence that was presented to them." Tr. at 46:11-15 (Castellano). The United States asserted that "these things can be handled together" if the Court gives limiting instructions. Tr. at 46:16-17 (Castellano).

The hearing concluded with the Court stating that it is "going to deny the motion," but that the "courthouse is always [open] if we need to relook at these things." Tr. at 46:21-23 (Court). The Court stated that, if this motion were a motion to sever, "it might be a totally different [thing] but given that they were indicted separately, there is some clear reasons why they were indicted

separately." Tr. at 47:5-8 (Court). The Court explained that "we can consider [joining them] down the road if we ever need to when we're not looking at the COVID restrictions." Tr. at 47:21-23 (Court).

## LAW REGARDING CONSOLIDATION UNDER RULES 8 AND 13 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

"The Federal Rules of Criminal Procedure liberally encourage the joining of parties and charges in a single trial." Ashe v. Swenson, 397 U.S. 436, 454-55 (1970)(Brennan, J. concurring). See Fed. R. Crim. P. 8, 13. The Supreme Court of the United States of America expresses a preference for joint trials. See Zafiro v. United States, 506 U.S. 534, 537-38 (1993).

> There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials "play a vital role in the criminal justice system." *Richardson v. Marsh,* 481 U.S. 200, 209 (1987). They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.,* at 210. For these reasons, we repeatedly have approved of joint trials. *See ibid.; Opper v. United States,* 348 U.S. 84, 95 (1954); *United States v. Marchant,* 12 Wheat. 480, 6 L.Ed. 700 (1827); cf. 1 C. Wright, Federal Practice and Procedure § 223 (2d ed. 1982)(citing lower court opinions to the same effect).

Zafiro v. United States, 506 U.S. at 537-38. Nonetheless, the Supreme Court cautions that, even if joinder is proper under rule 8(b), a district court's discretion to grant joinder must be tempered by potential "prejudice to either a defendant or the Government. If it appears that a defendant or the government is prejudiced by a joinder of . . . defendants . . . for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." Zafiro v. United States, 506 U.S. at 538 (citing rule 8(b)).

> In interpreting Rule 14, the Courts of Appeals frequently have expressed the view that "mutually antagonistic" or "irreconcilable" defenses may be so prejudicial in some circumstances as to mandate severance. See, *e.g., United States v. Benton,* 852 F.2d 1456, 1469 (CA6), cert. denied, 488 U.S. 993, (1988); *United States v. Smith,* 788 F.2d 663, 668 (CA10 1986); *United States v. Keck,* [773 F.2d 759,] 765 [(CA7 1985)]; *United States v. Magdaniel-Mora,* 746 F.2d 715, 718 (CA11 1984); *United States v. Berkowitz,* 662 F.2d 1127, 1133-1134 (CA5 1981); *United States v. Haldeman,* 181 U.S. App. D.C. 254, 294-295, 559 F.2d 31,

> 71-72 (1976), cert. denied, 431 U.S. 933, (1977).  Notwithstanding such assertions, the courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses.  See, *e.g., United States v. Tootick,* 952 F.2d 1078 (CA9 1991); *United States v. Rucker,* 915 F.2d 1511, 1512-1513 (CA11 1990); *United States v. Romanello,* 726 F.2d 173 (CA5 1984). The low rate of reversal may reflect the inability of defendants to prove a risk of prejudice in most cases involving conflicting defenses.

Zafiro v. United States, 506 U.S. at 538.

In United States v. Rivera-Hernandez, 439 F. Supp. 3d 20, 27 (D.P.R. 2020)(Besosa, J.), the Honorable Francisco A. Besosa, United States District Judge for the United States District Court for the District of Puerto Rico, described the factors a trial court should consider before granting a motion for consolidated criminal trials.  See United States v. Rivera-Hernandez, 439 F. Supp. 3d at 27.  First, Judge Besosa explained the countervailing considerations that courts might assess when considering the joinder of offenses or defendants, see United States v. Rivera-Hernandez, 439 F. Supp. 3d at 27:

> Joinder of offenses or defendants involves a presumptive possibility of prejudice to the defendant and of benefit to the court, to the government, and to the public.  King v. United States, 355 F.2d 700, 703 (1st Cir. 1966).  "[C]onsolidated trials tend to promote judicial economy, conserve prosecutorial resources, and foster the consistent resolution of factual disputes common to properly joined defendants." United States v. Josleyn, 99 F.3d 1182, 1188 (1st Cir. 1996).

United States v. Rivera-Hernandez, 439 F. Supp. 3d at 27-28.  When considering the merits of granting consolidation, "[t]rial courts have discretion on whether to order consolidation of offenses and defendants into a single trial."  United States v. Rivera-Hernandez, 439 F. Supp. 3d at 28 (citing United States v. Trainor, 477 F.3d 24, 36 n.22 (1st Cir. 2007); United States v. Cressey, Crim. Nos. 97-1624, 97-1806, 1998 WL 153152, at *1 (1st Cir. March 31, 1998)(per curiam)). Rules 8 and 13 of the Federal Rules of Criminal Procedure inform a court's analysis of a motion for consolidation, with rule 8 outlining a court's considerations for joinder, and rule 13 governing the consolidation of offenses and defendants for purpose of trial.

Pursuant to rule 13, "[t]he court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information." Fed. R. Crim. P. 13. A court's discretion to grant joinder, therefore, "is tempered by the limitation that joinder in a single indictment could have been proper." United States v. Rivera-Hernandez, 439 F. Supp. 3d at 28 (citing Fed. R. Crim. P. 13, and Daley v. United States, 231 F.2d 123, 125 (1st Cir. 1956)(stating that a court's decision to consolidate offenses and defendants under rule 13 of the Federal Rules of Criminal Procedure requires a court's consultation of rule 8's joinder requirements).

Rule 8(a), which pertains specifically to the court's joinder of a single defendant's two or more alleged offenses, states: "The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 8(b), which applies to the joinder of two or more defendants, states:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). Rules 8(a) and 8(b) make a distinction between "the circumstances permitting joinder of multiple offenses by a single defendant," and "the circumstances in which two defendants may be joined." United States v. Rivera-Hernandez, 439 F. Supp. 3d at 28. As Judge Besosa explains:

> For starters, Rule 8(a) provides for joinder where "offenses charged . . . are of the same or similar character." Id. R. 8(a). Rule 8(b) does not contain that language. See id. R. 8(b). Thus, "though defendant *X* could be jointly charged with crimes *A* and *B* because they are of the same or similar character, defendant *X* and *Y* may not

together be jointly charged with crimes *A* and *B*." 5 Wayne R. LaFave et al., <u>Criminal Procedure</u> § 17.2(a), at 20 (4th ed. 2015) [hereinafter LaFave]; <u>see</u> <u>King</u>, 355 F.2d at 703-05 (explaining that mere similarity of acts among defendants is insufficient for joinder pursuant to Rule 8(b)).

The "same or similar character" provision for joinder in Rule 8(a) allows for joinder in a variety of cases. "[S]imilar does not mean identical." <u>United States v.</u> <u>Sabean</u>, 885 F.3d 27, 42 (1st Cir. 2018)(internal quotation marks omitted). To determine whether counts are properly joined, courts should "take into account factors such as whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred." <u>Id</u>. (internal quotation marks omitted). As LaFave explains,

> it is permissible to join together several instances of the same crime, such as bank robbery, though they were committed by the defendant at distinct times and places and not as part of a single scheme. But "the mere fact that the crimes carry different labels is not determinative" of the joinder issue, as if they have "a general likeness" they are still of "similar character." This means, for example, that a charge of sale of cocaine may be joined with a charge of possession of other narcotics ....

LaFave, § 17.1(b), at 8 (footnotes omitted). For instance, one court held, "[t]he differences between conspiracy to possess and actual possession are insufficient to deny joinder." <u>United States v. Kinsella</u>, 530 F. Supp. 2d 356, 359 (D. Me. 2008).

Joining offenses of the "same or similar character" has policy advantages. It promotes "trial convenience and economy of judicial and prosecutorial resources." LaFave, § 17.1(b), at 9 (internal quotation marks omitted). A defendant may prefer such joinder to avoid the harassment and delay of multiple prosecutions or to encourage concurrent sentences. <u>Id</u>.

The joinder of offenses of the "same or similar character," however, is not universally accepted. Where unrelated offenses involve distinct sets of proof, "separate trials would not involve substantial duplication of evidence, repeated burdens on witnesses and victims, and increased drain upon prosecutorial and judicial resources." <u>Id</u>. (internal quotation marks omitted). In one case, the First Circuit Court of Appeals upheld a district court's refusal to consolidate charges where joinder "would have increased the complexity of this already complex trial." <u>United States v. Doherty</u>, 867 F.2d 47, 70 (1st Cir. 1989). A defendant could also be prejudiced by a conviction based on the accumulated effect of the evidence or by a desire to assert inconsistent defenses. LaFave, § 17.1(b), at 9.

Joinder of multiple defendants pursuant to Rule 8(b) "is warranted . . . 'as long as there is some common activity binding the objecting defendant with all the

other indictees and that common activity encompasses all the charged offenses.'"
<u>Azor</u>, 881 F.3d at 10 (quoting <u>United States v. Natanel</u>, 938 F.2d [302,] 307 (1st
Cir. 1991).   "In order for joinder to be proper, there must be some common
'mucilage' or activity between an objecting defendant and the other indictees, such
as participation in a common drug distribution scheme." <u>Id</u>. at 11 (quoting <u>Natanel</u>,
938 F.2d at 307).

<u>United States v. Rivera-Hernandez</u>, 439 F. Supp. 3d at 28-29.   In addition, the United States Court

of Appeals for the Fourth Circuit holds that rule 8's transaction term is "a flexible term implying

a connection of logical relationship rather than immediateness."  <u>United States v. Carmichael</u>, 685

F.2d 903, 910 (4th Cir. 1982).   For example, <u>United States v. Carmichael</u> involved two defendants,

who were charged with (i) conspiracy to buy votes in a federal election; and (ii) obstruction of

justice for separately coercing witnesses to give false testimony before a federal grand jury.   See

685 F.2d at 905-06.   The Fourth Circuit ultimately affirmed the district court's joinder of the

defendants under rule 8, holding that it was "proper under Rule 8 to jointly try the defendants

because the obstruction charges arose out of their efforts to conceal their vote buying conduct."

<u>United States v. Carmichael</u>, 685 F.2d at 910.   Comparably, other Courts of Appeals, including

the United States Courts of Appeals for the Seventh Circuit, hold that, under rule 8, perjury may

be considered part of the same series of acts or transactions as the underlying conduct which was

misrepresented.   See <u>United States v. Curry</u>, 977 F.2d 1042, 1050 (7th Cir. 1992)(holding that

defendants charged with conspiracy to grow marijuana could be tried with defendant who

attempted to cover up scheme by false testimony before grand jury nearly four years after

conspiracy ended)(citing cases)).

> Counts may be joined under Rule 8(b) even if they could not have been charged as
> one conspiracy.  [<u>United States v.</u>] *Sophie*, 900 F.2d [1064,] 1084 [(7th Cir. 1990)
> <u>certiorari denied</u>, 498 U.S. 843].   Indeed, several courts have specifically held that
> perjury counts may be considered part of the same series of acts or transactions as
> the underlying conduct which was misrepresented. [<u>United States v.</u>]
> *Isaacs*, 493 F.2d [1124,] 1159 [(7th Cir. 1974), *certiorari denied*, 498 U.S. 843];
> *United States v.  Swift*, 809 F.2d 320,   322   (6th   Cir.   1987); *United States v.*

*Moeckly*, 769 F.2d 453,   465   (8th   Cir.   1985),   *certiorari   denied*, 475 U.S. 1015; *United States v. Dekle*, 768 F.2d 1257, 1261-1262 (11th Cir.1985). The number of years between the end of the alleged conspiracy and the subsequent alleged perjury is in our view irrelevant.

. . . .

[S]evere prejudice is required for an order of severance and the trial judge's refusal to sever is rarely reversed." [United States v.] *Velasquez,* 772 F.2d [1348], 1352 [(7th Cir. 1985), cert. denied, 475 U.S. 1021].

United States v. Curry, 977 F.2d at 1050.

Moreover, a court's discretion to grant joinder under a conspiracy allegation requires its consideration of two requirements: (i) whether "the charges must have been joined in good faith"; and (ii) whether the joinder must have a firm basis in fact, considering the face of the indictment and the evidence adduced at trial."  United States v. Rivera-Hernandez, 439 F. Supp. 3d at 30 (quoting Rehal 940 F.2d at 3).

> "Normally, the government may join multiple defendants in a single indictment provided that at least one count alleges a conspiracy or a continuing criminal enterprise . . . and the indictment separately alleges that the appellant committed a substantive offense . . . during the course and in furtherance of the "umbrella" conspiracy or [continuing criminal enterprise]."  United States v. DeLuca, 137 F.3d 24, 36 (1st Cir. 1998).
>
> A defendant who committed a substantive offense in furtherance of the conspiracy may be joined to other defendants through a conspiracy charge even if the government alleges neither that the defendant was part of the conspiracy nor that he knew of others' actions in the conspiracy.  See id.

United States v. Rivera-Hernandez, 439 F. Supp. 3d at 30.

The Court of Appeals for the First Circuit has applied the applicable joinder considerations in upholding a district court's granting of joinder based on a conspiracy charge.  See United States v. DeLuca, 137 F.3d at 36.  For example, in United States v. DeLuca, 137 F.3d at 36, the First Circuit upheld the joinder of defendants in a conspiracy charge -- even though the defendant was not named as a co-conspirator -- reasoning that joinder was proper because the defendant's

extortion acts occurred "during and in furtherance of the conspiracy."  United States v. DeLuca,

137 F.3d at 36.  The First Circuit has noted, however, that distinct conspiracies, as opposed to one

conspiracy, "can complicate, and in some circumstances defeat the propriety of joinder."  United

States v. Rivera-Hernandez, 439 F. Supp. 3d at 30 (citing United States v. DeLuca, 137 F.3d at

36).

> "Joinder where there are multiple conspiracies has been particularly
> troublesome.  Such joinder is improper where nothing is shown except for a slight
> membership overlap between the conspiracies; "proof of proximate or
> simultaneous conspiracies with one common conspirator," for example, will not
> suffice.  But even a single common conspirator will suffice where in addition it
> appears that the two conspiracies are a "series of acts or transactions," as where
> they both related to the common conspirator's gambling operations."
>
> LaFave, § 17.2(a), at 21-22 (footnotes omitted)).
>
> The First Circuit Court of Appeals recently addressed the issue of multiple
> conspiracies in United States v. Meléndez-González, 892 F.3d 9 (1st Cir. 2018).
> There, a full-time National Guard recruiter was charged with conspiring with a part-
> time recruiter to defraud the United States' compensation system.  Id. at 12-13.  The
> full-time recruiter was also charged with fraud of the same compensation system in
> two other cases and sought consolidation of the cases.  Id. at 14 n.2.  The district
> court denied the consolidation motion and the full-time recruiter assigned error on
> appeal.  Id.
>
> The Meléndez-González court "summarily reject[ed] [his] claim," finding
> that the district court did not abuse its discretion in denying the motion.  Id.  The
> court noted that "the three cases allege distinct conspiracies involving different
> codefendants and overt acts" and that the full-time recruiter "[did] not allege that
> his co-defendants in any one case acted in concert with his co-defendants in either
> of the other cases."  Id. (internal quotation marks omitted).  The Meléndez-
> González court also noted that joining the cases would pose a  risk that "the jury
> would treat evidence offered against one co-defendant as supporting unrelated
> charges against other co-defendants."  Id.

United States v. Rivera-Hernandez, 439 F. Supp. 3d at 30-31.

The Tenth Circuit emphasizes that when considering whether to grant a joint trial, the

district court "has a duty to weigh the prejudice resulting from a joint trial of codefendants against

the expense and inconvenience of separate trials."  United States v. Hack, 782 F.2d 862, 870 (10th

Cir. 1986)(citing United States v. Petersen, 611 F.2d 1313, 1331 (10th Cir. 1979), cert denied, 447

U.S. 905 (1980).  Although a district court has discretion whether to allow a joint trial, "[n]either

a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a

complaint of the 'spillover effect' from evidence that was overwhelming or more damaging against

the co-defendant than that against the moving party is sufficient to warrant severance."  United

States v. Hack 782 F.2d at 870 (citing United States v Calabrese, 645 F.2d 1379, 1385 (10th Cir.),

cert denied, 451 U.S. 1018 (1981); United States v. Pack, 773 F.3d 261, 267 (10th Cir. 1985);

United States v. Jackson, 549 F.2d 517, 525 (8th Cir. 1977), cert. denied, 430 U.S. 985 (1977)).

See United States v. Cox, 934 F.2d 1114, 1119 (10th Cir. 1991); Robinson v. United States, 366

F.2d 575, 579 (10th Cir. 1966)(denying severance of trials where evidence established that

defendants had committed a common scheme, and that evidence would have been admissible in

each of the separate trials).  Finally, the Tenth Circuit is deferential to a district court's discretion

in granting severance, noting that

> Since the decision to grant a severance is vested in the sound discretion of the
> district court, its decision will not be overturned on appeal unless there is an
> affirmative showing of abuse of discretion.  To establish that a court abused its
> discretion, a defendant must show actual prejudice to him resulting from a denial
> of his request for severance.

United States v. Hack, 782 F.2d 862, 870 (10th Cir. 1986).

## LAW REGARDING RULE 8 JOINDER

Rule 8 of the Federal Rules of Criminal Procedure is the vehicle for joinder of both of

offenses and of defendants in a criminal proceeding.  Rule 8 provides:

> (a)     **Joinder of Offenses**.  The indictment or information may charge a
> defendant in separate counts with 2 or more offenses if the offenses
> charged—whether felonies or misdemeanors or both—are of the same or
> similar character, or are based on the same act or transaction, or are
> connected with or constitute parts of a common scheme or plan.

(b)     **Joinder of Defendants**.  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8.  Rule 8(b) governs the propriety of joinder of multiple defendants and their alleged offenses into one indictment.  See United States v. Eagleston, 417 F.2d 11, 14 (10th Cir. 1969)("Rule 8(a) . . . does not apply in cases where more than one defendant is joined in the same indictment.  Such joinder [of offenses] is governed by Rule 8(b).").  See also United States v. Mann, 701 F.3d 274, 289 (8th Cir. 2012)("Where an indictment joins defendants as well as offenses, the propriety of the joinder of offenses is governed by Rule 8(b), rather than Rule 8(a)."); United States v. Walker, 657 F.3d 160, 169 (3d Cir. 2011)("Rule 8(a) applies only to prosecutions involving a single defendant, and[,] in a multi-defendant case such as this, the tests for joinder of counts and defendants is merged in Rule 8(b).").  "Joint trials of defendants who are indicted together are preferred because 'they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'"  United States v. Hall, 473 F.3d 1295, 1301-02 (10th Cir. 2007)(quoting Zafiro v. United States, 506 U.S. 534, 537 (1993)).

Under rule 8(b), then, multiple defendants may be tried jointly "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b).  Rule 8(b), along with its phrase "same series of acts or transactions," Fed. R. Crim. P. 8(b), "is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system," United States v. Hopkinson, 631 F.2d 665, 668 (10th Cir. 1980).  In light of rule 8(b)'s broad construction, courts conclude that a conspiracy count -- albeit not necessary -- is sufficient to warrant joinder of all defendants charged in that

conspiracy, regardless whether each defendant is charged in each count or with each substantive act.

> Although the Indictment in this case charged six different robberies alleged to have been committed by different defendants over a more than two-year period, it also alleged that the defendants conspired and agreed with each other to commit all six of the robberies. Given the broad construction we afford Rule 8 and our preference for liberal joinder, this was sufficient to permit joinder.

United States v. Hill, 786 F.3d 1254, 1272 (10th Cir. 2015).

## LAW REGARDING RULE 14(a) SEVERANCE

Pursuant to rule 14(a) of the Federal Rules of Criminal Procedure, a court may "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" if joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). Rule 14(a) envisions situations where a joint trial would be inappropriate and harmful to the accused's constitutional rights even though joinder is proper under rule 8, which is liberally and broadly applied in the interest of efficiency. See Zafiro v. United States, 506 U.S. at 538 (using rule 14 as the standard for a severance); United States v. Cox, 934 F.2d 1114, 1119 (10th Cir. 1991)(applying rule 14 to set the standard for severance). The decision to sever is "within the sound discretion of the trial court." United States v. Cox, 934 F.2d at 1119 (citing United States v. Valentine, 706 F.2d 282, 289-90 (10th Cir. 1983)). See United States v. Gant, 487 F.2d 30, 34 (10th Cir. 1973)(noting severance "is peculiarly within the discretion of the trial court")(citations omitted).

"Inasmuch as severance is a matter of discretion and not of right, the defendant must bear a heavy burden of showing real prejudice to his case." United States v. Hall, 473 F.3d at 1302 (quoting United States v. McConnell, 749 F.2d 1441, 1444 (10th Cir. 1984)). "Joint trials of defendants who are indicted together are preferred, because 'they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" United States

v. Hall, 473 F.3d at 1301–02 (quoting Zafiro v. United States, 506 U.S. at 537).  Additionally, "a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by a joint trial."  Cummings v. Evans, 161 F.3d at 619 (citing United States v. Youngpeter, 986 F.2d 349, 353 (10th Cir. 1993)).  The prejudice standard envisioned by rule 14 thus requires a showing of actual prejudice, and not merely a showing that a defendant "may have a better chance of acquittal in separate trials."  United States v. Pursley, 474 F.3d 757, 766 (10th Cir. 2007). To establish prejudice, a defendant must identify a "'specific trial right' that was compromised or show the jury was 'prevented . . . from making a reliable judgment about guilt or innocence.'"  United States v. Pursley, 474 F.3d at 766 (quoting Zafiro v. United States, 506 U.S. at 539).  Significantly, "[r]ule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."  Zafiro v. United States, 506 U.S. at 538-39.

In interpreting rule 14, United States Courts of Appeals have explored the risk of "mutually antagonistic" or "irreconcilable" defenses may supply the prejudice needed in some circumstances as to warrant severance.  Zafiro v. United States, 506 U.S. at 538 (citing, e.g., United States v. Benton, 852 F.2d 1456, 1469 (6th Cir. 1988); United States v. Smith, 788 F.2d 663, 668 (10th Cir. 1986); United States v. Magdaniel-Mora, 746 F.2d 715, 718 (11th Cir. 1984); United States v. Berkowitz, 662 F.2d 1127, 1133-34 (5th Cir. 1981); United States v. Haldeman, 559 F.2d 31, 71–72 (D.C. Cir. 1976)).  The Tenth Circuit, in United States v. Pursley, provided that, in such a scenario, where a defendant seeks severance because of mutually antagonistic defenses as compared to co-defendants,

> a trial court engages in a three step inquiry.  First, it must determine whether the defenses presented are "so antagonistic that they are mutually exclusive." United States v. Peveto, 881 F.2d 844, 857 (10th Cir. 1989).  Second, because "[m]utually antagonistic defenses are not prejudicial per se," a defendant must further show "a

> serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. [at] 539, 113 S.Ct. 933[ ]. Third, if the first two factors are met, the trial court exercises its discretion and "weigh[s] the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." Peveto, 881 F.2d at 857.

United States v. Pursley, 474 F.3d at 765 (alternations in original).  In a court's consideration of such a scenario, "defenses are mutually antagonistic if 'the conflict between codefendants' defenses [is] such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.'" United States v. Pursley, 474 F.3d at 765 (quoting United States v. Linn, 31 F.3d 987, 992 (10th Cir. 1994)).  The Defendants must show that "'the acceptance of one party's defense would tend to preclude the acquittal of the other, or that the guilt of one defendant tends to establish the innocence of the other.'"  United States v. Pursley, 474 F.3d at 765-66 (quoting United States v. Peveto, 881 F.2d at 857 (holding mutually exclusive defenses where one defendant said he was preparing to be an informant and invited the other defendant, a purported drug dealer, to his house to gather information, while the other defendant said he was innocently at the house and the first defendant held the second defendant against his will)).

Ultimately, a trial court that denies a request for severance will be reversed only where a defendant demonstrates an abuse of discretion.  See United States v. Pursley, 474 F.3d at 765.  In exercising its discretion, however, a court should "weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of separate trials."  United States v. Bailey, 952 F.2d 363, 365 (10th Cir. 1991)(quoting United States v. Cardall, 885 F.2d 656, 667-68 (10th Cir. 1989)).  "Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' from the evidence that was overwhelming or more damaging against the co-defendant than that against the moving party is

sufficient to warrant severance." United States v. Bailey, 952 F.2d at 365 (citation omitted). A

defendant seeking severance bears the "heavy burden" of demonstrating a risk of prejudice from

continued joinder. United States v. Bailey, 952 F.2d at 365 n.4 (citing United States v. Jones, 707

F.2d 1169, 1171 (10th Cir. 1983); United States v. Petersen, 611 F.2d 1313, 1331 (10th Cir. 1979)).

The Supreme Court has stated:

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. *The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here.* When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh*, [481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) ] less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.

Zafiro v. United States, 506 U.S. at 539 (emphasis added)(citations omitted).

With respect to a district court's application of rule 14 in practice, particularly in the context

of multi-count and multi-defendant RICO, VICAR, or conspiracy indictments, one district court

has explained:

> Most often, severance of defendants will be required to protect the rights of defendants against undue prejudice resulting from joinder. In other situations, severance may be required, or at least the argument for severance will be bolstered, by the physical limitations of the courthouse and the logistical difficulties of attempting to conduct a complex multi-defendant trial.

United States v. Gray, 173 F. Supp. 2d 1, 7-8 (D.D.C. 2001)(Lamberth, J.). Another district court

addressed the possibility of prejudicial joinder of the defendants

> deriving from the number of defendants and the number of counts, the complexity of the indictment, estimated length of the trial, disparities in the amount or type of proof offered against the defendants, disparities in the degrees of involvement by defendants in the overall scheme, possible conflict between various defense theories or trial strategies; and, especially, prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant.

United States v. Gallo, 668 F. Supp. 736, 749 (E.D.N.Y. 1987). The United States v. Gray court

explained that, in United States v. Gallo:

> After weighing the potential prejudice against defendants, the court decided that the dispositive factor counseling severance was judicial efficiency. [United States v. Gallo, 668 F. Supp.] at 753 ("[T]he prejudices to the defendants are not clearly dispositive ..., we might be reluctant to grant such severances on Rule 14 alone . . . . [W]e question the traditional assumption that denial of severance . . . promotes efficiency.").

United States v. Gray, 173 F. Supp. 2d at 8-9 (alterations in original). Indeed, the United States v.

Gray court stated that "[m]any of the factors that counseled against complete joinder of defendants

[in United States v. Gallo] are also persuasive in the instant case," and so it concluded

> that despite the general presumption favoring joinder, some form of severance is necessary because of the physical limitations of the courtroom and hardship on the jurors, the defendants, and the Court. Severance, however, should be of the most limited form necessary to satisfy those interests, because the Court finds that joinder of defendants, to the extent possible, will preserve judicial resources and permit the jury to have as complete a view of the evidence as possible.

United States v. Gray, 173 F. Supp. 2d at 10. Accordingly, the United States v. Gray court severed

a "158-count [Indictment]" charging "seventeen defendants" into two trial groupings based on

logistical concerns alone. United States v. Gray, 173 F. Supp. 2d at 1, 10. The United States v.

Gray court also considered that

> [s]everal defendants have moved for complete severance or other joint trial configurations based on Rule 14 concerns of prejudice against defendants. In order to prevail upon a claim for severance, [those] defendant[s] must show that joinder would violate that defendant's constitutional fair trial rights, or would "prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. [at] 539.

United States v. Gray, 173 F. Supp. 2d at 10.  Although the United States v. Gray court had already severed the indictment in that case into two trial groupings to alleviate the risk of prejudice to the defendants by logistical inefficiency and impracticality, the court was still open to further requests for severance of individual defendants upon a specific showing that joinder in either of the trial groupings still ran afoul of Zafiro v. United States, 506 U.S. at 539, and rule 14.  See United States v. Gray, 173 F. Supp. 2d at 10.  The rule 14 inquiry regarding the propriety of joinder is ongoing, and as the United States v. Gray court concluded in severing that case's indictment into two trial groupings, its' chosen "arrangement of the defendants appears to be, at least on the information now available, the most efficacious in preserving judicial resources, preventing duplicitous testimony and evidence, and reaching an expeditious resolution for all defendants."  United States v. Gray, 173 F. Supp. 2d at 18.

## LAW REGARDING VICAR AND RICO

RICO prohibits specific activities when they are committed in connection with a pattern of racketeering activity.  See, e.g., 18 U.S.C. § 1962(b)("It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.").  RICO defines a "pattern of racketeering activity" such that it "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).  Racketeering activity includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in

a controlled substance" that is a state law felony, 18 U.S.C. § 1961(1)(A), and "any act which is indictable under any" one of myriad federal statutes, § 1961(1)(B)-(G).

A VICAR violation requires an underlying state law offense, i.e., someone "murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do."  18 U.S.C. § 1959(a). The underlying state law offense becomes a federal VICAR violation only when it is committed: (i) "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity"; or (ii) "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." 18 U.S.C. § 1959(a). VICAR employs RICO's definition of racketeering activity.  See 18 U.S.C. § 1961(1) (defining racketeering activity for RICO purposes); 18 U.S.C. § 1959(b)(1)(stating that, under VICAR, racketeering activity "has the meaning set forth in section 1961 of this title").

RICO states that an enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(1).  VICAR employs a slightly narrower definition of the term "enterprise" such that it "includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1959(b)(2).   "An association-in-fact requires: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit those associated with the enterprise to pursue the enterprise's purpose."  United States v. Kamahele, 748 F.3d 984, 1003

(10th Cir. 2014)(Bacharach, J.). See Boyle v. United States, 556 U.S. 938, 948 (2009)(Alito, J.)("[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose."); id. ("While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence.").

## LAW REGARDING RULE 403

Rule 403 of the Federal Rules of Evidence states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice. See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989). "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)). The Tenth Circuit has admonished district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980). The Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)). See United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999).  Evidence is not unfairly prejudicial merely because it damages a party's case.  See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note).

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief v. United States, 519 U.S. 172, 180 (1997)(Souter, J.).  "Such improper grounds certainly include . . . generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged."  Old Chief v. United States, 519 U.S. at 180-81.  In light of rule 404(b)'s prohibition

regarding the use of character evidence to show that a person acted in conformity with their character, "[t]here is, accordingly, no question that propensity would be an 'improper basis' for conviction and that evidence . . . is subject to analysis under Rule 403 for relative probative value and for prejudicial misuse as propensity evidence." Old Chief v. United States, 519 U.S. at 182.

## LAW REGARDING RULE 404(b)

Rule 404(b) of the Federal Rules of Evidence states: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The court can admit that sort of evidence, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too." Wilson v. Jara, No. CIV 10-0797, 2011 WL 6739166, at *5 (D.N.M. Nov. 1, 2011)(Browning, J.).

The Supreme Court has enunciated a four-part process to determine whether evidence is admissible under rule 404(b). See Huddleston v. United States, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999) ). See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir.

2002); <u>United States v. Hardwell</u>, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing <u>Huddleston v. United States</u>, 485 U.S. at 691-92).

When bad-act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." <u>United States v. Morley</u>, 199 F.3d 129, 133 (3d Cir. 1999)(alterations omitted).  The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom."  <u>United States v. Youts</u>, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing <u>United States v. Kendall</u>, 766 F.2d 1426, 1436 (10th Cir. 1985)).  "[A] broad statement merely invoking or restating Rule 404(b) will not suffice." <u>United States v. Youts</u>, 229 F.3d at 1317.  Rules 401-403 and the conditional relevancy rules in rule 104(b) govern the applicable burden the government must meet to successfully offer evidence under rule 404(b).  <u>See</u> <u>Huddleston v. United States</u>, 485 U.S. at 686-91.

## ANALYSIS

The United States moves for a consolidated trial, because the Defendants "are alleged members of the Syndicato Nuevo Mexico Gang . . . and have been charged with racketeering offenses," Motion at 1; and COVID-19 makes it "impossible to currently hold a jury trial without endangering the health and lives of venire panel members, jurors, court staff, parties, and counsel," Motion at 6.  The Court may try the Defendants together if "all offenses and all defendants could have been joined in a single indictment or information."  Fed. R. Crim. P. 13.  An indictment may join two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b).  <u>See</u> <u>King v. United States</u>, 355 F.2d 700, 703 (1st Cir. 1966)("It is true that

under [rule 13] there may be joint trials of defendants separately indicted.  The test is whether they might have been jointly indicted under Rule 8(b).").  In addition, a district court "has a duty to weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of separate trials."  United States v. Hack, 782 F.2d at 870.  The Court concludes that it should not consolidate the DeLeon, Martinez, and Gauna trials, because: (i) the fact that DeLeon, Martinez, and Gauna could have been indicted together is not dispositive, because rule 13 is permissive; (ii) shorter, separate trials reduce the risk of COVID-19 transmission; and (iii) possible prejudice to DeLeon's, Martinez', and Gauna's fair-trial rights outweighs any consolidated trial's efficiency.

I.    **THAT DELEON, MARTINEZ, AND GAUNA COULD HAVE BEEN INDICTED TOGETHER IS NOT DISPOSITIVE, BECAUSE RULE 13 IS PERMISSIVE.**

First, that DeLeon, Martinez, and Gauna could have been indicted together does not resolve whether the Court should consolidate the trials, because rule 13 is permissive.  See Fed. R. Crim. P. 13.  See United States v. Behrens, 689 F.2d 154, 159 (10th Cir. 1982).  A Court may order joint trials of separate cases if the defendants are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b).  See Fed. R. Crim. P. 13; United States v. Gooch, 665 F.3d 1318, 1325 (D.C. Cir. 2012)(noting that rule 8(b), and not rule 8(a), "applies where both multiple offenses and multiple defendants are involved"); United States v. Walker, 657 F.3d 160, 169 (3d Cir. 2011)(stating that rule 8(a) "'applies only to prosecutions involving a single defendant and that in a multi-defendant case such as this, the test for joinder of counts and defendants is merged in Rule 8(b)'")(quoting United States v. Eufrasio, 935 F.2d 553, 567 (3d Cir. 1991)).  An allegation that multiple defendants participated in the same conspiracy is sufficient to satisfy rule 8(b).  See United States v. Morrow, 39 F.3d 1228, 1237 (1st Cir. 1994).  In the racketeering context, courts

equate the "pattern of racketeering with a 'transaction or series of acts.'"  United States v. Davis, 707 F.2d 880, 883 (6th Cir. 1983)(no citation for quotation).  Joinder is proper under rule 8(b) when "[e]very count in the indictment[s] allegedly arose out of defendants' conduct on behalf of or in coordination with" the alleged racketeering enterprise.  United States v. Ledbetter, 929 F.3d 338, 346 (6th Cir. 2019), cert. denied, 140 S. Ct. 509.  When indictments allege counts that are in furtherance of a conspiracy and in furtherance of a racketeering conspiracy, joinder is permitted under rule 8(b).  See United States v. Carson, 455 F.3d 336, 373 (D.C. Cir. 2006)(per curiam).

DeLeon, Martinez, and Gauna could have been indicted together.  "The standard for joinder under Rule 8(b) . . . requires that the acts in which the defendants participated be 'unified by some substantial identity of facts or participants' or 'arise out of a common plan or scheme.'"  United States v. Locascio, 357 F. Supp. 2d 536, 541 (E.D.N.Y. 2004)(Amon, J.)(quoting United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989)).  Here, DeLeon, Martinez, and Gauna are all charged with participating in the same pattern of racketeering activity -- specifically, their membership and participation in SNM.  See DeLeon Indictment at 9 (charging DeLeon with one count of VICAR murder for the murder of F.C.); United States v. Martinez, No. CR 19-3725, Second Superseding Indictment at 7-14, filed January 9, 2020 (Doc. 57)("Martinez Indictment")(charging Martinez with one count of VICAR murder for the murder of D.R., one count of RICO conspiracy under 18 U.S.C. § 1962(d), one count of witness tampering, and one count of being a felon-in-possession); United States v. Gauna, No. CR 20-1629, Redacted Indictment at 9-17, filed August 25, 2020 (Doc. 25)("Gauna Indictment")(charging Gauna with one count of RICO conspiracy under 18 U.S.C. § 1962(d), one count of being a felon-in-possession, one count of Hobbs Act robbery for the alleged robbery of a Family Dollar, one count of brandishing a weapon in the commission of a crime of violence for the alleged robbery of the Family Dollar, one count of Hobbs Act robbery

for the alleged robbery of a Subway, and one count of brandishing a weapon in the commission of a crime of violence for the alleged robbery of the Subway).

The rule 8 standard is a fact-based inquiry.  See United States v. Bailey, 952 F.2d 363, 364-65 (10th Cir. 1991).  SNM has been operating continuously in New Mexico prisons since the 1980s and, at one time had as many as 500 members.  See DeLeon Indictment at 3.  Members who rejoin their communities after completing their sentences are expected to further the gang's goals: primarily the control and profit of narcotics trafficking.  See DeLeon Indictment at 3-4.  Members who fail "to show continued loyalty to the gang [are] disciplined in various ways, . . . [] includ[ing] murder and assaults."  DeLeon Indictment at 4.  SNM, therefore, cultivates violence, lifelong service, and loyalty.  See DeLeon Indictment at 2-5.  SNM's size and scope suggest that SNM is "unified by some substantial identity of facts or participants," and gives rise to criminal acts that "arise out of a common scheme or plan."  United States v. Attanasio, 870 F.2d at 815.

DeLeon, Martinez, and Gauna could have been indicted together, because they allegedly participated in "an ongoing series of *interconnected* illegal transactions amounting to the operation of a criminal enterprise."  United States v. Cardall, 885 F.2d 656, 668 (10th Cir. 1989).  That individual acts occurred separately is not sufficient to disqualify otherwise eligible defendants from being indicted together, because "the fact that some defendants were not involved in each aspect of the overall enterprise [does] not require severing them or the charges against them." United States v. Cardall, 885 F.2d at 668.  Because the charged offenses are alleged to be violent crimes in aid of racketeering activity, the joined offenses are "connected with or constitute parts of a common scheme or plan" under rule 8(a).  Fed. R. Crim. P. 8(a). Similarly, rule 8(b) authorizes joinder of the individual Defendants in this case, because the Defendants "are alleged to have participated in the same act or transactions constituting an offense or offenses," namely violent

crimes in aid of a racketeering enterprise.  Fed. R. Crim. P. 8(b).  United States v. DeLeon, No. CR 15-4268 JB, 2017 WL 3054511, at *97 (D.N.M. June 30, 2017).

Nevertheless, even though DeLeon, Martinez, and Gauna could have been indicted together, their cases are sufficiently different that it would not make sense to consolidate their trials.  Between the three Defendants, the only overlap in substantive offense is the RICO conspiracy charges that Martinez and Gauna face under 18 U.S.C. § 1962(d), but the only overlap in their alleged overt acts is that "in 1980, a group of inmates at the Penitentiary of New Mexico formed the SNM Gang."  Martinez Indictment at 10; Gauna Indictment at 10.  Further, as DeLeon argues, he "had already been deported to Mexico before any of the counts with which the other defendants have been had even occurred."  DeLeon Response at 3.  In addition, as Gauna contends "DeLeon's only Count does not involve Tony Gauna," because DeLeon is "charged with a Murder that occurred on March 26, 2001 at the Southern New Mexico Correctional Facility in Las Cruces, NM," but Gauna "was not in" prison at that time and did not even receive his first prison sentence until October, 2003.  Gauna Response at 1-2.  Martinez' first count is for a murder that allegedly occurred outside of a prison on December 5, 2008, but Gauna "was in prison in December 2008."  Gauna Response at 2.  Moreover, the United States does not assert that Gauna had anything to do with this alleged murder.  See Motion at 1-9.  Martinez' second count, for RICO conspiracy, is shared with Gauna but not with DeLeon and is the only count that overlaps between the three Defendants.  See Gauna Response at 2; Martinez Response at 4.  As Martinez argues, however, the United States, in its Motion, does not allege that Martinez and Gauna "actually conspired with one another, but only that they each conspired (with *someone*)."  Martinez Response at 4 (emphasis in original).  Only "two of the five elements" overlap with Gauna -- (i) that there was an enterprise; and (ii) that the enterprise affected interstate or foreign commerce.  Gauna Response at 2.  See 18

U.S.C. § 1962(c).  Martinez' third count, for witness tampering, is related to an incident that allegedly occurred at the Santa Fe County Detention Center on December 12, 2019, but Gauna "was not in Santa Fe County Detention Center at that time" and the United States does not argue that Gauna was involved.  Gauna Response at 2.  See Motion at 1-9.  Martinez' fourth count, felon-in-possession, is for an incident that allegedly occurred in October, 2018, in Santa Fe County, New Mexico, but Gauna "was in prison in October 2018," and the United States does not argue that Gauna was involved.  Gauna Response at 2.  See Motion at 1-9.  Therefore, because DeLeon's, Martinez', and Gauna's cases are so distinct, there is not a sound reason to consolidate their trials even if the United States could have indicted them together.

Finally, the parties' evidentiary arguments miss the mark.  The United States contends, for example, that the Court should consolidate DeLeon's, Martinez', and Gauna's trials, because "RICO conspiracy and VICAR offenses both involve proving that SNM is a criminal enterprise engaged in racketeering activity [and] the evidence for those crimes are identical or greatly overlap."  Motion at 2.  DeLeon responds that this argument fails, because he intends to stipulate to the "existence of an enterprise as alleged in the [DeLeon] Indictment and defined in 18 U.S.C. § 1959(b)(2)," and likely also that the enterprise affects interstate commerce and that the enterprise engaged in "racketeering activity" as 18 U.S.C. §§ 1959(b)(1) and 1961(1) defines the term. DeLeon Response at 16.  According to DeLeon, his "proposed stipulation would eliminate any joint evidence between the cases and therefore the government's argument for consolidation." DeLeon Response at 16.  First, DeLeon's proposed stipulations do not affect the joinder calculus, because the United States does not have to agree to the proposed stipulations and, subject to the Federal Rules of Evidence's limitations, can present its case as it sees fit.  See Old Chief v. United States, 519 U.S. 172, 191 (1997).  Second, and more significantly, the parties' evidentiary

arguments do not bear on rule 8(b) joinder, however, because courts evaluate joinder "from the face of the indictment rather than from the evidence introduced at trial." United States v. Martínez, 994 F.3dd 1, 12 (1st Cir. 2021). See United States v. Behrens, 689 F.2d at 159 ("Criminal defendants engaging in the 'same acts or transactions constituting an offense' can be charged in a single indictment and tried jointly.")(quoting Fed. R. Crim. P.8(b)); United States v. Sutherland, 656 F.2d 1181 at 1190, n.6 (explaining that the Supreme Court in Schaffer v. United States, 362 U.S. 511, held that "the propriety of joinder under Rule 8(b) is to be judged according to the language of the indictment, not according to the government's proof at trial").

Nevertheless, although DeLeon, Martinez, and Gauna could have been indicted together, they need not be tried together. See Fed. R. Crim. P. 13. See United States v. Behrens, 689 F.2d at 159. Rule 13 does not require the Court to try Defendants together even if they could be indicted together under rule 8(b). See Fed. R. Crim. P. 13. Rule 13 gives the Court discretion to consolidate trials. See Fed. R. Crim. P. 13. The Court concludes, therefore, that, for consolidation purposes, it is not dispositive that DeLeon, Martinez, and Gauna could have been indicted together.

## II.   SHORTER, SEPARATE TRIALS REDUCES THE RISK OF COVID-19 TRANSMISSION.

Second, the United States argues that the DeLeon, Martinez, and Gauna trials should be consolidated, because a larger, longer trial would reduce the risk of exposing "venire panel members, jurors, court staff, parties, and counsel" to COVID-19. See Motion at 6. The Court concludes, however, that COVID-19's dangers weigh against consolidation, because smaller, shorter trials would reduce the contact between attorneys, Defendants, witnesses, jurors, and court staff. Because rule 13 of the Federal Rules of Criminal Procedure is permissive, the Court concludes that COVID-19's dangers, standing alone, are sufficient not to consolidate the DeLeon, Martinez, and Gauna trials. See Fed. R. Crim. P. 13.

Rule 13 of the Federal Rules of Criminal Procedures states that a Court "may order that separate cases be tried together" if "all offenses and all defendants could have been joined in a single indictment or information." Fed. R. Crim. P. 13. Even if a group of defendants could have been indicted together, a court is not required to try all the defendants together. See Fed. R. Crim. P. 13. Rule 13 "is permissive rather than mandatory, and even when trying the cases together is permitted, it is still within the court's discretion not try the cases separately." 1A Wright & Miller § 217 (4th ed., April 2021 Update). "[A]ll offenses which could be tried together [under rule 13] need not be." United States v. Burkley, 591 F.2d 903, 919 (D.C. Cir. 1978). See United States v. Sulik, 804 F. App'x 489, 491 (6th Cir. 2020).

In its Motion, the United States quotes from Judge Riggs' Order Continuing Jury Trial because of COVID-19 dangers. See Motion at 2-6 (quoting Order Continuing Jury Trial). According to the United States, because COVID-19 makes it "impossible to currently hold a jury trial without endangering the health and lives of" jurors, court staff, parties, and attorneys, holding a single, more complex trial is preferable. Motion at 6. The United States alleges that "the need to protect the health of the public during a deadly pandemic outweighs the best interest of the Defendant and the public to a speedy trial." Motion at 7. DeLeon contends that trying DeLeon, Martinez, and Gauna together would "contradict every principle, law, and public policy" about COVID-19. DeLeon Response at 11. Martinez alleges that the normal efficiencies gained by joint trials are "substantially lessened" with the threat of COVID-19, because it is "safer, less cumbersome, and more efficient to comply with social-distancing and other protective protocols in a shorter, single-defendant case with fewer witnesses and lawyers" than it would be in a larger, longer, and more complex trial. Martinez Response at 1. Similarly, Gauna argues that trying DeLeon, Martinez, and Gauna together "means that more people will be in the Courtroom." Gauna

Response at 3.  Gauna states that he is "unaware of any scholarly medical authority [indicating] that adding more people to a room for a longer period of time would reduce the risk" of COVID-19 spread.  Gauna Response at 3.

Conducting shorter, separate trials reduces the COVID-19 risks.  The United States relies on Judge Riggs' Order Continuing Trial to contend that the Court should try DeLeon, Martinez, and Gauna together.  See Motion at 2-6.  In the Order Continuing Trial, Judge Riggs notes that Governor Lujan Grisham "has ordered that group gatherings be limited the five individuals."  Order Continuing Trial at 1.  Judge Riggs' reasoning -- and, by extension -- Governor Lujan Grisham's reasoning -- is consistent with the CDC's explanation that COVID-19 spreads "when an infected person breathes out droplets and very small particles that contain the virus."  How COVID-19 Spreads (updated July 14, 2021), COVID-19, Center for Disease Control and Prevention,          https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited October 27, 2021).   In an enclosed space, a larger group is more dangerous than a smaller group, because there is a higher probability that the group contains someone with COVID-19, and because there is a greater risk of spread when people are closer together.  See Guidance for Organizing Large Events and Gatherings (updated May 20, 2021), COVID-19, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/considerations-for-events-gatherings.html#Gatherings (last visited October 27, 2021).

As Judge Riggs notes, "trials inherently involve[] crowded courtrooms."  Order Continuing Trial at 3.  Grouping DeLeon, Martinez, and Gauna together means that more witnesses and attorneys will be present all at the same time.  Moreover, a consolidated trial also will lengthen the time that this group spends together, because each party will need time to put on its own evidence.

Contrary to the United States' assertion, therefore, Judge Riggs' reasoning disfavors trying DeLeon, Martinez, and Gauna together.  The Court agrees with some of Judge Riggs' reasoning. Given the difficulties with conducting trials during the COVID-19 pandemic, there is no sound reason to exacerbate the administrative burdens needed to try to keep parties, witnesses, attorneys, court staff, and the public safe.[3]  A larger, longer trial would both require more safety precautions and necessarily heightens the risk of COVID-19's spread.  The Court concludes, therefore, that COVID-19 concerns counsel strongly against trying DeLeon, Martinez, and Gauna together. Because rule 13 gives the Court discretion to decline to try together defendants who otherwise could be, the Court will not try DeLeon, Martinez, and Gauna together.  See Fed. R. Crim. P. 13.

## III.   POSSIBLE PREJUDICE TO THE DEFENDANTS' FAIR-TRIAL RIGHTS OUTWEIGHS ANY EFFICIENCY PRODUCED BY A CONSOLIDATED TRIAL.

Third, although a consolidated trial might be more efficient, the possible prejudicial effect that a consolidated trial might have on the Defendants outweighs any increased efficiency benefits. Even when proper, joinder or the consolidation of trials "may prejudice either a defendant or the Government."  Zafiro v. United States, 506 U.S. at 538.  A district court should not consolidate cases under rule 8(b) if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro v. United States, 506 U.S. at 539.  "Rule 13 is permissive rather than

---

[3]The Court does not agree with all of Judge Riggs' statements an analysis, and ultimately her holding that no trials can be held during the pandemic.  While the Court agrees that the pandemic makes it more difficult, less convenient, and less fun to try cases now, they can be done, and the Court has had success holding trials.  The District has wonderful clerk's employees who just help the Court get it done.  And while the Governor's Executive Orders cannot control what goes on in a federal courthouse or federal enclave, see Paul v. United States, 371 U.S. 245, 264-65 (1963); Celli v. Shoell, 40 F.3d 324, 328 (10th Cir. 1994), the Court wants to be a good and respectful citizen.  Unless there is a compelling reason to bring more people into a courtroom or courthouse right now, the Court should look for ways to reduce federal traffic, and not unnecessarily increase it.

mandatory," because a court "should weigh the efficiency and convenience of a single trial against the risks of prejudice to the defendants from a single proceeding." 1A Wright & Miller, supra. § 217. A showing of prejudice does not mandate separate trials; rather, it "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro v. United States, 506 U.S. at 539.

"The risk of prejudice will vary with the facts in each case." Zafiro v. United States, 506 U.S. at 539. "Prejudice occurs when there is a serious risk that a joint trial will compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Stiger, 413 F.3d 1185, 1197 (10th Cir. 2005). Prejudice can occur when "prejudicial evidence that would be admissible against a defendant, if tried alone, is admitted against a codefendant in a joint trial." United States v. Wardell, 591 F.3d 1279, 1300 (10th Cir. 2009)(citing Zafiro v. United States, 506 U.S. at 539). The risk of prejudice is "'heightened' when 'many defendants are tried together in a complex case and they have markedly different degrees of culpability." United States v. Wardell, 591 F.3d at 1300 (citing United States v. Dazey, 403 F.3d 1147, 1165 (10th Cir. 2009)). A district court should, however, consider whether "less drastic measures, such as limiting instructions" will cure "any risk of prejudice." Zafiro v. United States, 506 U.S. at 539.

Consolidating the Defendants' trials could create a risk that "the jury would lump all defendants together and potentially think of them as a unit, rather than as individuals." United States v. DeLeon, 2017 WL 3054511, at *100. Having separate trials would allow the juries to better "compartmentalize the evidence." United States v. DeLeon, 2017 WL 3054511, at *100. Because the Defendants are charged with almost entirely distinct offenses, some of the evidence presented against each Defendant is likely to be irrelevant to the other Defendants. See Fed. R.

Evid. 401.  For example, Gauna is charged with being a felon-in-possession, in violation of 18

U.S.C. §§ 922(g)(1) and 924, because he allegedly knowingly possessed a firearm between April

13, 2020, and April 30, 2020.  See Gauna Indictment at 15-16.  At least some, if not all, of the

evidence the United States presents to prove this crime likely will be irrelevant to determining

DeLeon and Martinez' guilt.  See Fed. R. Evid. 401.  Martinez is charged with witness tampering,

in violation of 18 U.S.C. § 1512, because he allegedly attempted to prevent J.L. from testifying

against him.  See Martinez Indictment at 13.  Neither DeLeon nor Gauna is charged with witness

tampering, in violation of 18 U.S.C. § 1512.  See DeLeon Indictment at 1-18; Gauna Indictment

at 1-17.  As a result, at least some of the evidence that the United States offers to prove that

Martinez violated 18 U.S.C. § 1512 may be largely irrelevant to determining DeLeon and Gauna's

guilt.  See Fed. R. Evid. 401.

The only evidence that the United States is likely to offer that will be highly relevant to

more than one Defendant is evidence that "SNM is a criminal enterprise engaged in racketeering

activity" to prove the RICO and VICAR counts.  Motion at 2.  There is a risk, therefore, that a jury

will treat any evidence of the Defendants' alleged crimes as character evidence that shows the

Defendants are collectively guilty by virtue of their alleged association with SNM.  See Fed. R.

Evid. 404.  The risk, in other words, is that the evidence the United States will present to "prove

that SNM is a criminal enterprise and that SNM engaged in racketeering activity" will become the

focus of the trial rather than each Defendant's alleged conduct.  Motion at 1.  The trial's purpose

is likely not to focus on whether DeLeon, Martinez, and Gauna are SNM members.  See DeLeon

Indictment at 1-18; Martinez Indictment at 1-14; Gauna Indictment at 1-17.

Although courts reject the risk of a spillover effect of evidence of prior crimes or others'

crimes as a reason to sever trials, a court must consolidate before it can sever.  See Zafiro v. United

States, 506 U.S. at 540-41; United States v. Bailey, 952 F.2d 363, 365 (10th Cir. 1991); United States v. Hack, 782 F.2d 862, 870 (10th Cir. 1986). The question of guilt is, however, "individual and personal." Kotteakos v. United States, 328 U.S. 750, 772 (1946). The Constitution's "promise of a jury trial surely meant *something* -- otherwise, there would have been no reason to write it down." Ramos v. Louisiana, 140 S. Ct. 1390, 1395 (2020)(emphasis in original). See U.S. Const. amend. VI. The United States still must prove the seven distinct charges against the three Defendants beyond a reasonable doubt. See Miles v. United States, 103 U.S. 304, 309 (1880). Although the Defendants allegedly share SNM membership, the seven distinct offenses are largely factually dissimilar. While the Court is confident that a jury could "reasonably be expected to separate the indictment or the defendants and to evaluate the evidence properly and individually against each separate defendant on each separate charge," the Court sees no sound reason to make that inference harder than it has to be. United States v. Harris, 458 F.2d at 673. The Court concludes that the risk that a consolidated trial could prejudice Defendants' fair-trial rights outweighs any possible judicial efficiency benefits, and would create a risk, however small, that a jury might not make a reliable judgment about the Defendants' guilt or innocence. See United States v. Hollis, 971 F.2d 1441, 1456 (10th Cir. 1992)("[T]he court may order the separate trials of counts '[i]f it appears that a defendant . . . is prejudiced by a joinder of offenses.'")(quoting Fed. R. Crim. P. 14)).

IT IS ORDERED that: (i) the Plaintiff's Motion to Consolidate, filed November 17, 2020 (Doc. 3198), in United States v. DeLeon, et al., No. CR 15-4268 JB, is denied; (ii) the Plaintiff's Motion to Consolidate, filed November 17, 2020 (Doc. 105), in United States v. Jody Rufino Martinez, No. CR 19-3725 JB, is denied; and (iii) the Plaintiff's Motion to Consolidate, filed November 17, 2020 (Doc. 34), in United States v. Tony Gauna, No. CR 20-1629 JB, is denied.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
  Acting United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

-- and --

Maria Ysabel Armijo
Randy M. Castellano
Ryan Ellison
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

       *Attorneys for the Plaintiff*

Sarah M. Gorman
Law Offices of Robert D. Gorman
Albuquerque, New Mexico

-- and --

Heather M. LeBlanc
Bailey, LeBlanc & Lane, P.C.
Albuquerque, New Mexico

       *Attorneys for Defendant Angel DeLeon*

Richard Sindel
Sindel, Sindel & Noble, P.C.
Clayton, Missouri

-- and --

Brock Benjamin
Benjamin Law Firm
El Paso, Texas

      *Attorneys for Defendant Joe Lawrence Gallegos*

Patrick J. Burke
Patrick J. Burke, P.C.
Denver, Colorado

-- and --

Cori Ann Harbour-Valdez
The Harbour Law Firm, P.C.
El Paso, Texas

      *Attorneys for Defendant Edward Troup*

Russell Dean Clark
Las Cruces, New Mexico

      *Attorney for Defendant Leonard Lujan*

James A. Castle
Castle & Castle, P.C.
Denver, Colorado

-- and --

Robert R. Cooper
Robert R. Cooper Law Firm
Albuquerque, New Mexico

      *Attorneys for Defendant Billy Garcia*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

      *Attorney for Defendant Eugene Martinez*

Joseph E. Shattuck
Marco & Shattuck Law Firm
Albuquerque, New Mexico

-- and --

Jeffrey C. Lahann
Las Cruces, New Mexico

*Attorneys for Defendant Allen Patterson*

Eduardo Solis
Law offices of Eduardo Solis
El Paso, Texas

-- and --

John L. Granberg
Granberg Law Office
El Paso, Texas

-- and --

Orlando Mondragon
The Law Office of Orlando Mondragon
El Paso, Texas

*Attorneys for Defendant Christopher Chavez*

Nathan D. Chambers
Nathan D. Chambers, Attorney at Law
Denver, Colorado

-- and --

Noel Orquiz
Deming, New Mexico

*Attorneys for Defendant Javier Alonso*

Laura E. Udall
Cooper & Udall Law Offices
Tucson, Arizona

-- and --

Scott Moran Davidson
Law Offices of Scott Moran Davidson
Albuquerque, New Mexico

-- and --

Billy R. Blackburn
Billy Blackburn Law Office
Albuquerque, New Mexico

> *Attorneys for Defendant Arturo Arnulfo Garcia*

Stephen E. Hosford
Stephen E. Hosford, P.C.
Arrey, New Mexico

-- and --

Jerry Daniel Herrera
Albuquerque, New Mexico

> *Attorneys for Defendant Benjamin Clark*

Pedro Pineda
Las Cruces, New Mexico

-- and --

León Encinias
León Felipe Encinias, Attorney at Law
Albuquerque, New Mexico

> *Attorneys for Defendant Ruben Hernandez*

Gary Mitchell
Mitchell Law Office
Ruidoso, New Mexico

> *Attorney for Defendant Jerry Armenta*

Larry A. Hammond
Osborn Maledon, P.A.
Phoenix, Arizona

-- and --

Margaret Strickland
McGraw & Strickland
Las Cruces, New Mexico

> *Attorneys for Defendant Jerry Montoya*

Steven M. Potolsky
Jacksonville Beach, Florida

-- and --

Santiago D. Hernandez
Law Office of Santiago D. Hernandez
El Paso, Texas

     *Attorneys for Defendant Mario Rodriguez*

Ray Velarde
El Paso, Texas

-- and --

Steven Lorenzo Almanza
Las Cruces, New Mexico

     *Attorneys for Defendant Timothy Martinez*

Joe Spencer
El Paso, Texas

-- and --

Mary Stillinger
El Paso, Texas

     *Attorneys for Defendant Mauricio Varela*

Richard Jewkes
El Paso, Texas

-- and --

Lauren Noriega
The Noriega Law Firm
Los Angeles, California

-- and --

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

     *Attorneys for Defendant Daniel Sanchez*

George A. Harrison
Las Cruces, New Mexico

-- and --

Kimberly S. Bruselas-Benavidez
Albuquerque, New Mexico

> *Attorneys for Defendant Gerald Archuleta*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

> *Attorney for Defendant Conrad Villegas*

Theresa M. Duncan
Duncan Earnest LLC
Albuquerque, New Mexico

-- and --

Marc M. Lowry
Rothstein Donatelli LLP
Albuquerque, New Mexico

> *Attorneys for Defendant Anthony Ray Baca*

Charles J. McElhinney
CJM Law Firm
Las Cruces, New Mexico

> *Attorney for Defendant Robert Martinez*

Marcia J. Milner
Marcia J. Milner Attorney at Law
Las Cruces, New Mexico

> *Attorney for Defendant Roy Paul Martinez*

Christopher W. Adams
Adams & Bischoff, L.L.C.
Charleston, South Carolina

-- and --

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendant Christopher Garcia*

William R. Maynard
William R. Maynard Attorney at Law
El Paso, Texas

-- and --

Carey Corlew Bhalla
Law Office of Carey C. Bhalla, LLC
Albuquerque, New Mexico

      *Attorneys for Defendant Carlos Herrera*

Justine Fox-Young
Justine Fox-Young Attorney at Law
Albuquerque, New Mexico

-- and --

Ryan J. Villa
Law Office of Ryan J. Villa
Albuquerque, New Mexico

      *Attorneys for Defendant Rudy Perez*

Donavon A. Roberts
Donavon A. Roberts Attorney at Law
Albuquerque, New Mexico

-- and --

Lisa Torraco
Lisa Torracco Attorney at Law
Albuquerque, New Mexico

      *Attorneys for Defendant Andrew Gallegos*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson
Albuquerque, New Mexico

       *Attorney for Defendant Santos Gonzalez*

Keith R. Romero
Keith R. Romero, Attorney and Counselor at Law
Albuquerque, New Mexico

       *Attorney for Paul Rivera*

Angela Arellanes
Angela Arellanes Attorney at Law
Albuquerque, New Mexico

       *Attorney for Defendant Shauna Gutierrez*

Jerry A. Walz
Alfred D. Creecy
Samuel Winder
Walz and Associates
Albuquerque, New Mexico

       *Attorneys for Defendant Brandy Rodriguez*