IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                                                             No. CR 15-4268 JB

ANGEL DELEON; JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a. "Huero
Troup"; LEONARD LUJAN; BILLY GARCIA,
a.k.a. "Wild Bill"; EUGENE MARTINEZ, a.k.a.
"Little Guero"; ALLEN PATTERSON;
CHRISTOPHER CHAVEZ, a.k.a. "Critter";
JAVIER ALONSO, a.k.a. "Wineo"; ARTURO
ARNULFO GARCIA, a.k.a. "Shotgun";
BENJAMIN CLARK, a.k.a. "Cyclone"; RUBEN
HERNANDEZ; JERRY ARMENTA, a.k.a.
"Creeper"; JERRY MONTOYA, a.k.a. "Boxer";
MARIO RODRIGUEZ, a.k.a. "Blue"; TIMOTHY
MARTINEZ, a.k.a. "Red"; MAURICIO VARELA,
a.k.a. "Archie," a.k.a. "Hog Nuts"; DANIEL
SANCHEZ, a.k.a. "Dan Dan"; GERALD
ARCHULETA, a.k.a. "Styx," a.k.a. "Grandma";
CONRAD VILLEGAS, a.k.a. "Chitmon";
ANTHONY RAY BACA, a.k.a. "Pup"; ROBERT
MARTINEZ, a.k.a. "Baby Rob"; ROY PAUL
MARTINEZ, a.k.a. "Shadow"; CHRISTOPHER
GARCIA; CARLOS HERRERA, a.k.a. "Lazy";
RUDY PEREZ, a.k.a. "Ru Dog"; ANDREW
GALLEGOS, a.k.a. "Smiley"; SANTOS
GONZALEZ; PAUL RIVERA; SHAUNA
GUTIERREZ and BRANDY RODRIGUEZ,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on: (i) Defendant Angel DeLeon's Renewed

Motion for Judgment of Acquittal, filed October 7, 2021 (Doc. 3490)("Acquittal Motion"); and

(ii) Defendant Angel DeLeon's Rule 33 Motion for a New Trial, filed October 12, 2021 (Doc.

3492)("New Trial Motion").[1]  The Court held a hearing on the Acquittal Motion and the New Trial Motion on November 16, 2021.  See Clerk's Minutes, filed November 16, 2021 (Doc. 3516).  The primary issues are: (i) whether the Court should dismiss Count 1 of the Second Superseding Indictment, filed March 9, 20217 (Doc. 949)("Indictment"), and enter a judgment of acquittal in Defendant Angel DeLeon's favor, because there is insufficient evidence to support DeLeon's conviction on Count 1; and (ii) whether the Court should grant DeLeon a new trial, because (a) the Court did not instruct the jury on the United States' loss or destruction of evidence, (b) the United States committed prosecutorial misconduct during its closing argument rebuttal, (c) the Court, during trial, did not uphold its pretrial evidentiary rulings, (d) the Court admitted evidence under rule 404(b) of the Federal Rules of Evidence without the United States providing notice of its intent to offer evidence under rule 404(b), (e) Bryan Acee, one of the United States' witnesses, referred to DeLeon as a fugitive, in violation of the Court's pretrial ruling, and (f) the errors'

---

[1]The Acquittal Motion and the New Trial Motion were ripe for the Court's decision in a Memorandum Opinion and Order after the November 16, 2021, hearing.  See Clerk's Minutes, filed November 16, 2021 (Doc. 3516).  DeLeon already has appealed the Court's Judgment in a Criminal Case to the United States Court of Appeals for the Tenth Circuit.  See Notice of Appeal, filed March 24, 2022 (Doc. 3572).  Without the Court's knowledge, the Court's Courtroom Deputy Clerk entered Judgment in a Criminal Case on March 14, 2022, before the Court wrote the opinion on the Acquittal Motion and the New Trial Motion.  See Judgment in a Criminal Case at 1, filed March 14, 2022, (Doc. 3571).  The Court mistakenly entered the Judgment in a Criminal Case; the Court always intended to write this Memorandum Opinion and Order before entering the Judgment in a Criminal Case in this case.  The Court devoted substantial resources to DeLeon's case and trial and had to turn its attention to other cases before returning to the Acquittal Motion and to the New Trial Motion.  The Court did not intend to have the Judgment in a Criminal Case entered before it had an opportunity to write this Memorandum Opinion and Order, because the Court wanted to devote its energy to writing the Memorandum Opinion and Order on DeLeon's Acquittal Motion and New Trial Motion.  Every litigant deserves the Court's full attention, and Mr. DeLeon is no exception.  As this Memorandum Opinion and Order demonstrates, the Court believes DeLeon's Acquittal Motion and New Trial Motion deserve the Court's attention and rigorous analysis.

cumulative impact warrants a new trial.  The Court concludes that: (i) the Court will not dismiss Count 1 of the Indictment, because there is sufficient evidence to support DeLeon's conviction; and (ii) DeLeon is not entitled to a new trial.  Accordingly, the Court will deny the Acquittal Motion and the New Trial Motion.

## FACTUAL BACKGROUND

The Court takes its facts from its Memorandum Opinion and Order, filed December 29, 2021 (Doc. 3544).  First, the Court sets out background facts.  Second, the Court describes the facts that apply specifically to DeLeon's case.

### 1. Background Facts.

The Syndicato de Nuevo Mexico ("SNM") is a "powerful and violent prison gang" that was formed in February, 1980, after a large prison riot at the Penitentiary of New Mexico in Santa Fe, New Mexico.  Presentence Investigation Report ¶ 8, at 8, filed November 15, 2021 (Doc. 3510)("PSR").  Soon after SNM formed, "prison gangs such as the SNM and Los Carnales began to emerge within" the New Mexico Corrections Department ("NMCD").  PSR ¶ 6, at 8.  These prison gangs "began to organize themselves and focused primarily on gaining their own status within the correctional institutions by employing violence upon the inmate population to assume a position of leadership and control."  PSR ¶ 6, at 8.  Since the 1980s, there have been over 500 SNM members.  See PSR ¶ 6, at 8.  SNM "operates under a 'panel' or 'mesa' (Spanish for [']table[']) of leaders who issue orders to subordinate gang members."  PSR ¶ 7, at 8 (no citation for quotation).  "Despite being imprisoned and being closely scrutinized by prison officials, SNM gang leaders managed to convey orders to SNM gang members and associate throughout the prison system through a variety of means, including secret notes called 'kites' or 'welas,' coded letters, and messages conveyed by complicit visitors."  PSR ¶ 7, at 8 (no citation for quotations).  "These

messages would provide SNM gang members with the gang's operational strategies to facilitate their illegal criminal activities within the penal system." PSR ¶ 7, at 8. "SNM gang members discussed the proposed actions to be taken on those who cooperated against SNM gang members and associates, to include plans and agreements regarding the commission of future crimes, which involved murders, drug distribution, possession of firearms, and assaults, as well as ways to conceal these acts." PSR ¶ 8, at 8. "SNM gang members provided information and financial support to other members and associates of the enterprise, including those who were incarcerated, for the purpose of committing criminal acts." PSR ¶ 8, at 8. "SNM gang members are bound to protect the enterprise's members and associates who commit crimes by hindering, obstructing, and preventing law enforcement officers from identifying, apprehending, and successfully prosecuting and punishing the offenders." PSR ¶ 8, at 8.

"During the mid-1980s through 2014, high-ranking SNM gang members ordered numerous assaults and murders of other SNM gang members and rival gang members within the NMCD, as well as assaults on correctional officers." PSR ¶ 9, at 8. "From July 5, 1988, through September 28, 2014, at least 15 homicides and/or assaults occurred within the NMCD and Metropolitical Detention Center in Bernalillo County, each of which has been directly tied to the SNM gang." PSR ¶ 9, at 8-9. "As a result of these murders and assaults, the SNM gang was locked down, and SNM gang leadership were transferred out to out-of-state institutions." PSR ¶ 9, at 9. "Due to these lockdowns and transfers, the SNM gang leadership felt they were being unjustly punished by the Cabinet Secretary [Gregg Marcentel]," because Secretary Marcentel previously was a Bernalillo County Sherriff's Office ("BCSO") Sheriff, and was "instrumental in the investigation, prosecution, and conviction of SNM gang member Michael Astorga for the Murder of BCSO Deputy Jim McGrane." PSR ¶ 10, at 9. The SNM used Secretary Marcentel's prior work as a tool

"to propagate within its membership that the Cabinet Secretary was using his position to advance a personal agenda against the SNM gang." PSR ¶ 10, at 9.

### 2. Facts Specific to DeLeon.

In March, 2001, Frank Castillo, DeLeon, Rolando Garza, Leonard Lujan, Joe Gallegos, Michael Jaramillo, and Edward Troup were inmates at the Southern New Mexico Correctional Facility in Las Cruces, New Mexico. See PSR ¶¶ 15-30, at 9-12. Castillo's nickname was "Pancho." PSR ¶ 19, at 11. Defendant Billy Garcia, a.k.a. "Wild Bill," was a high-ranking SNM member and wanted Castillo killed,[2] because Garcia believed Castillo to be a "rat," meaning that he cooperated with law enforcement and had "'ratted' on an inmate while at the Penitentiary of New Mexico in Santa Fe." PSR ¶ 17, at 10. Garcia ordered Lujan to "put together two teams of SNM members to carry out the 'hits' on" Garza and Castillo. PSR ¶ 17, at 10 (no citation for quotation). Lujan selected Gallegos, DeLeon, Jaramillo, and Troup to carry out the Castillo hit. PSR ¶ 17, at 10. The two murders were "to be carried out simultaneously in the early morning hours by strangulation and not by a 'hot shot,' meaning a heroin overdose." PSR ¶ 17, at 10 (no citation for quotation) Strangulation is "a trademark method of murder by the SNM." PSR ¶ 17, at 10. Lujan also selected others to kill SNM members who failed to follow through with the murders, meaning that, if Gallegos, DeLeon, Jaramillo, or Troup, failed to kill Castillo, they would be killed themselves. See PSR ¶ 17, at 10.

In March, 2001, Jaramillo met with DeLeon and Gallegos in Gallegos' prison cell, where

---

[2]The PSR states that "Garcia, a.k.a. "'Looney,' a high-ranking member of the SNM, advised that he wanted" Castillo "'taken out.'" PSR ¶ 17, at 10 (no citation for quotations). The United States Probation Office corrects this error, noting that, in PSR ¶ 17, at 10, "the name 'Wild Bill should be substituted for the name 'Looney.'" Addendum to the Presentence Report, filed December 6, 2021 (Doc. 3519)(no citation for quotations).

Gallegos "told them they 'were going to be doing a hit on Pancho.'" PSR ¶ 19, at 11 (quoting trial transcript). Gallegos told DeLeon and Jaramillo that "they were waiting for heroin to be brought into the prison in the next day or two, and when that happened, they would kill 'Pancho.'" PSR ¶ 19, at 11 (no citation for quotation). At a second meeting, "the three devised a plan to go into [Castillo's] room, give him a shot of heroin, and then strangle him." PSR ¶ 19, at 11. Gallegos assigned everyone a role: DeLeon and Gallegos would hold Castillo, while Jaramillo strangled him; Troup was to act as the lookout and keep the other inmates in their cells. See PSR ¶¶ 19, 22, at 11.

In the early hours of March 26, 2001, the group carried out their plan: after Castillo entered his cell and injected himself with heroin, DeLeon and Gallegos grabbed Castillo by his arms, and rolled him over onto his bed, where Jaramillo strangled him with a laundry bag's drawstring while DeLeon and Gallegos held Castillo down. See PSR ¶¶ 15, 19, at 9, 11. Prison officials discovered Castillo's body on March 26, 2001. See PSR ¶ 15, at 9. The Office of the Medical Examiner conducted an autopsy on Castillo's body on March 27, 2001. See PSR ¶ 16, at 10. The autopsy reveals that "a tightly rolled laundry bag was around" Castillo's neck and was "twisted around itself," creating a ligature that "passed just below the mouth across the upper part of the chin and wrapped tightly around the back of the neck just below the base of the skull." PSR ¶ 16, at 10. The autopsy reported the following injuries:

the face and chest were marked with postmortem lividity[3]; petechial

---

[3]Postmortem lividity, also known as livor mortis, is 'the fourth stage of death and one of the signs of death." Livor Mortis, Wikipedia, https://en.wikipedia.org/wiki/Livor_mortis (last visited June 3, 2022). Postmortem lividity is a settling of the blood in the lower, or dependent, portion of the body postmortem, causing a purplish red discoloration of the skin." Livor Mortis, Wikipedia, https://en.wikipedia.org/wiki/Livor_mortis (last visited June 3, 2022).

hemorrhages[4] were extremely apparent within both eyes; there was hemorrhaging within the left sternocleidomastoid muscle[5] of the lower neck; there was a large contusion on the left upper chest area and left shoulder that was not apparent on the surface of the skin due to the high levels of livor mortis; there was a 1½ x ¾ inch contusion on the right hip; and there were several abrasions and contusions of both knees as well as on the left foot.

PSR ¶ 16, at 10. The autopsy concludes that homicide caused Castillo's death. See PSR ¶ 16, at 10. Kristen Radecki, a New Mexico Department of Public Safety Crime Laboratory employee, found DeLeon's DNA on the rope used to kill Castillo. See PSR ¶ 22, at 11. Some time after Castillo's death, Phillip Gonzales heard DeLeon make several statements about Castillo, including "'Did you hear that?' . . . Oh, Pancho asked me why'"; and "'Did you see that?' . . . 'There is a ghost. It's Pancho, He's haunting me.'" PSR ¶ 21, at 11.

## PROCEDURAL BACKGROUND

In March, 2015, a high-ranking NMCD official alerted the FBI that SNM gang leadership placed a hit on Secretary Marcentel and Security Threat Intelligence Unit ("STIU") Administrator Dwayne Santistevan. PSR ¶ 11, at 9. An ensuing FBI investigation "led to the indictment of forty SNM members in December 2015 on federal charges related to the Violence Crimes in Aid of Racketeering (VICAR)[6] and [Racketeer-Influenced and Corrupt Organizations Act] RICO[7]

---

[4] A petechial hemorrhage "appear[s] when capillaries bleed, leaking blood into the skin"; prolonged straining, as well as certain medications and medical conditions, can cause a petechial hemorrhage. Petechiae, Mayo Clinic, https://www.mayoclinic.org/symptoms/petechiae/basics/causes/sym-20050724 (last visited June 3, 2022).

[5] The sternocleidomastoid muscle is "one of the largest and most superficial cervical muscles" and its primary actions are "rotation of the head to the opposite side and flexion of the neck." Sternocleidomastoid Muscle, Wikipedia, https://en.wikipedia.org/wiki/Sternocleidomastoid_muscle (last visited June 3, 2022).

[6] 18 U.S.C. § 1959.

[7] 18 U.S.C. §§ 1961-1968.

offenses." PSR ¶ 12, at 9. In April, 2016, the United States Attorney's Office indicted 39 SNM members and SNM associates. See PSR ¶ 12, at 9. "Approximately 127 individuals have been arrested in relation to this investigation." PSR ¶ 12, at 9. "The FBI continues to monitor the SNM organization and target members of the organization engaged in on-going criminal activity." PSR ¶ 12, at 9.

Although DeLeon is named in the Indictment, he was not tried with his co-defendants. According to the United States, "the reason that [DeLeon] was not arrested shortly after his indictment along with many of his co-defendants is because he was in Mexico." United States' Response to Defendant Angel DeLeon's Motion to Dismiss Due to the Government's Unjustified Post-Indictment Delay at 7, filed August 23, 2021 (Doc. 3389)("Delay Motion Response"). The United States asserts that, after finally locating DeLeon, the United States arrested DeLeon in Mexico on March 1, 2019. Delay Motion Response at 3. After an eight-day jury trial, from September 7, 2021, to September 16, 2021, a jury convicted DeLeon of one count of Violent Crimes in Aid of Racketeering (murder), in violation of 18 U.S.C. §§ 1959(a)(1) and 2. See PSR ¶ 3, at 7; Redacted Jury Verdict at 1, filed September 16, 2021 (Doc. 3474). 18 U.S.C. §§ 1959(a)(1) requires that someone who violates 18 U.S.C. § 1959(a) with murder be punished "by death or life imprisonment." 18 U.S.C. § 1959(a)(1). DeLeon files the Acquittal Motion and the New Trial Motion seeking post-trial relief.

## ANALYSIS

The Court will deny the Acquittal Motion and the New Trial Motion. DeLeon is not entitled to acquittal, because the United States meets its burden on the fourth and fifth VICAR elements. See 18 U.S.C. § 1959(a)(1). DeLeon is not entitled to a new trial, because the interests of justice do not require a new trial, and because, although the Court does not believe there are

errors, any errors do not establish cumulative error.

DeLeon asks for acquittal, because the United States' evidence allegedly does not satisfy VICAR's fourth and fifth elements -- that he committed a violent crime and that he did it in furtherance of, or to maintain his position in, SNM. See Acquittal Motion at 2. When deciding a motion for acquittal under rule 29 of the Federal Rules of Civil Procedure, a court considers the evidence, "'both direct and circumstantial, in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime.'" United States v. Fuller, 751 F.3d 1150, 1153 (10th Cir. 2014)(quoting United States v. White, 673 F.2d 299, 301-02 (10th Cir. 1982)). First, as to the fourth VICAR element, DeLeon asserts that the United States does not prove that he murdered Frank Castillo. See Acquittal Motion at 6-8. In response the United States notes that, at trial, it presented evidence that Lujan selected DeLeon to help murder Castillo, that DeLeon lived in the same prison housing unit as Castillo, and that DeLeon and Gallegos grabbed Castillo, spun him around, and held him down while Jaramillo strangled him. See United States' Response to Angel DeLeon's Renewed Motion for Judgment of Acquittal at 4-5, filed October 19, 2021 (Doc. 3494)("Acquittal Motion Response"). Moreover, the United States indicates that Gonzales heard DeLeon was "making light of" Castillo's death. Acquittal Motion Response at 5. Although DeLeon observes correctly that there are legitimate questions about the integrity of the United States' DNA evidence from the string tie of the laundry bag used to strangle Castillo, see Acquittal Motion at 6, and that it alone does not establish DeLeon's guilt, the upshot is that, at one point, DeLeon's DNA was likely found on the murder weapon, see Acquittal Motion at 6. The evidence on VICAR's fourth prong is not "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." United States v. White, 673 F.2d at 301.

Second, as to the fifth VICAR element, DeLeon contends that the United States does not prove that he murdered Castillo as consideration for anything of value from SNM, or for the purpose of gaining entrance into SNM or maintaining his position in SNM. See Acquittal Motion at 8-15. The United States responds that Lujan and Jaramillo "followed the orders given to them," and that their "options basically were to follow orders or be killed themselves." Response at 7. According to the United States, DeLeon helped to murder Castillo, "at a minimum," to "maintain" his position in SNM. Response at 8. The United States contends that the jury heard evidence that DeLeon was "known to follow orders" and that, as an SNM member, he knew murdering Castillo was expected of him. Response at 8. The evidence shows that DeLeon and his accomplices were in a difficult position by virtue of their SNM membership -- they had to kill or be killed. Nevertheless, if RICO and VICAR do not extend to scenarios like the one in this case, where a gang member is faced with real threats of violence if they do not comply with the gang's requests, then RICO and VICAR would extend only to scenarios where a gang leader promised that a subordinate's position or status in the organization would not change if they opt not to follow through. The United States Court of Appeals for the Second Circuit's reasoning bolsters this conclusion. The Second Circuit concludes that 18 U.S.C. § 1959 applies to someone who already is an organization's leader. See United States v. Dhinsa, 243 F.3d 635, 670-71 (2d Cir. 2001). Further, the Second Circuit cites a dictionary definition of "maintain," noting that it means "'preserve from failure or decline' or 'to sustain against opposition to danger.'" United States v. Dhinsa, 243 F.3d at 671 (quoting Webster's Third New International Dictionary 1362 (1993)). Here, the evidence shows that, even if DeLeon were not to be killed for not following through, SNM functions to punish those who disobey its demands. DeLeon's position or status in the SNM would have declined had he not followed through. The evidence supports the jury's conclusion

on VICAR's fifth element, and the evidence is not "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." United States v. White, 673 F.2d at 301.

Next, DeLeon asks for a new trial under rule 33 of the Federal Rules of Civil Procedure. See New Trial Motion at 1. Deleon cites five reasons: (i) the Court did not instruct the jury on the United States' loss or destruction of evidence; (ii) the United States committed prosecutorial misconduct during its closing argument by shifting the burden of proof to DeLeon, impugning DeLeon's attorneys to the jury, and suggesting that SNM chose the United States' witnesses; (iii) the Court did not uphold its pretrial evidentiary rulings by permitting cumulative evidence of SNM violence; (iv) the Court admitted improperly evidence under rule 404(b) of the Federal Rules of Evidence when the United States did not provide proper notice; and (v) a witness, Acee, referred to DeLeon as a fugitive, despite the Court's admonition not to use that word. See New Trial Motion at 1-18. Further, DeLeon asserts that, even if no error individually supports granting him a new trial, the errors' cumulative impact support granting him a new trial. See New Trial Motion at 18-19. In response, the United States argues: (i) the Court properly refused to instruct the jury on evidence loss or destruction; (ii) it did not commit misconduct during closing argument, because it did not shift the burden of proof to DeLeon, it did not impugn DeLeon's lawyers, it did not act improperly by saying that SNM chose its witnesses, because SNM picked who the murderers would be; (iv) the Court upheld its pretrial evidentiary ruling on the number of violent SNM incidents the United States could mention at trial; (vi) the Court did not admit impermissibly rule 404(b) evidence, because the United States complied with the Court's order that the United States disclose its evidence to DeLeon; (vii) Acee's comment did not prejudice unduly DeLeon, and it was cured quickly; and (v) there is no cumulative error. See United States' Response to Defendant Angel DeLeon's Rule 33 Motion for a New Trial, filed November 5, 2021 (Doc. 3506).

The interests of justice do not support granting DeLeon a new trial. New trial motions under rule 33 are "not regarded with favor" and "should only be granted with great caution." United States v. Sinclair, 109 F.3d 1527, 1531 (10th Cir. 1997). The Tenth Circuit reviews a district court's decision to grant or deny a new trial for abuse of discretion. See United States v. Caro, 965 F.2d 1548, 1558 (10th Cir. 1992). This lenient standard reflects the appellate courts' recognition that courts disfavor new trials, at least in part, because any errors can be reversed on appeal and the appellate court can then order a new trial. The Court worked hard to ensure DeLeon's trial was fair, particularly considering the United States' history of investigating and prosecuting SNM members. The Court knows that DeLeon, like all SNM members, cannot be reduced to the SNM brand alone: the United States still faces a steep uphill battle to gain a conviction, like they do in every case. The Court is familiar with the road bumps that come up during every trial that often make the trial run not as smoothly as anybody would hope. Acee's unfortunate remark is an illustrative example, but it was cured quickly. Nevertheless, here, the Court does not believe that any errors plagued DeLeon's trial and, even if there were errors, those errors do not amount to cumulative error.

**IT IS ORDERED** that Defendant Angel DeLeon's Renewed Motion for Judgment of Acquittal, filed October 7, 2021 (Doc. 3490), is denied; and (ii) Defendant Angel DeLeon's Rule 33 Motion for a New Trial, filed October 12, 2021 (Doc. 3492), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M.M. Uballez
  United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

-- and --

Maria Ysabel Armijo
Randy M. Castellano
Ryan Ellison
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

      *Attorneys for the Plaintiff*

Sarah M. Gorman
Law Offices of Robert D. Gorman
Albuquerque, New Mexico

      *Attorneys for Defendant Angel DeLeon*

Gregory M. Acton
Albuquerque, New Mexico

      *Attorneys for Defendant Joe Lawrence Gallegos*

John T. Carlson
Ridley McGreevy & Winocur
Denver, Colorado

      *Attorneys for Defendant Edward Troup*

Russell Dean Clark
Las Cruces, New Mexico

      *Attorney for Defendant Leonard Lujan*

Kathleen Lord
Lord Law Firm
Denver, Colorado

      *Attorneys for Defendant Billy Garcia*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

*Attorney for Defendant Eugene Martinez*

Joseph E. Shattuck
Marco & Shattuck Law Firm
Albuquerque, New Mexico

-- and --

Jeffrey C. Lahann
Las Cruces, New Mexico

*Attorneys for Defendant Allen Patterson*

Eduardo Solis
Law offices of Eduardo Solis
El Paso, Texas

-- and --

John L. Granberg
Granberg Law Office
El Paso, Texas

-- and --

Orlando Mondragon
The Law Office of Orlando Mondragon
El Paso, Texas

*Attorneys for Defendant Christopher Chavez*

Nathan D. Chambers
Nathan D. Chambers, Attorney at Law
Denver, Colorado

-- and --

Noel Orquiz
Deming, New Mexico

*Attorneys for Defendant Javier Alonso*

Scott Moran Davidson
Law Offices of Scott Moran Davidson
Albuquerque, New Mexico

-- and --

Billy R. Blackburn
Billy Blackburn Law Office
Albuquerque, New Mexico

*Attorneys for Defendant Arturo Arnulfo Garcia*

Stephen E. Hosford
Stephen E. Hosford, P.C.
Arrey, New Mexico

-- and --

Jerry Daniel Herrera
Albuquerque, New Mexico

*Attorneys for Defendant Benjamin Clark*

Pedro Pineda
Las Cruces, New Mexico

-- and --

León Encinias
León Felipe Encinias, Attorney at Law
Albuquerque, New Mexico

*Attorneys for Defendant Ruben Hernandez*

Gary Mitchell
Mitchell Law Office
Ruidoso, New Mexico

*Attorney for Defendant Jerry Armenta*

Larry A. Hammond
Osborn Maledon, P.A.
Phoenix, Arizona

-- and --

Ramona J. Martinez-Salopek
Streeter & Martinez-Salopek, LLC
Las Cruces, New Mexico

  *Attorneys for Defendant Jerry Montoya*

Santiago D. Hernandez
Law Office of Santiago D. Hernandez
El Paso, Texas

  *Attorneys for Defendant Mario Rodriguez*

Ray Velarde
El Paso, Texas

-- and --

Steven Lorenzo Almanza
Las Cruces, New Mexico

  *Attorneys for Defendant Timothy Martinez*

Joe Spencer
El Paso, Texas

-- and --

Mary Stillinger
El Paso, Texas

  *Attorneys for Defendant Mauricio Varela*

Virginia L. Grady
 Federal Public Defender
Josh R. Lee
 Assistant Federal Defender
Federal Public Defender's Office
Denver, Colorado

  *Attorneys for Defendant Daniel Sanchez*

Kimberly S. Bruselas-Benavidez

Albuquerque, New Mexico

*Attorneys for Defendant Gerald Archuleta*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

*Attorney for Defendant Conrad Villegas*

Theresa M. Duncan
Duncan Earnest LLC
Albuquerque, New Mexico

-- and --

Marc M. Lowry
Rothstein Donatelli LLP
Albuquerque, New Mexico

*Attorneys for Defendant Anthony Ray Baca*

Charles J. McElhinney
C.J. McElhinney, Attorney at Law
Las Cruces, New Mexico

*Attorney for Defendant Robert Martinez*

Marcia J. Milner
Marcia J. Milner Attorney at Law
Las Cruces, New Mexico

*Attorney for Defendant Roy Paul Martinez*

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

*Attorneys for Defendant Christopher Garcia*

Michael V. Davis
Corrales, New Mexico

-- and –

Ryan J. Villa
Law Office of Ryan J. Villa
Albuquerque, New Mexico

      *Attorneys for Defendant Carlos Herrera*

Justine Fox-Young
Justine Fox-Young Attorney at Law
Albuquerque, New Mexico

-- and --

Ryan J. Villa
Law Office of Ryan J. Villa
Albuquerque, New Mexico

      *Attorneys for Defendant Rudy Perez*

Donavon A. Roberts
Donavon A. Roberts Attorney at Law
Albuquerque, New Mexico

-- and --

John Michael Bowlin
Bowling Law Firm, LLC
Rio Rancho, New Mexico

      *Attorneys for Defendant Andrew Gallegos*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson
Albuquerque, New Mexico

      *Attorney for Defendant Santos Gonzalez*

Keith R. Romero
Keith R. Romero, Attorney and Counselor at Law
Albuquerque, New Mexico

      *Attorney for Paul Rivera*

Nicholas E. Mendoza
Nicholas Mendoza Attorney at Law
Tijeras, New Mexico

   *Attorney for Defendant Shauna Gutierrez*

Jerry A. Walz
Walz and Associates
Albuquerque, New Mexico

   *Attorneys for Defendant Brandy Rodriguez*